## EXHIBITS TO COMPLAINT

HB 450……………………………………………………………………A

SB 68……………………………………………………………………B

*Bianchi v. Frosh*……………………………………………………....C

# EXHIBIT A



SPONSOR: Rep. Longhurst & Sen. Poore & Rep. Schwartzkopf &
Rep. Mitchell & Rep. Dorsey Walker & Rep. Baumbach
& Rep. Bolden & Rep. Griffith & Rep. Lynn
Reps. Bentz, Chukwuocha, Freel, Heffernan, K. Johnson,
Kowalko, Lambert, Minor-Brown, Morrison, Osienski;
Sens. Gay, Lockman, S. McBride, Paradee, Pinkney,
Sokola, Sturgeon, Townsend

HOUSE OF REPRESENTATIVES
151st GENERAL ASSEMBLY

HOUSE BILL NO. 450
AS AMENDED BY
HOUSE AMENDMENT NO. 1

AN ACT TO AMEND THE DELAWARE CODE RELATING TO DEADLY WEAPONS.

1    WHEREAS, on May 24 an 18-year-old gunman entered Robb Elementary School in Uvalde, Texas and murdered

2    19 children and 2 teachers with an AR-15-style semi-automatic rifle; and

3    WHEREAS, this tragedy came just 10 days after a shooting in Buffalo, New York where a gunman with an AR-15-

4    style semi-automatic rifle murdered 10 people in a grocery store; and

5    WHEREAS, there have been dozens more mass shootings during the last decade, including in 2019 at a Walmart in

6    El Paso, Texas, where a gunman using a WASR-10 semi-automatic rifle murdered 23 people and wounded 23 others; and

7    WHEREAS, in 2018 at Stoneman Douglas High School in Parkland, Florida, a gunman with an AR-15-style semi-

8    automatic rifle murdered 14 students and 3 adults and injured 17 more people; and

9    WHEREAS, in 2017, a gunman barricaded himself in a Las Vegas hotel room and used multiple AR-15 and AR-

10   10-type rifles to murder 60 people and injure hundreds more at an outdoor music festival; and

11   WHEREAS, in 2012, a shooter walked into Sandy Hook Elementary School in Newtown, Connecticut armed with

12   a Bushmaster semi-automatic rifle with 30-round magazines enabling him to fire 154 rounds in less than 5 minutes, murdering

13   20 first-grade children and 6 adults; and

14   WHEREAS, assault-style weapons have been used disproportionately to their ownership in mass shootings; and

15   WHEREAS, in 1994, Congress adopted the Violent Crime Control and Law Enforcement Act of 1994, which

16   prohibited the possession and sale of assault-style weapons and large capacity ammunition magazines which limited

17   magazines to 10 rounds; and

HD : KL : MAW : 2141510711
LC : HVW :  : 5081510253

Draft: 06/13/2022  03:36 PM

18    WHEREAS, between 1994 and 2004 when the Act was in effect, there were fewer than 20 mass shootings during

19    that decade, substantially lower than the decades since, and since the law expired in 2004 there has been a proliferation of

20    assault-style weapons in the United States; and

21    WHEREAS, since 2009, there have been 274 mass shootings in the United States resulting in 1,536 people shot and

22    killed and 983 people shot and wounded, including 362 children and teens and 21 law enforcement officers; and

23    WHEREAS, between 2009 and 2020, there were at least 30 mass shootings that involved the use of an assault-style

24    weapon, resulting in 347 deaths and 719 injuries, with mass shootings that involved an assault-style weapon accounting for

25    25 percent of all mass shooting deaths and 76 percent of injuries; and

26    WHEREAS, assault-style weapons have immense killing power which amplifies the deadly will of a person seeking

27    to kill others and the use of an assault weapon has led to six times as many people shot per mass shooting; and

28    WHEREAS, the AR-15, AK-47 and other similar firearm profiles now recognized as assault-style weapons were

29    originally designed solely for military use, and these weapons, which have been modified over time to be marketed and sold

30    to civilians, were not intended for sport or self-defense; and

31    WHEREAS, the Delaware General Assembly has a compelling interest to ensure the safety of Delawareans and

32    finds that assault-style weapons are exceptionally lethal weapons of war that have no place in civilian life.

33    NOW, THEREFORE:

34    BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF DELAWARE:

35    Section 1. Amend Subchapter VII, Chapter 5, Title 11 of the Delaware Code by making deletions as shown by strike

36    through and insertions as shown by underline as follows:

37    §§ 1464–1469. [Reserved.]

38    § 1464. Legislative findings.

39    The Legislature hereby finds and declares that the proliferation and use of assault weapons poses a threat to the

40    health, safety, and security of all citizens of this state. The Legislature has restricted the assault weapons specified in § 1465

41    of this title based upon finding that each firearm has such a high rate of fire and capacity for firepower that its potential

42    function as a sports or recreational firearm is substantially outweighed by the danger that it can be used to kill and injure

43    human beings. It is the intent of the Legislature in enacting this chapter to place restrictions on the possession and use of

44    assault weapons. It is not, however, the intent of the Legislature by this chapter to place restrictions on the use of those

45    weapons which are primarily designed and intended for hunting, target practice, or other legitimate sports or recreational

46    activities.

47    § 1465. Definitions related to assault weapons.

HD : KL : MAW : 2141510711
LC : HVW : : 5081510253

Draft: 06/13/2022  03:36 PM

48      For purposes of this section and § 1466 and § 1467 of this title:

49          (1) "Ammunition feeding device" means any magazine, belt, drum, feed strip, or similar device that holds

50      ammunition for a firearm.

51          (2) "Assault long gun" means any of the following or a copy, regardless of the producer or manufacturer:

52              a. American Arms Spectre da Semiautomatic carbine.

53              b. Avtomat Kalashnikov semiautomatic rifle in any format, including the AK-47 in all forms.

54              c. Algimec AGM-1 type semi-auto.

55              d. AR 100 type semi-auto.

56              e. AR 180 type semi-auto.

57              f. Argentine L.S.R. semi-auto.

58              g. Australian Automatic Arms SAR type semi-auto.

59              h. Auto-Ordnance Thompson M1 and 1927 semi-automatics.

60              i. Barrett light .50 cal. semi-auto.

61              j. Beretta AR70 type semi-auto.

62              k. Bushmaster semi-auto rifle.

63              *l.* Calico models M-100 and M-900.

64              m. CIS SR 88 type semi-auto.

65              n. Claridge HI TEC C-9 carbines.

66              o. Colt AR-15, CAR-15, and all imitations except Colt AR-15 Sporter H-BAR rifle.

67              p. Daewoo MAX 1 and MAX 2, aka AR 100, 110C, K-1, and K-2.

68              q. Dragunov Chinese made semi-auto.

69              r. Famas semi-auto (.223 caliber).

70              s. Feather AT-9 semi-auto.

71              t. FN LAR and FN FAL assault rifle.

72              u. FNC semi-auto type carbine.

73              v. F.I.E./Franchi LAW 12 and SPAS 12 assault shotgun.

74              w. Steyr-AUG-SA semi-auto.

75              x. Galil models AR and ARM semi-auto.

76              y. Heckler and Koch HK-91 A3, HK-93 A2, HK-94 A2 and A3.

77              z. Holmes model 88 shotgun.

HD : KL : MAW : 2141510711
LC : HVW : : 5081510253                                          Draft: 06/13/2022  03:36 PM

| 78 | aa. Manchester Arms "Commando" MK-45, MK-9. |
| 79 | bb. Mandell TAC-1 semi-auto carbine. |
| 80 | cc. Mossberg model 500 Bullpup assault shotgun. |
| 81 | dd. Sterling Mark 6. |
| 82 | ee. P.A.W.S. carbine. |
| 83 | ff. Ruger mini-14 folding stock model (.223 caliber). |
| 84 | gg. SIG 550/551 assault rifle (.223 caliber). |
| 85 | hh. SKS with detachable magazine. |
| 86 | ii. AP-74 Commando type semi-auto. |
| 87 | jj. Springfield Armory BM-59, SAR-48, G3, SAR-3, M-21 sniper rifle, and M1A, excluding the M1 |
| 88 | Garand. |
| 89 | kk. Street sweeper assault type shotgun. |
| 90 | *ll.* Striker 12 assault shotgun in all formats. |
| 91 | mm. Unique F11 semi-auto type. |
| 92 | nn. Daewoo USAS 12 semi-auto shotgun. |
| 93 | oo. UZI 9mm carbine or rifle. |
| 94 | pp. Valmet M-76 and M-78 semi-auto. |
| 95 | qq. Weaver Arms "Nighthawk" semi-auto carbine. |
| 96 | rr. Wilkinson Arms 9mm semi-auto "Terry". |
| 97 | (2) "Assault pistol" means any of the following or a copy, regardless of the producer or manufacturer: |
| 98 | a. AA Arms AP-9 pistol. |
| 99 | b. Beretta 93R pistol. |
| 100 | c. Bushmaster pistol. |
| 101 | d. Claridge HI-TEC pistol. |
| 102 | e. D Max Industries pistol. |
| 103 | f. EKO Cobra pistol. |
| 104 | g. Encom MK-IV, MP-9, or MP-45 pistol. |
| 105 | h. Heckler and Koch MP5K, MP7, SP-89, or VP70 pistol. |
| 106 | i. Holmes MP-83 pistol. |
| 107 | j. Ingram MAC 10/11 pistol and variations, including the Partisan Avenger and the SWD Cobray. |

HD : KL : MAW : 2141510711
LC : HVW : : 5081510253

Draft: 06/13/2022  03:36 PM

108        k. Intratec TEC-9/DC-9 pistol in any centerfire variation.

109        l. P.A.W.S. type pistol.

110        m. Skorpion pistol.

111        n. Spectre double action pistol (Sile, F.I.E., Mitchell).

112        o. Stechkin automatic pistol.

113        p. Steyer tactical pistol.

114        q. UZI pistol.

115        r. Weaver Arms Nighthawk pistol.

116        s. Wilkinson "Linda" pistol.

117        (3) "Assault weapon" means any of the following:

118        a. An assault long gun.

119        b. An assault pistol.

120        c. A copycat weapon.

121        (4) "Completed a purchase" means that the purchaser completed an application, passed a background check,

122 and has a receipt or purchase order for the assault weapon, without regard to whether the purchaser has actual physical

123 possession of the assault weapon. If receipt of the assault weapon will not occur until more than 1 year after [the effective

124 date of this Act], it is not a completed purchase.

125        (5) "Copycat weapon" means any of the following:

126        a. A semiautomatic, centerfire rifle that can accept a detachable magazine and has at least 1 of the following:

127        1. A folding or telescoping stock.

128        2. Any grip of the weapon, including a pistol grip, a thumbhole stock, or any other stock, the use of which

129 would allow an individual to grip the weapon, resulting in any finger on the trigger hand in addition to the trigger finger

130 being directly below any portion of the action of the weapon when firing.

131        3. A forward pistol grip.

132        4. A flash suppressor.

133        5. A grenade launcher or flare launcher.

134        b. A semiautomatic, centerfire rifle that has an overall length of less than 30 inches.

135        c. A semiautomatic pistol that can accept a detachable magazine and has at least 1 of the following:

136        1. An ability to accept a detachable ammunition magazine that attaches at some location outside of the pistol

137 grip.

HD : KL : MAW : 2141510711
LC : HVW : : 5081510253

Draft: 06/13/2022  03:36 PM

138        2. A threaded barrel capable of accepting a flash suppressor, forward pistol grip or silencer.

139        3. A shroud that is attached to, or partially or completely encircles, the barrel and that permits the shooter to

140  fire the firearm without being burned, except a slide that encloses the barrel.

141        4. A second hand grip.

142     d. A semiautomatic shotgun that has both of the following:

143        1. A folding or telescoping stock.

144        2. Any grip of the weapon, including a pistol grip, a thumbhole stock, or any other stock, the use of which

145  would allow an individual to grip the weapon, resulting in any finger on the trigger hand in addition to the trigger finger

146  being directly below any portion of the action of the weapon when firing.

147     e. A semiautomatic shotgun that has the ability to accept a detachable magazine.

148     f. A shotgun with a revolving cylinder.

149     g. A semiautomatic pistol with a fixed magazine that can accept more than 17 rounds.

150     h. A semiautomatic, centerfire rifle that has a fixed magazine that can accept more than 17 rounds.

151        (6) "Detachable magazine" means an ammunition feeding device that can be removed readily from a firearm

152  without requiring disassembly of the firearm action or without the use of a tool, including a bullet or cartridge.

153        (7) "Family" means as defined in § 901 of Title 10.

154        (8) "Flash suppressor" means a device that functions, or is intended to function, to perceptibly reduce or redirect

155  muzzle flash from the shooter's field of vision.

156        (9) "Qualified retired law-enforcement officer" means as defined in § 1441B(c) of this title.

157        (10) "Shooting range" means any land or structure used and operated in accordance with all applicable laws and

158  ordinances for the shooting of targets for training, education, practice, recreation, or competition.

159        (11) "Grenade launcher" means a device designed to fire, launch, or propel a grenade.

160        (12) "Secure storage" means a firearm that is stored in a locked container or equipped with a tamper resistant

161  mechanical lock or other safety device that is properly engaged so as to render the firearm inoperable by a person other

162  than the owner or other lawfully authorized user.

163     § 1466. Manufacture, sale, transport, transfer, purchase, receipt, and possession of assault weapons; class E or F

164  felony.

165        (a) Prohibitions. - Except as provided in subsection (b) or (c) of this section, it is unlawful for a person to do any of

166  the following:

167        (1) Transport an assault weapon into this State.

HD : KL : MAW : 2141510711
LC : HVW : : 5081510253

Draft: 06/13/2022  03:36 PM

168    (2) Manufacture, sell, offer to sell, transfer, purchase, receive, or possess an assault weapon.

169    (b) Applicability - This section does not apply to any of the following:

170    (1) The following individuals, if acting within the scope of official business:

171    a. Personnel of the United States government or a unit of that government.

172    b. Members of the armed forces of the United States or of the National Guard.

173    c. A law-enforcement officer.

174    (2) An assault weapon modified to render it permanently inoperative.

175    (3) Possession, importation, manufacture, receipt for manufacture, shipment for manufacture, storage,
176 purchases, sales, and transport to or by a licensed firearms dealer or manufacturer who does any of the following:

177    a. Provides or services an assault weapon for a law-enforcement agency of this State or for personnel
178 exempted under paragraph (b)(1) of this section.

179    b. Acts to sell or transfer an assault weapon to a licensed firearm dealer in another state or to an individual
180 purchaser in another state through a licensed firearms dealer.

181    c. Acts to return to a customer in another state an assault weapon transferred to the licensed firearms dealer
182 or manufacturer under the terms of a warranty or for repair.

183    (4) Organizations that are required or authorized by federal law governing their specific business or activity to
184 maintain assault weapons.

185    (5) The receipt of an assault weapon by inheritance, and possession of the inherited assault weapon, if the
186 decedent lawfully possessed the assault weapon and the person inheriting the assault weapon is not otherwise a person
187 prohibited under § 1448 of this title.

188    (6) The receipt of an assault weapon by a personal representative of an estate for purposes of exercising the
189 powers and duties of a personal representative of an estate, including transferring the assault weapon according to will
190 or probate proceedings.

191    (7) Possession by a qualified retired law-enforcement officer who is not otherwise prohibited from receiving an
192 assault weapon if either of the following applies:

193    a. The assault weapon is sold or transferred to the qualified retired law-enforcement officer by the law-
194 enforcement agency on retirement.

195    b. The assault weapon was purchased or obtained by the qualified retired law-enforcement officer for
196 official use with the law-enforcement agency before retirement.

HD : KL : MAW : 2141510711
LC : HVW : : 5081510253

Draft: 06/13/2022  03:36 PM

197    (8) Possession or transport by an armored car guard, as defined in § 1302 of Title 24, if the armored car guard

198    is acting within the scope of employment with an armored car agency, as defined under § 1302 of Title 24, and is licensed

199    under Chapter 13 of Title 24.

200    (9) Possession, receipt, and testing by, or shipping to or from any of the following:

201    a. An ISO 17025 accredited, National Institute of Justice-approved ballistics testing laboratory.

202    b. A facility or entity that manufactures or provides research and development testing, analysis, or

203    engineering for personal protective equipment or vehicle protection systems.

204    (c) Exceptions. –

205    (1) A licensed firearms dealer may continue to do all of the following with an assault weapon that the licensed

206    firearms dealer lawfully possessed on or before [the effective date of this Act]:

207    a. Possess the assault weapon.

208    b. Sell the assault weapon or offer the assault weapon for sale. But, the licensed firearms dealer may only

209    sell the assault weapon or offer the assault weapon for sale as permitted under paragraph (b)(3)b. of this section.

210    c. Transfer the assault weapon. But, the licensed firearms dealer may only transfer the assault weapon as

211    permitted by paragraph (b)(3)b. or (b)(3)c. of this section.

212    (2)a. A licensed firearms dealer may take possession of an assault weapon from a person who lawfully possessed

213    the assault weapon before [the effective date of this Act] for the purposes of servicing or repairing the assault weapon.

214    b. A licensed firearms dealer may transfer possession of an assault weapon received under paragraph

215    (c)(2)a. of this section for purposes of accomplishing service or repair of the assault weapon.

216    (3) A person who lawfully possessed, or completed a purchase of an assault weapon prior to [the effective date

217    of this Act], may possess and transport the assault weapon on or after [the effective date of this Act] only under the

218    following circumstances:

219    a. At that person's residence, place of business, or other property owned by that person, or on property

220    owned by another person with the owner's express permission.

221    b. While on the premises of a shooting range.

222    c. While attending any exhibition, display, or educational project that is about firearms and that is sponsored

223    by, conducted under the auspices of, or approved by a law-enforcement agency or a nationally or state recognized

224    entity that fosters proficiency in, or promotes education about, firearms.

HD : KL : MAW : 2141510711
LC : HVW : : 5081510253

Draft: 06/13/2022  03:36 PM

225        d. While transporting the assault weapon between any of the places set forth in this this paragraph (c)(3)

226        this section, or to any licensed firearms dealer for servicing or repair under paragraph (c)(2) of this section, if the

227        person places the assault weapon in secure storage.

228        (4) A person may transport an assault weapon to or from any of the following if the person places the assault

229        weapon in secure storage:

230        a. An ISO 17025 accredited, National Institute of Justice-approved ballistics testing laboratory.

231        b. A facility or entity that manufactures or provides research and development testing, analysis, or

232        engineering for personal protective equipment or vehicle protection systems.

233        (5) Ownership of an assault weapon may be transferred from the person owning the assault weapon to a member

234        of that person's family, and it is lawful for the family member to possess the transferred assault weapon under paragraph

235        (c)(3) of this section, if the transferor lawfully possessed the assault weapon and the family member to whom the assault

236        weapon is transferred is otherwise lawfully permitted to possess it.

237        (d) Penalty. – A violation of this section is a class D felony.

238        (e) Disposal. - A law-enforcement agency in possession of a person's assault weapon as a result of an arrest under

239        this section shall dispose of the assault weapon under the process established for deadly weapons and ammunition under §

240        2311 of this title following the person's adjudication of delinquency or conviction under this section or by the person's

241        agreement to forfeit the assault weapon under an agreement to plead delinquent or guilty to another offense.

242        § 1467. Voluntary certificate of possession.

243        (a) A person who is exempt from § 1466(a) of this title under § 1466(c)(3) of this title may, no later than 1 year from

244        the [effective date of this Act], apply to the Secretary of the Department of Safety and Homeland Security for a certificate of

245        possession.

246        (b) In a prosecution under § 1466 of this title, it is an affirmative defense that the defendant was lawfully in

247        possession or had completed a purchase of the assault weapon prior to [the effective date of this Act]. A certificate of

248        possession is conclusive evidence that a person lawfully possessed or had completed a purchase of an assault weapon before

249        [the effective date of this Act] and is entitled to continue to possess and transport the assault weapon on or after [the effective

250        date of this Act] under § 1466(c)(3) of this title.

251        (c) The Secretary of the Department of Safety and Homeland Security shall establish procedures with respect to the

252        application for and issuance of certificates of possession for assault weapons that are lawfully owned and possessed before

253        [the effective date of this Act]. Rules and procedures under this subsection must include all of the following:

HD : KL : MAW : 2141510711
LC : HVW : : 5081510253

Draft: 06/13/2022  03:36 PM

254    (1) That the application contain proof that the person lawfully possessed or had completed a purchase of an

255    assault weapon before [the effective date of this Act].

256    (2) That the certificate of possession must contain a description of the assault weapon, including the make,

257    model, and serial number. For an assault weapon manufactured before 1968, identifying marks may be substituted for

258    the serial number.

259    (3) That the certificate of possession must contain the full name, address, date of birth, and thumbprint of the

260    person who owns the assault weapon, and any other information the Secretary deems appropriate.

261    (4) That the Department will not retain copies of the certificate or other identifying information relating to any

262    individual who applies for a voluntary certificate of possession.

263    (d) A person who inherits or receives a weapon from a family member that is lawfully possessed under §

264    1466(c)(3) of this title and lawfully transferred may apply for a certificate of possession within 60 days of taking

265    possession of the weapon. To receive a certificate, the person must show that the transferor was lawfully in possession

266    and that he/she is the lawful recipient of the transfer.

267    §§ 1468 – 1469. [Reserved.]

268    Section 2. Amend § 1457, Title 11 of the Delaware Code by making deletions as shown by strike through and

269    insertions as shown by underline as follows:

270    § 1457. Possession of a weapon in a Safe School and Recreation Zone; class D, E, or F felony; class A or B

271    misdemeanor.

272    (a) Any person who commits any of the offenses described in subsection (b) of this section, or any juvenile who

273    possesses a firearm or other deadly weapon, and does so while in or on a "Safe School and Recreation Zone" shall be guilty

274    of the crime of possession of a weapon in a Safe School and Recreation Zone.

275    (b) The underlying offenses in Title 11 shall be:

276    (1) Section 1442. — Carrying a concealed deadly weapon; class G felony; class D felony.

277    (2) Section 1444. — Possessing a destructive weapon; class E felony.

278    (3) Section 1446. — Unlawfully dealing with a switchblade knife; unclassified misdemeanor.

279    (4) Section 1448. — Possession and purchase of deadly weapons by persons prohibited; class F felony.

280    (5) Section 1452. — Unlawfully dealing with knuckles-combination knife; class B misdemeanor.

281    (6) Section 1453. — Unlawfully dealing with martial arts throwing star; class B misdemeanor.

282    (7) Section 14XX. – Manufacture, sale, transport, transfer, purchase, receipt, or possession of assault weapons;

283    class E or F felony.

HD : KL : MAW : 2141510711
LC : HVW : : 5081510253

Draft: 06/13/2022  03:36 PM

284          Section 3. If any provision of this Act or the application of this Act to any person or circumstance is held invalid,

285   the provisions of this Act are severable if the invalidity does not affect the other provisions or applications of the Act which

286   can be given effect without the invalid provision or application.

287          Section 4. This Act is to be known as the "Delaware Lethal Firearms Safety Act of 2022."

HD : KL : MAW : 2141510711
LC : HVW : : 5081510253

Draft: 06/13/2022  03:36 PM

# EXHIBIT B



SPONSOR: Sen. Townsend & Sen. McDowell & Rep. Chukwuocha
Sens. Sokola, Sturgeon; Reps. Baumbach, Bentz, Bolden,
Heffernan, K. Johnson, Kowalko

DELAWARE STATE SENATE
150th GENERAL ASSEMBLY

SENATE BILL NO. 68

AN ACT TO AMEND THE DELAWARE CODE RELATING TO DEADLY WEAPONS.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF DELAWARE:

1    Section 1. Amend Subchapter VII, Chapter 5, Title 11 of the Delaware Code by making deletions as shown by

2    strike through and insertions as shown by underline as follows:

3    §§ 1462-1469. [Reserved.]

4    § 1463. Definitions related to assault weapons.

5    For purposes of this section and §§ 1464 and 1465 of this title:

6    (1) "Ammunition feeding device" means any magazine, belt, drum, feed strip, or similar device that holds

7    ammunition for a firearm.

8    (2) "Assault long gun" means any of the following or a copy, regardless of the producer or manufacturer:

9    a. American Arms Spectre da Semiautomatic carbine.

10    b. Avtomat Kalashnikov semiautomatic rifle in any format, including the AK-47 in all forms.

11    c. Algimec AGM-1 type semi-auto.

12    d. AR 100 type semi-auto.

13    e. AR 180 type semi-auto.

14    f. Argentine L.S.R. semi-auto.

15    g. Australian Automatic Arms SAR type semi-auto.

16    h. Auto-Ordnance Thompson M1 and 1927 semi-automatics.

17    i. Barrett light .50 cal. semi-auto.

18    j. Beretta AR70 type semi-auto.

19    k. Bushmaster semi-auto rifle.

20    l. Calico models M-100 and M-900.

21    m. CIS SR 88 type semi-auto.

22    n. Claridge HI TEC C-9 carbines.

LC : MJC : NMX
1241500024

Released: 04/10/2019  11:23 AM

23    o. Colt AR-15, CAR-15, and all imitations except Colt AR-15 Sporter H-BAR rifle.

24    p. Daewoo MAX 1 and MAX 2, aka AR 100, 110C, K-1, and K-2.

25    q. Dragunov Chinese made semi-auto.

26    r. Famas semi-auto (.223 caliber).

27    s. Feather AT-9 semi-auto.

28    t. FN LAR and FN FAL assault rifle.

29    u. FNC semi-auto type carbine.

30    v. F.I.E./Franchi LAW 12 and SPAS 12 assault shotgun.

31    w. Steyr-AUG-SA semi-auto.

32    x. Galil models AR and ARM semi-auto.

33    y. Heckler and Koch HK-91 A3, HK-93 A2, HK-94 A2 and A3.

34    z. Holmes model 88 shotgun.

35    aa. Manchester Arms "Commando" MK-45, MK-9.

36    bb. Mandell TAC-1 semi-auto carbine.

37    cc. Mossberg model 500 Bullpup assault shotgun.

38    dd. Sterling Mark 6.

39    ee. P.A.W.S. carbine.

40    ff. Ruger mini-14 tactical rifle.

41    gg. SIG 550/551 assault rifle (.223 caliber).

42    hh. SKS with detachable magazine.

43    ii. AP-74 Commando type semi-auto.

44    jj. Springfield Armory BM-59, SAR-48, G3, SAR-3, M-21 sniper rifle, and M1A, excluding the M1

45    Garand.

46    kk. Street sweeper assault type shotgun.

47    *ll.* Striker 12 assault shotgun in all formats.

48    mm. Unique F11 semi-auto type.

49    nn. Daewoo USAS 12 semi-auto shotgun.

50    oo. UZI 9mm carbine or rifle.

51    pp. Valmet M-76 and M-78 semi-auto.

52    qq. Weaver Arms "Nighthawk" semi-auto carbine.

LC : MJC : NMX
1241500024

Released: 04/10/2019  11:23 AM

| | |
|---|---|
| 53 | rr. Wilkinson Arms 9mm semi-auto "Terry". |
| 54 | (2) "Assault pistol" means any of the following or a copy, regardless of the producer or manufacturer: |
| 55 | a. AA Arms AP-9 pistol. |
| 56 | b. Beretta 93R pistol. |
| 57 | c. Bushmaster pistol. |
| 58 | d. Claridge HI-TEC pistol. |
| 59 | e. D Max Industries pistol. |
| 60 | f. EKO Cobra pistol. |
| 61 | g. Encom MK-IV, MP-9, or MP-45 pistol. |
| 62 | h. Heckler and Koch MP5K, MP7, SP-89, or VP70 pistol. |
| 63 | i. Holmes MP-83 pistol. |
| 64 | j. Ingram MAC 10/11 pistol and variations, including the Partisan Avenger and the SWD Cobray. |
| 65 | k. Intratec TEC-9/DC-9 pistol in any centerfire variation. |
| 66 | l. P.A.W.S. type pistol. |
| 67 | m. Skorpion pistol. |
| 68 | n. Spectre double action pistol (Sile, F.I.E., Mitchell). |
| 69 | o. Stechkin automatic pistol. |
| 70 | p. Steyer tactical pistol. |
| 71 | q. UZI pistol. |
| 72 | r. Weaver Arms Nighthawk pistol. |
| 73 | s. Wilkinson "Linda" pistol. |
| 74 | (3) "Assault weapon" means any of the following: |
| 75 | a. An assault long gun. |
| 76 | b. An assault pistol. |
| 77 | c. A copycat weapon. |
| 78 | (4) "Copycat weapon" means any of the following: |
| 79 | a. A semiautomatic centerfire rifle that can accept a detachable magazine and has any 2 of the following: |
| 80 | 1. A folding stock. |
| 81 | 2. A grenade launcher or flare launcher. |
| 82 | 3. A flash suppressor. |

Page 3 of 9

83          4. A pistol grip that protrudes conspicuously beneath the action of the weapon.

84          b. A semiautomatic centerfire rifle that has a fixed magazine with the capacity to accept more than 10

85    rounds.

86          c. A semiautomatic centerfire rifle that has an overall length of less than 29 inches.

87          d. A semiautomatic pistol with a fixed magazine that can accept more than 10 rounds.

88          e. A semiautomatic shotgun that has a folding stock.

89          f. A shotgun with a revolving cylinder.

90          (5) "Detachable magazine" means an ammunition feeding device that can be removed readily from a firearm

91    without requiring disassembly of the firearm action or without the use of a tool, including a bullet or cartridge.

92          (6) "Flash suppressor" means a device that functions, or is intended to function, to perceptibly reduce or

93    redirect muzzle flash from the shooter's field of vision.

94          (7) "Qualified retired law-enforcement officer" means as defined in § 1441B(c) of this title.

95          (8) "Shooting range" means any land or structure used and operated in accordance with all applicable laws

96    and ordinances for the shooting of targets for training, education, practice, recreation, or competition.

97          (9) "Grenade launcher" means a device designed to fire, launch, or propel a grenade.

98          (10) "Secure storage" means a firearm that is stored in a locked container or equipped with a tamper resistant

99    mechanical lock or other safety device that is properly engaged so as to render the firearm inoperable by a person other

100   than the owner or other lawfully authorized user.

101         § 1464. Manufacture, sale, transport, transfer, purchase, receipt, and possession of assault weapons; class E or F

102   felony.

103         (a) Prohibitions. - Except as provided in subsection (b) or (c) of this section, it is unlawful for a person to do any of

104   the following:

105         (1) Transport an assault weapon into this State.

106         (2) Manufacture, sell, offer to sell, transfer, purchase, receive, or possess an assault weapon.

107         (b) Applicability - This section does not apply to any of the following:

108         (1) The following individuals, if acting within the scope of official business:

109         a. Personnel of the United States government or a unit of that government.

110         b. Members of the armed forces of the United States or of the National Guard.

111         c. A law-enforcement officer.

112         (2) An assault weapon modified to render it permanently inoperative.

LC : MJC : NMX                                                    Released: 04/10/2019  11:23 AM
1241500024

113         (3) Possession, importation, manufacture, receipt for manufacture, shipment for manufacture, storage,

114  purchases, sales, and transport to or by a licensed firearms dealer or manufacturer who does any of the following:

115         a. Provides or services an assault weapon for a law-enforcement agency of this State or for personnel

116  exempted under paragraph (b)(1) of this section.

117         b. Acts to sell or transfer an assault weapon to a licensed firearm dealer in another state or to an

118  individual purchaser in another state through a licensed firearms dealer.

119         c. Acts to return to a customer in another state an assault weapon transferred to the licensed firearms

120  dealer or manufacturer under the terms of a warranty or for repair.

121         (4) Organizations that are required or authorized by federal law governing their specific business or activity to

122  maintain assault weapons.

123         (5) The receipt of an assault weapon by inheritance, and possession of the inherited assault weapon, if the

124  decedent lawfully possessed the assault weapon and the person inheriting the assault weapon is not otherwise a person

125  prohibited under § 1448 of this title.

126         (6) The receipt of an assault weapon by a personal representative of an estate for purposes of exercising the

127  powers and duties of a personal representative of an estate.

128         (7) Possession by a qualified retired law-enforcement officer who is not otherwise prohibited from receiving

129  an assault weapon if either of the following applies:

130         a. The assault weapon is sold or transferred to the qualified retired law-enforcement officer by the law-

131  enforcement agency on retirement.

132         b. The assault weapon was purchased or obtained by the qualified retired law-enforcement officer for

133  official use with the law-enforcement agency before retirement.

134         (8) Possession or transport by an armored car guard, as defined in § 1302 of Title 24, if the armored car guard

135  is acting within the scope of employment with an armored car agency, as defined under § 1302 of Title 24, and is

136  licensed under Chapter 13 of Title 24.

137         (9) Possession, receipt, and testing by, or shipping to or from any of the following:

138         a. An ISO 17025 accredited, National Institute of Justice-approved ballistics testing laboratory.

139         b. A facility or entity that manufactures or provides research and development testing, analysis, or

140  engineering for personal protective equipment or vehicle protection systems.

141         (c) Exceptions. -

LC : MJC : NMX
1241500024

Released: 04/10/2019  11:23 AM

142    (1) A licensed firearms dealer may continue to do all of the following with an assault weapon that the licensed

143    firearms dealer lawfully possessed on or before [the effective date of this Act]:

144        a. Possess the assault weapon.

145        b. Sell the assault weapon or offer the assault weapon for sale. But, the licensed firearms dealer may only

146    sell the assault weapon or offer the assault weapon for sale as permitted under paragraph (b)(3)b. of this section.

147        c. Transfer the assault weapon. But, the licensed firearms dealer may only transfer the assault weapon as

148    permitted by paragraph (b)(3)b. or (b)(3)c. of this section or by paragraph (d)(2)b. of this section.

149    (2)a. A licensed firearms dealer may take possession of an assault weapon from a person who lawfully

150    possessed the assault weapon before [the effective date of this Act] for the purposes of servicing or repairing the

151    assault weapon.

152        b. A licensed firearms dealer may transfer possession of an assault weapon received under paragraph

153    (c)(2)a. of this section for purposes of accomplishing service or repair of the assault weapon.

154    (3) A person who lawfully possessed, had a purchase order for, or completed an application to purchase an

155    assault weapon before [the effective date of this Act], may possess and transport the assault weapon on or after [the

156    effective date of this Act] only under the following circumstances:

157        a. At that person's residence, place of business, or other property owned by that person, or on property

158    owned by another person with the owner's express permission.

159        b. While on the premises of a shooting range.

160        c. While attending any exhibition, display, or educational project that is about firearms and that is

161    sponsored by, conducted under the auspices of, or approved by a law-enforcement agency or a nationally or state

162    recognized entity that fosters proficiency in, or promotes education about, firearms.

163        d. While transporting the assault weapon between any of the places set forth in this this paragraph (c)(3)

164    of this section, or to any licensed firearms dealer for servicing or repair under paragraph (c)(2) of this section, if

165    the person places the assault weapon in secure storage.

166    (4) A person may transport an assault weapon to or from any of the following if the person places the assault

167    weapon in secure storage:

168        a. An ISO 17025 accredited, National Institute of Justice-approved ballistics testing laboratory.

169        b. A facility or entity that manufactures or provides research and development testing, analysis, or

170    engineering for personal protective equipment or vehicle protection systems.

LC : MJC : NMX
1241500024

Released: 04/10/2019  11:23 AM

171     (5) The transfer of an assault weapon from the person owning the assault weapon to a family member, and

172     possession of the transferred assault weapon, if the person lawfully possessed the assault weapon and the family

173     member to whom the assault weapon is transferred is not otherwise a person prohibited under § 1448 of this title. For

174     purposes of this paragraph, "family member" means a spouse or an individual related by consanguinity within the third

175     degree as determined by the common law.

176     (d) Penalty. - A violation of this section is a class F felony for a first offense and a class E felony for any

177     subsequent offense within 10 years of a prior offense.

178     (e) Disposal. - A law-enforcement agency in possession of a person's assault weapon as a result of an arrest under

179     this section shall dispose of the assault weapon under the process established for deadly weapons and ammunition under §

180     2311 of this title following the person's adjudication of delinquency or conviction under this section or by the person's

181     agreement to forfeit the assault weapon under an agreement to plead delinquent or guilty to another offense.

182     § 1465. Voluntary certificate of possession.

183     (a) A person who is exempt from § 1464(a) of this title under § 1464(c) of this title may, no later than 1 year from

184     the [effective date of this Act], apply to the Secretary of the Department of Safety and Homeland Security for a certificate

185     of possession.

186     (b) A certificate of possession is conclusive evidence that person lawfully possessed, had a purchase order for, or

187     completed an application to purchase an assault weapon before [the effective date of this Act] and is entitled to continue to

188     possess and transport the assault weapon on or after [the effective date of this Act] under § 1464(c)(3) of this title.

189     (c) The Secretary of the Department of Safety and Homeland Security shall promulgate regulations to establish

190     procedures with respect to the application for and issuance of certificates of possession for assault weapons that are

191     lawfully owned and possessed by person [the effective date of this Act]. Regulations under this subsection must include all

192     of the following:

193     (1) That the application contain proof that the person lawfully possessed, had a purchase order for, or

194     completed an application to purchase an assault weapon before [the effective date of this Act].

195     (2) That the certificate of possession must contain a description of the assault weapon, including the make,

196     model, and serial number. For an assault weapon manufactured before 1968, identifying marks may be substituted for

197     the serial number required by paragraph (c)(1) of this section.

198     (3) That the certificate of possession must contain the full name, address, date of birth, and thumbprint of the

199     person who owns the assault weapon, and any other information the Secretary deems appropriate.

LC : MJC : NMX
1241500024                                                                  Released: 04/10/2019  11:23 AM

200   (4) That the name and address of the person issued a certificate of possession is confidential and may not be

201   disclosed, except to a law-enforcement agency and its employees acting in the performance of official duties.

202   (5) That the Secretary shall make certificates of possession available in a searchable, centralized database, to

203   any state or federal law enforcement agency to be used only for valid law enforcement purposes.

204   (d) A certificate of possession only authorizes the possession of an assault weapon specified in the certificate by

205   the resident to whom the Secretary issued the certificate.

206   (e) A person in possession of multiple assault weapons on [the effective date of this Act] must apply for a separate

207   certificate for each assault weapon the person wants to certify lawfully possessed, had a purchase order for, or completed an

208   application to purchase an assault weapon before [the effective date of this Act].

209   §§ 1466 – 1469. [Reserved.]

210   Section 2. Amend § 1457, Title 11 of the Delaware Code by making deletions as shown by strike through and

211   insertions as shown by underline as follows:

212   § 1457. Possession of a weapon in a Safe School and Recreation Zone; class D, E, or F felony; class A or B

213   misdemeanor.

214   (a) Any person who commits any of the offenses described in subsection (b) of this section, or any juvenile who

215   possesses a firearm or other deadly weapon, and does so while in or on a "Safe School and Recreation Zone" shall be guilty

216   of the crime of possession of a weapon in a Safe School and Recreation Zone.

217   (b) The underlying offenses in Title 11 shall be:

218   (1) Section 1442. — Carrying a concealed deadly weapon; class G felony; class D felony.

219   (2) Section 1444. — Possessing a destructive weapon; class E felony.

220   (3) Section 1446. — Unlawfully dealing with a switchblade knife; unclassified misdemeanor.

221   (4) Section 1448. — Possession and purchase of deadly weapons by persons prohibited; class F felony.

222   (5) Section 1452. — Unlawfully dealing with knuckles-combination knife; class B misdemeanor.

223   (6) Section 1453. — Unlawfully dealing with martial arts throwing star; class B misdemeanor.

224   (7) Section 1464. – Manufacture, sale, transport, transfer, purchase, receipt, or possession of assault weapons;

225   class E or F felony.

226   Section 3. If any provision of this Act or the application of this Act to any person or circumstance is held invalid,

227   the provisions of this Act are severable if the invalidity does not affect the other provisions or applications of the Act which

228   can be given effect without the invalid provision or application.

229   Section 4. This Act is to be known as the "Delaware Assault Weapons Prohibition Act of 2019."

LC : MJC : NMX
1241500024

Released: 04/10/2019  11:23 AM

230          Section 5. This Act takes effect 60 days after its enactment into law.

SYNOPSIS

This Act prohibits the manufacture, sale, offer to sell, transfer, purchase, receipt, possession, or transport of assault weapons in Delaware, subject to certain exceptions. One exception relevant to individuals is that the Act does not prohibit the possession and transport of firearms that were lawfully possessed or fully applied for before the effective date of this Act; although for these firearms there are certain restrictions relating to their possession and transport after the effective date of this Act. This Act creates a voluntary certificate of possession, to enable persons who lawfully possess an assault weapon before the effective date of this Act to be able to prove ownership after the effective date of this Act.

This Act is based on the Firearm Safety Act of 2013 ("FSA") passed in Maryland in the wake of the tragic slaughtering of children on December 14, 2012, at Sandy Hook Elementary School in Newtown, Connecticut. The FSA's assault weapons ban was upheld as constitutional on February 21, 2017, by the full membership of the United States Court of Appeals for the Fourth Circuit, in the case of Kolbe v. Hogan, 849 F.3d 114 (4th Cir. 2017).

The names Newtown, Aurora, San Bernardino, Orlando, Las Vegas, and Parkland, among others, have become synonymous with tragic killing of innocent, unsuspecting Americans of all ages and backgrounds, amidst a framework of federal and state laws that have permitted the purchase of weapons designed for the battlefield — not for our schools, our theaters, our places of worship, or our homes.

Safety — both for the general public, as well as members of Delaware's law-enforcement community — is the objective of this Act, as it was for the FSA. And, as with the FSA, a primary goal of this Act is to reduce the availability of assault weapons so that when a criminal acts, he or she does so with a less dangerous weapon and less severe consequences.

Relying on United States Supreme Court precedent from District of Columbia v. Heller, 554 U.S. 570 (2008), as well as the holdings of its sister circuits, the full Fourth Circuit concluded that the assault weapons banned by the FSA are not protected by the Second Amendment. The Fourth Circuit was convinced that the banned assault weapons are among those arms that are "like" "M-16 rifles" — "weapons that are most useful in military service" — which the Heller Court singled out as being beyond the Second Amendment's reach.

The Fourth Circuit concluded that Maryland had presented extensive uncontroverted evidence demonstrating that the assault weapons outlawed by the FSA are exceptionally lethal weapons of war. The Fourth Circuit also concluded that the evidence showed the difference between the fully automatic and semiautomatic versions of military-style weapons is slight. Further evidence considered by the Fourth Circuit that motivates this Act is as follows:
    (1) Like their fully automatic counterparts, the banned assault weapons are firearms designed for the battlefield, for the soldier to be able to shoot a large number of rounds across a battlefield at a high rate of speed, and that their design results in a capability for lethality — more wounds, more serious, in more victims — far beyond that of other firearms, including other semiautomatic guns.
    (2) The banned assault weapons have been used disproportionately to their ownership in mass shootings and the murders of law-enforcement officers.
    (3) The banned assault weapons further pose a heightened risk to civilians in that rounds from assault weapons have the ability to easily penetrate most materials used in standard home construction, car doors, and similar materials, and that criminals armed with the banned assault weapons possess a "military-style advantage" in firefights with law-enforcement officers, as such weapons allow criminals to effectively engage law-enforcement officers from great distances and their rounds easily pass through the soft body armor worn by most law-enforcement officers.
    (4) Although self-defense is a conceivable use of the banned assault weapons, most individuals choose to keep other firearms for that purpose.
    (5) Prohibitions against assault weapons will promote public safety by reducing the availability of those armaments to mass shooters and other criminals, by diminishing their especial threat to law-enforcement officers, and by hindering their unintentional misuse by civilians.
    (6) In many situations, the semiautomatic fire of an assault weapon is more accurate and lethal than the automatic fire.

Finding this evidence and these conclusions by the Fourth Circuit to be strongly persuasive of the applicable framework of constitutional rights, and firmly believing that promoting the safety of the Delaware public and Delaware law-enforcement is a paramount function of the Delaware General Assembly, Delaware legislators file this Act in the name of public safety and with adherence to core constitutional principles.

Author: Senator Townsend

LC : MJC : NMX
1241500024                                         Released: 04/10/2019  11:23 AM

# Delaware General Assembly (/)                                    🔍

## Senate Amendment 1 to Senate Bill 68
**150th General Assembly (2019 - 2020)**

## Bill Progress

**Current Status:**

PWB 5/6/19

**What happens next?**

The General Assembly has ended, the current status is the final status.

## Bill Details

**View Parent Bill:**

SB 68 -SA 1 (/BillDetail/47326)

**Introduced on:**

5/6/19

**Primary Sponsor:**

Paradee (/LegislatorDetail?personId=355)

**Additional Sponsor(s):**

**Co-Sponsor(s):**

**Original Synopsis:**

This Amendment preserves many of the gun safety measures contained within the Act, but exempts the following individuals who are not otherwise prohibited from possessing a firearm from being prohibited from owning, purchasing, or transferring an assault weapon: 1. Delaware residents born on or before June 30, 1998. 2. Delaware residents who hold a valid license to carry a concealed deadly weapon. 3. Delaware residents who have completed a firearms training course that is sponsored by a federal, state, county or municipal law enforcement agency; a college; a nationally recognized organization that customarily offers firearms training; or a firearms training school with instructors certified by a nationally recognized organization that customarily offers firearms training. In addition, this Amendment permits licensed firearm dealers to sell or transfer an assault weapon to the 3 types of individuals exempted from the Act's prohibition by this Amendment.

## Bill Text

**Original Text:**

View HTML (/json/BillDetail/GenerateHtmlDocument?
legislationId=47416&legislationTypeId=5&docTypeId=2&legislationName=SA1toSB68)

View PDF (/json/BillDetail/GeneratePdfDocument?
legislationId=47416&legislationTypeId=5&docTypeId=2&legislationName=SA1toSB68)

*You may need to disable your browser's pop-up blocker to view linked documents.*

## Amendments

💬 Delaware FAQ Chat                    ^

| Amendment | Status | Introduction Date | Primary Sponsor | View Details |
|-----------|--------|-------------------|-----------------|--------------|

*No Records Available*

## Roll Calls

| Chamber | Result | Date | Vote Type | Yes | No | Not Voting | Absent | PDF |
|---------|--------|------|-----------|-----|----|-----------|--------|----|

*No Records Available*

## Actions History

| Date | Action |
|------|--------|
| 5/6/19 | Introduced and Placed With Bill |

## Legislation Detail Feeds

Roll Calls (/rss/RssFeeds/RollCallsByLegislation?legislationId=47416)

View All Legislation (/AllLegislation)

View All Senate Legislation (/Legislation/Senate)

View All House Legislation (/Legislation/House)

## Contact Legislative Hall

📍 411 Legislative Avenue
Dover, DE 19901

📞 302-744-4114

✉ (mailto:DivisionOfResearch@state.de.us) (mailto:DivisionOfResearch@delaware.gov)Legislative Hall
(mailto:LC_reception@delaware.gov)

***To ensure quick and accurate assistance, please include your full name and address in your correspondence.***

## Useful links

FOIA Requests (/Footer/FOIARequests)

💬 Delaware FAQ Chat      ∧

Legislative Hall Media Credential Policy ([f669d9a7-009d-4d83-ddaa-000000000002]a036defe-af2a-6dfe-ae60-ff0000a39f38)

CSG (/Footer/CSG)

ULC (/Footer/ULC)

NCSL (/Footer/NCSL)

RSS Feeds (/RssFeed)

Legislative Notifications ([f669d9a7-009d-4d83-ddaa-000000000002]a913defe-af2a-6dfe-ae60-ff0000a39f38)

## Other Resources

Accessibility (https://legis.delaware.gov/docs/default-source/default-document-library/adapolicy.pdf?sfvrsn=3560b238_2)

Delaware.gov (/Footer/DelawareGov)

Judicial (/Footer/Judicial)

Agency Contact Info (/Footer/AgencyList)

Copyright (/Footer/Copyright)

Disclaimer (/Footer/Disclaimer)

💬 Delaware FAQ Chat                                          ⌃

# Delaware General Assembly (/)      🔍

## Senate Substitute 1 for Senate Bill 68
**150th General Assembly (2019 - 2020)**

## Bill Progress

**Current Status:**

Senate Executive 5/9/19

**What happens next?**

The General Assembly has ended, the current status is the final status.

## Bill Details

**View Parent Bill:**

SB 68 -SA 1 (/BillDetail/47326)

**Introduced on:**

5/9/19

**Primary Sponsor:**

Townsend (/LegislatorDetail?personId=13)

**Additional Sponsor(s):**

Sen. McDowell (/LegislatorDetail?personId=133)
Rep. Chukwuocha (/LegislatorDetail?personId=13589)

**Co-Sponsor(s):**

Sen. Sokola (/LegislatorDetail?personId=90), Sturgeon (/LegislatorDetail?personId=13602)
Reps. Baumbach (/LegislatorDetail?personId=252), Bentz (/LegislatorDetail?personId=42), Bolden (/LegislatorDetail?personId=332), Heffernan (/LegislatorDetail?personId=97), K. Johnson (/LegislatorDetail?personId=13591), Kowalko (/LegislatorDetail?personId=176)

**Long Title:**

AN ACT TO AMEND THE DELAWARE CODE RELATING TO DEADLY WEAPONS.

**Original Synopsis:**

This Substitute Act takes the place of Senate Bill No. 68 (150th General Assembly) and removes the voluntary certificate of possession process. In all other respects this Act is similar to Senate Bill No. 68. Specifically, this Act prohibits the manufacture, sale, offer to sell, transfer, purchase, receipt, possession, or transport of assault weapons in Delaware, subject to certain exceptions. One exception relevant to individuals is that the Act does not prohibit the possession and transport of firearms that were lawfully possessed or fully applied for before the effective date of this Act; although for these firearms there are certain restrictions relating to their possession and transport after the effective date of this Act. This Act is based on the Firearm Safety Act of 2013 ("FSA") passed in Maryland in the wake of the tragic slaughtering of children on December 14, 2012, at Sandy Hook Elementary School in Newtown, Connecticut. The FSA's assault weapons ban was upheld as constitutional on February 21, 2017, by the full membership of the United States Court of Appeals for the Fourth Circuit, in the case of Kolbe v. Hogan, 849 F.3d 114 (4th Cir. 2017). The names Newtown, Aurora, San Bernardino, Orlando, Las Vegas, and Parkland, among others, have become synonymous with tragic killing of innocent, unsuspecting Americans of all ages and backgrounds, amidst a framework of federal and state laws that have permitted the purchase of weapons designed for the battlefield — not for our schools, our theaters, our places of worship, or our homes. Safety — both for the general public, as well as members of D̶ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ctive of this Act, as it was for the FSA. And, as with the FSA, a primary ᶜ 💬 **Delaware FAQ Chat**     ∧   weapons so that

when a criminal acts, he or she does so with a less dangerous weapon and less severe consequences. Relying on United States Supreme Court precedent from District of Columbia v. Heller, 554 U.S. 570 (2008), as well as the holdings of its sister circuits, the full Fourth Circuit concluded that the assault weapons banned by the FSA are not protected by the Second Amendment. The Fourth Circuit was convinced that the banned assault weapons are among those arms that are "like" "M-16 rifles" — "weapons that are most useful in military service" — which the Heller Court singled out as being beyond the Second Amendment's reach. The Fourth Circuit concluded that Maryland had presented extensive uncontroverted evidence demonstrating that the assault weapons outlawed by the FSA are exceptionally lethal weapons of war. The Fourth Circuit also concluded that the evidence showed the difference between the fully automatic and semiautomatic versions of military-style weapons is slight. Further evidence considered by the Fourth Circuit that motivates this Act is as follows: (1) Like their fully automatic counterparts, the banned assault weapons are firearms designed for the battlefield, for the soldier to be able to shoot a large number of rounds across a battlefield at a high rate of speed, and that their design results in a capability for lethality — more wounds, more serious, in more victims — far beyond that of other firearms in general, including other semiautomatic guns. (2) The banned assault weapons have been used disproportionately to their ownership in mass shootings and the murders of law-enforcement officers. (3) The banned assault weapons further pose a heightened risk to civilians in that rounds from assault weapons have the ability to easily penetrate most materials used in standard home construction, car doors, and similar materials, and that criminals armed with the banned assault weapons possess a "military-style advantage" in firefights with law- enforcement officers, as such weapons allow criminals to effectively engage law-enforcement officers from great distances and their rounds easily pass through the soft body armor worn by most law-enforcement officers. (4) Although self-defense is a conceivable use of the banned assault weapons, most individuals choose to keep other firearms for that purpose. (5) Prohibitions against assault weapons will promote public safety by reducing the availability of those armaments to mass shooters and other criminals, by diminishing their especial threat to law-enforcement officers, and by hindering their unintentional misuse by civilians. (6) In many situations, the semiautomatic fire of an assault weapon is more accurate and lethal than the automatic fire. Finding this evidence and these conclusions by the Fourth Circuit to be strongly persuasive of the applicable framework of constitutional rights, and firmly believing that promoting the safety of the Delaware public and Delaware law-enforcement is a paramount function of the Delaware General Assembly, Delaware legislators file this Act in the name of public safety and with adherence to core constitutional principles.

**Volume:Chapter:** ❓

N/A

**Advisory Number:**

N/A

**Fiscal Note/Fee Impact:**

Not Required

**Effective Date:**

Takes effect upon being signed into law

**Sunset Date:**

N/A

## Bill Text

**Original Text:**

View HTML (/json/BillDetail/GenerateHtmlDocument?
legislationId=47464&legislationTypeId=6&docTypeId=2&legislationName=SS1forSB68)

View PDF (/json/BillDetail/GeneratePdfDocument?
legislationId=47464&legislationTypeId=6&docTypeId=2&legislationName=SS1forSB68)

*You may need to disable your browser's pop-up blocker to view linked documents.*

## Amendments

| Amendment | Status | Introduction Date | Primary Sponsor | View Details |
|-----------|--------|-------------------|-----------------|--------------|

💬 Delaware FAQ Chat

Case 1:22-cv-00951-MN    Document 1-1    Filed 07/20/22    Page 29 of 34 PageID #: 86

*No Records Available*

## Committee Reports

| Date | Committee | # Members | Favorable | On Its Merits | Unfavorable |
|------|-----------|-----------|-----------|---------------|-------------|

*No Records Available*

## Roll Calls

| Chamber | Result | Date | Vote Type | Yes | No | Not Voting | Absent | PDF |
|---------|--------|------|-----------|-----|-----|-----------|--------|-----|

*No Records Available*

## Actions History

| Date | Action |
|------|--------|
| 5/9/19 | Adopted in lieu of the original bill SB 68, and Assigned to Executive Committee in Senate |

## Legislation Detail Feeds

Roll Calls (/rss/RssFeeds/RollCallsByLegislation?legislationId=47464)

View All Legislation (/AllLegislation)

View All Senate Legislation (/Legislation/Senate)

View All House Legislation (/Legislation/House)

## Contact Legislative Hall

📍 411 Legislative Avenue
Dover, DE 19901

📞 302-744-4114

✉ (mailto:DivisionOfResearch@state.de.us) (mailto:DivisionOfResearch@delaware.gov)Legislative Hall
(mailto:LC_reception@delaware.gov)

***To ensure quick and accurate assistance, please*** 💬 Delaware FAQ Chat        ⌃ *espondence.*

## Useful links

FOIA Requests (/Footer/FOIARequests)

Legislative Hall Media Credential Policy ([f669d9a7-009d-4d83-ddaa-000000000002]a036defe-af2a-6dfe-ae60-ff0000a39f38)

CSG (/Footer/CSG)

ULC (/Footer/ULC)

NCSL (/Footer/NCSL)

RSS Feeds (/RssFeed)

Legislative Notifications ([f669d9a7-009d-4d83-ddaa-000000000002]a913defe-af2a-6dfe-ae60-ff0000a39f38)


## Other Resources

Accessibility (https://legis.delaware.gov/docs/default-source/default-document-library/adapolicy.pdf?sfvrsn=3560b238_2)

Delaware.gov (/Footer/DelawareGov)

Judicial (/Footer/Judicial)

Agency Contact Info (/Footer/AgencyList)

Copyright (/Footer/Copyright)

Disclaimer (/Footer/Disclaimer)

💬 Delaware FAQ Chat                                    ⌃

EXHIBIT C

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 21-1255**

_____

DOMINIC BIANCHI, an individual and resident of Baltimore County; DAVID
SNOPE, an individual and resident of Baltimore County; MICAH SCHAEFER, an
individual and resident of Anne Arundel County; FIELD TRADERS LLC, A
resident of Anne Arundel County; FIREARMS POLICY COALITION, INC.;
SECOND AMENDMENT FOUNDATION; CITIZENS COMMITTEE FOR THE
RIGHT TO KEEP AND BEAR ARMS,

        Plaintiffs - Appellants,

    v.

BRIAN E. FROSH, in his official capacity as Attorney General of Maryland; COL.
WOODROW W. JONES, III, in his official capacity as Secretary of State Police of
Maryland; R. JAY FISHER, in his official capacity as Sheriff of Baltimore County,
Maryland; JIM FREDERICKS, in his official capacity as Sheriff of Anne Arundel
County, Maryland,

        Defendants - Appellees.

_____

Appeal from the United States District Court for the District of Maryland, at Baltimore.
James K. Bredar, Chief District Judge.  (1:20-cv-03495-JKB)

_____

Submitted:  September 14, 2021                    Decided:  September 17, 2021

_____

Before THACKER and RICHARDSON, Circuit Judges, and TRAXLER, Senior Circuit
Judge.

_____

Affirmed by unpublished per curiam opinion.

_____


AUTHENTICATED
U.S. GOVERNMENT
INFORMATION
GPO

Raymond M. DiGuiseppe, THE DIGUISEPPE LAW FIRM, P.C., Southport, North Carolina; Adam Kraut, FIREARMS POLICY COALTION, Sacramento, California; David H. Thompson, Peter A. Patterson, Tiernan B. Kane, COOPER & KIRK, PLLC, Washington, D.C., for Appellants. Brian E. Frosh, Attorney General of Maryland, Robert A. Scott, Assistant Attorney General, Ryan R. Dietrich, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees.

————————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Plaintiffs appeal the district court's order dismissing their 42 U.S.C. § 1983 complaint for failure to state a claim upon which relief may be granted. In this action, Plaintiffs sought to challenge Maryland's Firearm Safety Act's ban on assault weapons as violative of the Second Amendment. As Plaintiffs concede, however, their argument is squarely foreclosed by this court's decision in *Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017) (en banc). "As a panel, we are not authorized to reconsider an en banc holding." *Joseph v. Angelone*, 184 F.3d 320, 325 (4th Cir. 1999). Accordingly, we affirm the district court's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*