## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DELAWARE STATE SPORTSMEN'S ASSOCIATION, INC; BRIDGEVILLE RIFLE & PISTOL CLUB, LTD.; DELAWARE RIFLE AND PISTOL CLUB; DELAWARE ASSOCIATION OF FEDERAL FIREARMS LICENSEES; MADONNA M. NEDZA; CECIL CURTIS CLEMENTS; JAMES E. HOSFELT, JR; BRUCE C. SMITH; VICKIE LYNN PRICKETT; and FRANK M. NEDZA, | ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. 1:22-cv-00951-RGA |
| DELAWARE DEPARTMENT OF SAFETY AND HOMELAND SECURITY; NATHANIAL MCQUEEN JR. in his official capacity as Cabinet Secretary, Delaware Department of Safety and Homeland Security; and COL. MELISSA ZEBLEY in her official capacity as superintendent of the Delaware State Police, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPENING BRIEF IN SUPPORT OF DEFENDANTS'
## MOTION FOR PARTIAL DISMISSAL OF THE AMENDED COMPLAINT

ROSS ARONSTAM & MORITZ LLP

David E. Ross (#5228)
Bradley R. Aronstam (#5129)
Garrett B. Moritz (#5646)
1313 North Market Street, Suite 1001
Wilmington, DE 19801
(302) 576-1600
dross@ramllp.com
baronstam@ramllp.com
gmoritz@ramllp.com

STATE OF DELAWARE DEPARTMENT OF JUSTICE

Kenneth L. Wan (#5667)
Caneel Radinson-Blasucci (#6574)
Deputy Attorneys General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
kenneth.wan@delaware.gov
caneel.radinson-blasucci@delaware.gov

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

**PAGE**

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ........................................................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS .................................................................... 2

STATEMENT OF FACTS ............................................................................................................. 2

ARGUMENT .................................................................................................................................. 3

I.      THE REGULATIONS DO NOT VIOLATE DUE PROCESS (COUNTS III, X) ........... 3

    A.      The Regulations do not constitute an impermissible burden shift ......................... 3

    B.      The Regulations are not unconstitutionally vague ................................................. 5

II.     THE REGULATIONS ARE NOT TAKINGS (COUNTS IV, XI) .................................. 7

III.    THE REGULATIONS DO NOT VIOLATE THE EQUAL
        PROTECTION CLAUSE (COUNTS V AND XII) ......................................................... 10

IV.     THE REGULATIONS DO NOT STATE A CLAIM UNDER THE DORMANT
        COMMERCE CLAUSE (COUNTS VI AND XIII) ........................................................ 12

V.      THE REGULATIONS ARE NOT PREEMPTED (COUNTS VII AND XIV) .............. 16

CONCLUSION ............................................................................................................................. 20

4877-2241-5420, v. 9

## TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Am. Trucking Ass'ns, Inc. v. Whitman*,
    437 F.3d 313 ..................................................................................................12

*AmeriSource Corp. v. United States*,
    525 F.3d 1149 (Fed. Cir. 2008)........................................................................8

*Ass'n of N. J. Rifle & Pistol Clubs, Inc. v. Grewal*,
    2018 WL 4688345 (D.N.J. Sept. 28, 2018), *aff'd sub nom. Ass'n of N. J. Rifle
    & Pistol Clubs, Inc. v. Att'y Gen. N. J.*, 910 F.3d 106 (3d Cir. 2018),
    *abrogated on other grounds by N. Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    142 S. Ct. 2111 (2022) ..................................................................................8, 9

*Bennis v. Michigan*,
    516 U.S. 442 (1996)..........................................................................................7

*Blaustein & Reich, Inc. v. Buckles*,
    365 F.3d 281 (4th Cir. 2004) .....................................................................19, 20

*Brown v. Handgun Permit Rev. Bd.*,
    982 A.2d 830 (Md. Ct. Spec. App. 2009) ......................................................17

*Camps Newfound/Owatonna, Inc. v. Town of Harrison*,
    520 U.S. 564 (1997).......................................................................................14

*Carteret Sav. Bank, F.A. v. Off. of Thrift Supervision*,
    963 F.2d 567 (3d Cir. 1992).............................................................................10

*City of Phila. v. New Jersey*,
    437 U.S. 617 (1978).........................................................................................15

*Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*,
    298 F.3d 201 (3d Cir. 2002)............................................................................12

*Coal. of N. J. Sportsmen, Inc. v. Whitman*,
    44 F. Supp. 2d 666 (D.N.J. 1999), *aff'd*, 263 F.3d 157 (3d Cir. 2001)...............5

*Coalition of N. J. Sportsmen v. Florio*,
    744 F. Supp. 602 (D.N.J. 1990) ....................................................................17

*Doe v. Wilm. Hous. Auth.*,
    88 A.3d 654 (Del. 2014) .................................................................................15

*DuBerry v. District of Columbia*,
    924 F.3d 570 (D.C. Cir. 2019) .......................................................................11

4877-2241-5420, v. 9

*DuBerry v. District of Columbia*,
    824 F.3d 1046 (D.C. Cir. 2016) ................................................................11

*English v. Gen. Elec. Co.*,
    496 U.S. 72 (1990) ..................................................................................19

*Farina v. Nokia Inc.*,
    625 F.3d 97 (3d Cir. 2010) .....................................................................16

*Fed. Law Enf't Officers Ass'n v. Grewal*,
    2022 WL 2236351 (D.N.J. June 21, 2022) (appeal pending) ...........................11, 12

*Frein v. Pa. State Police*,
    530 F. Supp. 3d 526 (M.D. Pa. 2021), *aff'd*, 47 F.4th 247 (3d Cir. 2022) ..............3

*Fresno Rifle & Pistol Club, Inc. v. Van de Kamp*,
    746 F. Supp. 1415 (E.D. Cal. 1990), *aff'd*, 965 F.2d 723 (9th Cir. 1992) ..............17

*Fyock v. Sunnyvale*,
    779 F.3d 991 (9th Cir. 2015) ..................................................................15

*Gibson v. Mayor & Council of Wilm.*,
    355 F.3d 215 (3d Cir. 2004) .....................................................................5

*Hart v. Gordon*,
    591 F. App'x 125 (3d Cir. 2014) ...............................................................7

*J & G Sales Ltd. v. Truscott*,
    473 F.3d 1043 (9th Cir. 2007) ..............................................................18, 20

*Johnson v. City of Shelby, Miss.*,
    574 U.S. 10 (2014) ....................................................................................3

*Jones v. Phila. Police Dep't*,
    57 F. App'x 939 (3d Cir. 2003) ...............................................................7

*Juzwin v. Asbestos Corp., Ltd.*,
    900 F.2d 686 (3d Cir. 1990) ...................................................................14

*Kassel v. Consol. Freightways Corp. of Del.*,
    450 U.S. 662 (1981) ................................................................................14

*Keystone Redevelopment Partners, LLC v. Decker*,
    631 F.3d 89 (3d Cir. 2011) .....................................................................12

*Leland v. Oregon*,
    343 U.S. 790 (1952) ..................................................................................3

*Mitchell v. Atkins*,
    483 F. Supp. 3d 985 (W.D. Wash. 2020) ...................................................15

iii

*Mugler v. Kansas,*
    123 U.S. 623 (1887) ................................................................................................8

*N. Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo,*
    804 F.3d 242 (2d Cir. 2015) ...............................................................................15

*N. Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo,*
    990 F. Supp. 2d 349 (W.D.N.Y. 2013), *aff'd in part, rev'd in part on other
    grounds,* 804 F.3d 242 (2d Cir. 2015) ...............................................................15

*N.Y. State Rifle & Pistol Ass'n v. Bruen,*
    597 U.S. __, 142 S. Ct. 2111 (2022) .............................................................1, 15

*Nat'l Shooting Sports Found., Inc. v. Jones,*
    716 F.3d 200 (D.C. Cir. 2013) ...........................................................................19

*Nekrilov v. City of Jersey City,*
    45 F.4th 662 (3d Cir. 2022) ..................................................................................7

*Norfolk S. Corp. v. Oberly,*
    822 F.2d 388 (3d Cir. 1987) ...............................................................................15

*Oregon Waste Sys., Inc. v. Dep't of Env't Quality,*
    511 U.S. 93 (1994) ..............................................................................................12

*Pa. Coal Co. v. Mahon,*
    260 U.S. 393 (1922) ..............................................................................................7

*Patterson v. New York,*
    432 U.S. 197 (1977) ...........................................................................................3, 4

*Rhodes v. Brigano,*
    91 F.3d 803 (6th Cir. 1996) ..................................................................................3

*Richmond Boro Gun Club, Inc. v. City of New York,*
    896 F. Supp. 276 (E.D.N.Y. 1995) (TABLE), *aff'd,* 97 F.3d 681
    (2d Cir. 1996) ........................................................................................................5

*Robertson v. City & Cnty. of Denver,*
    874 P. 2d 325 (Colo. 1994) ..................................................................................5

*Ron Peterson Firearms, LLC v. Jones,*
    2013 WL 12085975 (D.N.M. Mar. 27, 2013), *aff'd,* 760 F.3d 1147
    (10th Cir. 2014) ...................................................................................................18

*RSM, Inc. v. Buckles,*
    254 F.3d 61 (4th Cir. 2001) ................................................................................18

iv

*Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*,
   422 F.3d 141 (3d Cir. 2005)..................................................................................10

*Silveira v. Lockyer*,
   312 F.3d 1052 (9th Cir. 2002), *as amended* (Jan. 27, 2003), *abrogated on*
   *other grounds by D.C. v. Heller*, 554 U.S. 570 (2008)..........................................9

*Smith v. United States*,
   568 U.S. 106 (2013)................................................................................................3

*Springfield Armory, Inc. v. City of Columbus*,
   29 F.3d 250 (6th Cir. 1994) ....................................................................................5

*State v. Baker*,
   720 A.2d 1139 (Del. 1998) ......................................................................................3

*State v. Newman*,
   2018 WL 4692446 (Del. Super. Ct. Sept. 26, 2018)................................................3

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
   535 U.S. 302 (2002).................................................................................................7

*United States v. Gatlin*,
   613 F.3d 374 (3d Cir. 2010), *as amended* (Oct. 22, 2010) ......................................4

*United States v. Guillen-Cruz*,
   853 F.3d 768 (5th Cir. 2017) .................................................................................18

*United States v. Lawrence*,
   349 F.3d 109 (3d Cir. 2003)......................................................................................3

*United States v. Perez*,
   5 F.4th 390 (3d Cir. 2021) .......................................................................................3

*United States v. Powell*,
   423 U.S. 87 (1975)...................................................................................................5

*United States v. Salerno*,
   481 U.S. 739 (1987)...............................................................................................15

*Wiese v. Becerra*,
   306 F. Supp. 3d 1190 (E.D. Cal. 2018)....................................................................6

*Wilson v. Cnty. of Cook*,
   968 N.E.2d 641 (Ill. 2012)....................................................................................5, 6

*Woody v. State*,
   219 A.3d 993 (Del. 2019) (TABLE).........................................................................4

4877-2241-5420, v. 9

## CONSTITUTIONS AND STATUTES

U.S. CONST. amend. V ............................................................................................7

U.S. CONST. amend. XIV, § 1 .............................................................................10

DEL. CONST. art. I, § 7 ..........................................................................................3

DEL. CONST. amend. II and art. I, § 20 ............................................................1, 2

18 U.S.C. § 926(a) ...............................................................................16, 18, 19, 20

18 U.S.C. § 926A ......................................................................................16, 17, 18

18 U.S.C. § 926A and § 926A(3)..........................................................................16

18 U.S.C. §§ 926B & 926C ..................................................................................11

18 U.S.C. § 926C ..................................................................................................11

18 U.S.C. § 926C(e) ..............................................................................................12

18 U.S.C. § 927 .....................................................................................................16

11 *Del. C.* §§ 301, 302 .............................................................................................3

11 *Del. C.* § 305 ......................................................................................................4

11 *Del. C.* § 1441 .................................................................................................13

11 *Del. C.* §§ 1441, 1468-1469A ......................................................................1, 2

11 *Del. C.* § 1441(j) .............................................................................................13

11 *Del. C.* § 1441B(c) ..........................................................................................10

11 *Del. C.* §§ 1464-1467 ....................................................................................1, 2

11 *Del. C.* §§ 1465(2) and (3) ...............................................................................5

11 *Del. C.* § 1466(c)(2) ..........................................................................................8

11 *Del. C.* § 1466 (c)(3) .........................................................................................8

11 *Del. C.* § 1466(c)(3)(a)-(d) .............................................................................13

11 *Del. C.* § 1466(c)(5) ..........................................................................................8

11 *Del. C.* § 1467(b) ...........................................................................................4, 19

11 *Del. C.* § 1467(c)(4) ........................................................................................19

11 *Del. C.* § 1469(c)(6) ................................................................................................9, 13

11 *Del. C.* § 1469(c)(7) ....................................................................................................9

11 *Del. C.* § 1469(d)(1), (2) ..........................................................................................10

**OTHER AUTHORITIES**

Concealed Carry Weapons Reciprocity, Office of the Attorney General of the
State of Delaware, *available at* https://attorneygeneral.delaware.gov/criminal/
concealed-carry-deadly-weapons-ccdw/ (last accessed Nov. 8, 2022) ...................................14

4877-2241-5420, v. 9

## INTRODUCTION

On June 30, 2022, in the wake of repeated episodes of tragic gun violence, the State of Delaware enacted a package of gun safety bills.  Included in this package were statutes regulating assault weapons, 11 *Del. C.* §§ 1464-1467 ("HB 450"), and large capacity magazines ("LCMs"), 11 *Del. C.* §§ 1441, 1468-1469A ("SS 1 for SB 6") (collectively, the "Regulations").

Plaintiffs' complaint seeks to invalidate HB 450 and SS 1 for SB 6 under the Second Amendment to the United States Constitution and Article I, § 20 of the Delaware Constitution. Plaintiffs' challenge invokes *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. __, 142 S. Ct. 2111 (2022), a Supreme Court decision issued after Delaware enacted the Regulations.  These challenges present important issues that should be fully litigated.

But in addition to these core issues, plaintiffs lard their complaint with assorted makeweight challenges, asserting that the Regulations also purportedly violate Due Process (Counts III and X), the Takings Clause (Counts IV and XI), the Equal Protection Clause (Counts V and XII), and the dormant Commerce Clause (Counts VI and XIII)—*and* are also purportedly preempted by federal statute (Counts VII and XIV).  As detailed below, these secondary challenges fail as a matter of law.  Because the survival of these meritless claims beyond the pleadings stage would unnecessarily complicate the proceedings in this case, defendants have moved to dismiss them.

Granting the motion and clearing out these claims will streamline the proceedings and enable the parties and the Court to focus on the real issue presented by this case:  Plaintiffs' challenge under the Second Amendment and Article I, § 20 of the Delaware Constitution.

## NATURE AND STAGE OF THE PROCEEDINGS

On July 20, 2022, plaintiffs filed an initial complaint challenging HB 450.  Dkt. 1.  On September 9, 2022, plaintiffs filed an Amended Complaint (Dkt. 5) ("Am. Compl."), which added a challenge to SS 1 for SB 6.  Defendants have moved for partial dismissal.

## STATEMENT OF FACTS

On June 30, 2022, Delaware enacted a package of gun safety bills.  Included in this package were statutes regulating assault weapons, 11 *Del. C.* §§ 1464-1467 ("HB 450"), and large capacity magazines ("LCMs"), 11 *Del. C.* §§ 1441, 1468-1469A ("SS 1 for SB 6") (collectively, the "Regulations").

Plaintiffs Delaware State Sportsmen's Association; Bridgeville Rifle and Pistol Club, Ltd.; Delaware Rifle and Pistol Club; Delaware Association of Federal Firearms Licensees; Madonna M. Nedza; Cecil Curtis Clements; James E. Hosfelt, Jr.; Bruce C. Smith; Vickie Lynn Prickett; and Frank M. Nedza are entities and persons who assert that they or their members will be affected by the Regulations.  Am. Compl. ¶¶ 22-31.

Defendants are Delaware Department of Safety and Homeland Security ("DDSHS"); Secretary Nathanial McQueen Jr., the Cabinet Secretary of the DDSHS, in his official capacity; and Col. Melissa Zebley, the Superintendent of the Delaware State Police, in her official capacity. *Id.* ¶¶ 32-34.  Plaintiffs seek a declaration that the Regulations violate multiple constitutional provisions and an order enjoining their enforcement by defendants.  *Id.* ¶ 8 & Prayer for Relief (a)-(e).

Defendants do not seek dismissal of plaintiffs' core challenges under the Second Amendment and Article I, § 20 of the Delaware Constitution.  But for the reasons stated herein, plaintiffs' various other challenges to the Regulations should be dismissed.

**ARGUMENT**

To survive dismissal, "[a] plaintiff … must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "This requirement 'calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' necessary elements of the plaintiff's cause of action." *Frein v. Pa. State Police*, 530 F. Supp. 3d 526, 529 (M.D. Pa. 2021), *aff'd*, 47 F.4th 247 (3d Cir. 2022) (quoting *Twombly*).

## I.  THE REGULATIONS DO NOT VIOLATE DUE PROCESS (COUNTS III, X).

### A.  The Regulations do not constitute an impermissible burden shift.

In Counts III and X, plaintiffs allege that the Regulations impermissibly "shifts the burden of proof away from the State of Delaware and onto ordinary citizens … contrary to the Due Process Clause's protection of the accused against conviction except upon proof beyond a reasonable doubt" and "the Delaware Constitution, Article I, § 7 and 11 *Del. C.* §§ 301, 302." Am. Compl. ¶¶ 171, 269. Plaintiffs are wrong. The affirmative defenses established by the Regulations do not negate any element of a crime. As a result, they do not impermissibly shift the burden of proof.

In general, a law may not impose upon a defendant the burden of negating an element of a crime. *See, e.g.*, *State v. Baker*, 720 A.2d 1139, 1151 (Del. 1998); *Rhodes v. Brigano*, 91 F.3d 803, 807 (6th Cir. 1996). But an affirmative defense does not unconstitutionally burden shift if it "does not serve to negative any facts of the crime which the State is to prove in order to convict of" the crime. *Patterson v. New York*, 432 U.S. 197, 207 (1977). As a result, courts have rejected claims that affirmative defenses impermissibly shift the burden of proof. *See, e.g.*, *United States v. Perez*, 5 F.4th 390 (3d Cir. 2021); *Smith v. United States*, 568 U.S. 106 (2013); *Patterson*, 432 U.S. 197; *Leland v. Oregon*, 343 U.S. 790 (1952); *United States v. Lawrence*, 349 F.3d 109 (3d Cir. 2003); *State v. Newman*, 2018 WL 4692446 (Del. Super. Ct. Sept. 26, 2018).

Count III asserts—mis-citing Section 1467(a)—that Section 1467(b)'s affirmative defense of lawful possession or purchase of an assault weapon prior to June 30, 2022 reflects impermissible burden shifting.  Am. Compl. ¶¶ 170-171.  But proof of lawful possession or purchase of an "assault weapon prior to June 30, 2022" under Section 1467(b) does not negate any element of the statutory prohibition on the "transport," "[m]anufacture, s[ale], offer to sell, transfer, purchase, recei[pt], or possess[ion of] an assault weapon" under Section 1466.  As a result, the Regulations do not unconstitutionally shift the burden of proof to a criminal defendant because they "do[] not serve to negative any facts of the crime which the State is to prove."  *Patterson*, 432 U.S. at 207.

Count X asserts the same Due Process challenge to Section 1469(c)(5)'s concealed carry permit defense to Section 1469(a)'s prohibition on "manufactur[ing], sell[ing], offer[ing] for sale, purchas[ing], receiv[ing], transfer[ing], or possess[ing] a large-capacity magazine."  Am. Compl. ¶¶ 266-267, 269.  Section 1469(c) frames a concealed carry permit as an *exception* to Section 1469(a).  Under 11 *Del. C.* § 305, exceptions in Delaware criminal statutes constitute affirmative defenses.  *See, e.g.*, *United States v. Gatlin*, 613 F.3d 374, 378 (3d Cir. 2010), *as amended* (Oct. 22, 2010) ("[U]nder Delaware law, carrying a concealed handgun is a crime to which possessing a valid license *is an affirmative defense*, and an officer can presume a subject's possession is not lawful until proven otherwise." (emphasis added) (citing *Lively v. State*, 427 A.2d 882, 884 (Del. 1981))); *Woody v. State*, 219 A.3d 993 (Del. 2019) (TABLE) (holding that, under § 305, Delaware criminal statutes do not need to expressly call an exception an "affirmative defense" for it to constitute one).  Accordingly, plaintiffs' challenge to Section 1469(c)(5) on these grounds fails for the same reason as their challenge to Section 1467(b).  *See Patterson*, 432 U.S. at 207.

**B.      The Regulations are not unconstitutionally vague.**

In Counts III and X, plaintiffs allege that the term "copy", "copycat weapon" and "large-capacity magazine" are unconstitutionally vague.  Am. Compl. ¶¶ 173-176, 271-272.[1]  Not so.  The statute provides clear notice of its prohibitions and, as such, is not unconstitutionally vague.

"A statute or regulation must fail for vagueness if it 'forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning.'"  *Gibson v. Mayor & Council of Wilm.*, 355 F.3d 215, 225 (3d Cir. 2004) (citation omitted).  To survive a vagueness challenge, a statute must provide "clear notice that a reasonably ascertainable standard of conduct is mandated."  *United States v. Powell*, 423 U.S. 87, 92 (1975).

Here, each challenged provision provides clear notice of what is prohibited.  Sections 1465(2) and (3)'s references to "a copy" for both an "assault long gun" and an "assault pistol" are followed by a long list of specific models.  11 *Del. C.* §§ 1465(2) and (3).  Similarly, Section 1465(6) contains detailed definitions of "copycat weapons" based upon specifications.  *Id.* at § 1465(6).  These lists more than provide the required "minimally fair notice" because they identify a "core" group of banned weapons to which "copies" or "copycats" relate.  *Coal. of N. J. Sportsmen, Inc. v. Whitman*, 44 F. Supp. 2d 666, 676 (D.N.J. 1999) (citation omitted), *aff'd*, 263 F.3d 157 (3d Cir. 2001); *Richmond Boro Gun Club, Inc. v. City of New York*, 896 F. Supp. 276, 289-90 (E.D.N.Y. 1995) (TABLE), *aff'd*, 97 F.3d 681 (2d Cir. 1996) (rejecting vagueness challenge to "assault weapon" definition that included "core" group of banned weapons).

Courts have rejected vagueness challenges to similar gun legislation.[2]  In *Wilson v. Cnty. of Cook*, 968 N.E.2d 641 (Ill. 2012), for example, the Supreme Court of Illinois affirmed dismissal

---

[1]      In addition, plaintiffs shoehorn their vagueness challenges in Counts V and XII.

[2]      Plaintiffs' reliance on *Springfield Armory, Inc. v. City of Columbus*, 29 F.3d 250, 252 (6th Cir. 1994), and *Robertson v. City & Cnty. of Denver*, 874 P. 2d 325, 334 (Colo. 1994), is misplaced.

of a facial vagueness challenge to the use of the term "copies or duplicates" in legislation banning assault weapons.  Like Section 1465 here, the Illinois legislation included "a nonexhaustive list of weapons which are prohibited."  *Id.* at 652.  The court explained that "[a] person of ordinary intelligence would understand that section 54-211(7) includes the specific weapons listed and any imitations or reproductions of those weapons made by that manufacturer or another" and that "[w]hen read together with the listed weapons, the provision is not vague."  *Id.*

Count X alleges that Section 1468's definition of "large-capacity magazine" as a magazine "capable of accepting, or that can readily be converted to hold, more than 17 rounds of ammunition" is unconstitutionally vague because "ammunition magazines can often be used for multiple calibers of cartridge, and the number of rounds they can hold depends on the caliber."  Am. Compl. ¶ 272.  But a reasonable person of common intelligence could determine whether a magazine can hold a prohibited number of rounds for a particular caliber, and the Amended Complaint does not suggest otherwise.  Indeed, plaintiffs were able to determine the number of rounds that a magazine can hold based on its caliber, noting that a certain AR-15 magazine "will hold 30 rounds of 5.56 mm ammunition."  *Id.* ¶ 78.  As such, the statute is not vague.  *See, e.g.*, *Wiese v. Becerra*, 306 F. Supp. 3d 1190, 1200 n.13 (E.D. Cal. 2018) (dismissing vagueness claim as to large capacity magazine ban and noting "even if the magazine holds less than 11 rounds when used with a particular firearm … if the magazine 'has a capacity to accept more than 10 rounds,' it is prohibited under the plain language of the statute, and the ban is not void for vagueness based on this alleged ambiguity").  The Regulations are not unconstitutionally vague.

---

The challenged regulations in those cases (i) banned weapons with unspecified "modifications" or (ii) required persons to know "not only what guns their pistol was designed from, but also learn the design history of the ancestor gun."  The Regulations here clearly define "copy" and "copycat," and compliance does not require persons to have any historical gun knowledge.

## II.     THE REGULATIONS ARE NOT TAKINGS (COUNTS IV, XI).

The Takings Clause, as incorporated against the states by the Fourteenth Amendment, guarantees that no "private property [shall] be taken for public use, without just compensation." U.S. CONST. amend. V.   A physical taking occurs "[w]hen the government physically takes possession of an interest in property for some public purpose." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002).   Where no physical dispossession of property occurs, a regulation may nevertheless be deemed a "regulatory taking" if considered overly burdensome.  *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922).

"There are two types of regulatory takings:  (1) takings *per se* or total takings, where the regulation denies all economically beneficial productive use of the property" and "(2) partial takings that, though not rendering the property idle, require compensation under the test set forth in *Penn Central Transportation Co. v. City of New York*."  *Nekrilov v. City of Jersey City*, 45 F.4th 662, 669 (3d Cir. 2022) (citation omitted).  Under *Penn Central*, courts generally consider three factors to determine whether a regulation constitutes a taking:  (1) "[t]he economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the governmental action."  438 U.S. 120, 124 (1978).  Plaintiffs appear to claim that the Regulations are takings under the *Penn Central* test.  Am. Compl. ¶¶ 68-69, 87-89.  They are not for multiple reasons.

***First***, property seized pursuant to police power is not a taking under the Fifth Amendment that entitles the owner to compensation.  *Hart v. Gordon*, 591 F. App'x 125, 129, 129 n.19 (3d Cir. 2014).  The Supreme Court has held that when a government entity seizes property by powers other than eminent domain, the seizure is not a taking.  *Bennis v. Michigan*, 516 U.S. 442, 452-53 (1996) (citation omitted); *see also Jones v. Phila. Police Dep't*, 57 F. App'x 939, 943 (3d Cir. 2003) (confirming that property seized pursuant to police power is not seized under eminent

domain).  Indeed, "[p]roperty seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause."  *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1153 (Fed. Cir. 2008).   "Under the police power doctrine, the government may pass regulations to protect the general health, safety and welfare of its citizens[,] without having to recompense the aggrieved."  *Ass'n of N. J. Rifle & Pistol Clubs, Inc. v. Grewal*, 2018 WL 4688345, at *15 (D.N.J. Sept. 28, 2018) ("*Grewal*") (quotation marks and citation omitted), *aff'd sub nom. Ass'n of N. J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N. J.*, 910 F.3d 106, 124 (3d Cir. 2018), *abrogated on other grounds by N. Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. __, 142 S. Ct. 2111 (2022).  The Court can and should end its analysis here.

    ***Second***, even if analyzed under the test for regulatory takings, HB 450 is not a taking because it allows assault weapon owners to maintain possession and limited use of the weapon if obtained before HB 450 was enacted.  11 *Del. C.* § 1466 (c)(3).  An individual may possess and use such weapons at home, a place of business, other property owned by the individual, other property with the owner's consent, a shooting range, and at "any exhibition, display, or educational project that is about firearms and that is sponsored by, conducted under the auspices of, or approved by a law-enforcement agency or a nationally or state-recognized entity that fosters proficiency in, or promotes education about, firearms."  *Id.*  HB 450 also allows individuals to transfer such weapons to family members.  11 *Del. C.* § 1466(c)(5).

    Similarly, as to firearms dealers, HB 450 still allows for reasonable possession, sale, and service of assault weapons.  HB 450 allows firearms dealers who obtained assault weapons before its enactment to sell those weapons to individuals outside of Delaware.  *Id.*  Dealers are also still permitted to service assault weapons.  11 *Del. C.* § 1466(c)(2).  Merely prohibiting an item for sale for the public safety is not a taking.  *See Mugler v. Kansas*, 123 U.S. 623, 669 (1887) (law

prohibiting sale of liquor was not a taking).  The Ninth Circuit reached this precise result in *Silveira v. Lockyer*, 312 F.3d 1052, 1092 (9th Cir. 2002), *as amended* (Jan. 27, 2003), *abrogated on other grounds by D.C. v. Heller*, 554 U.S. 570, 575 (2008), rejecting a takings challenge to California's assault weapons ban.  312 F.3d at 1057-58.

*Third*, and again applying the test for regulatory takings solely for the sake of argument, SS 1 for SB 6 is not a taking because it provides an alternative to forfeiture.  *Grewal*, 2018 WL 4688345, at *15-16.  In *Grewal*, plaintiffs challenged a New Jersey statute regulating LCMs, alleging, among other things, an unconstitutional taking.  *Id.* at *15.  The Third Circuit found that the regulation did not constitute a taking because it did not require an owner of an LCM to relinquish the item.  *N. J. Rifle & Pistol Clubs*, 910 F.3d at 124.  Rather, LCM owners could either sell the LCM or maintain possession of the LCM if it was modified to accept 10 or fewer rounds. *Id.*[3]

Here, SS 1 for SB 6 is not a taking because it provides alternatives to forfeiture.  Like the regulation in *Grewal*, SS 1 for SB 6 allows owners to maintain possession of the LCM so long as it is permanently modified to accept 17 or fewer rounds of ammunition.  11 *Del. C.* § 1469(c)(7).  Additionally, any citizen with a valid concealed carry permit may possess an LCM.  *Id.*  Further, Delaware allows licensed dealers to sell LCMs to certain individuals, including citizens with concealed carry permits, law-enforcement personnel (both current and qualified retired), and members of the U.S. government or armed forces.  11 *Del. C.* § 1469(c)(6).  Thus, Delaware's LCM regulation is not a taking under the *Penn Central* test because it provides adequate

---

[3]    While the New Jersey statute also allowed registration of the LCM if it could not be modified, in light of other alternatives provided in the Delaware statute, the absence of this option does not change the analysis.

alternatives to forfeiture of the property and does not diminish the value of the property so much as to render it worthless.  *Id.*

**Fourth**, even assuming that the Regulations were somehow a taking (and they are not), that would *still* not render them invalid.  The Fifth Amendment only requires takings to be compensated.  As long as there is "an adequate process for obtaining … just compensation, then the property owner has no claim against the Government for a taking."  *Carteret Sav. Bank, F.A. v. Off. of Thrift Supervision*, 963 F.2d 567, 583 (3d Cir. 1992).  SS 1 for SB 6 expressly provides a process for compensation if an individual decides to forfeit the item.  11 *Del. C.* § 1469(d)(1), (2).  Likewise, if HB 450 resulted in a taking, plaintiffs would only be entitled to compensation— not injunctive relief or invalidation.  Counts IV and XI fail to state a claim.

## III.   THE REGULATIONS DO NOT VIOLATE THE EQUAL PROTECTION CLAUSE (COUNTS V AND XII).

Counts V and XII allege that the exceptions under HB 450 and SS1 for SB 6 permitting possession of assault weapons or large-capacity magazines by a qualified retired law-enforcement officer ("QRLEO") violate the Equal Protection Clause.  Plaintiffs' conclusory assertions here likewise fail to state a claim.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1. "This is essentially a direction that all persons *similarly situated* should be treated alike."  *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005) (emphasis added).

Plaintiffs fail to allege a violation of this standard.  The applicable statutes define QRLEOs to require that the retired officer must have "served as a law-enforcement officer for an aggregate of 10 years or more," and "[d]uring the most recent 12-month period, [must have] met, at the expense of the individual, the standards for qualification in firearms training for active law-

enforcement officers ….." 11 *Del. C.* § 1441B(c).  These requirements are meaningful.  "Retired law enforcement officers have training and experience not possessed by the general public."  *New Jersey Rifle & Pistol Clubs*, 910 F.3d at 125.  Because QRLEOs are not "similarly situated" to the general public, the Equal Protection Clause has not been violated.

For nearly three decades, federal law has afforded retired law enforcement officers different privileges with respect to firearms.  The 1994 federal assault weapons ban included an exception for retired law enforcement officers who received an assault rifle upon retirement.  *See* Pub. L. 103-322, § 110102 at (a)(4)(C), 108 Stat. 1796, 1996 (1994) (repealed 2004).  When the federal assault weapons ban expired in 2004, Congress enacted the Law Enforcement Officers Safety Act of 2004 ("LEOSA"), codified at 18 U.S.C. §§ 926B & 926C.  LEOSA remains in force today and gives special status with respect to firearms to "qualified retired law enforcement officers" for carrying concealed firearms.  18 U.S.C. § 926C.

Federal courts have enforced LEOSA without any suggestion that it violates the Equal Protection Clause.  *See, e.g.*, *DuBerry v. District of Columbia*, 824 F.3d 1046, 1052-54 (D.C. Cir. 2016) (holding that LEOSA provides a federal right that an individual officer can enforce under Section 1983); *DuBerry v. District of Columbia*, 924 F.3d 570, 579-80 (D.C. Cir. 2019) ("[W]e once again state that LEOSA creates an individual right to carry [by QRLEOs] that is remediable under Section 1983."); *Fed. Law Enf't Officers Ass'n v. Grewal*, 2022 WL 2236351 (D.N.J. June 21, 2022) (appeal pending) (enforcing LEOSA in suit challenging state law restricting New Jersey retired police officers from using hollow point ammunition).  Accepting plaintiffs' claim would throw the constitutionality of the federal QRLEO exception into question.

Notably, the Delaware statute's definition for QRLEOs tracks LEOSA's language.  *See* Exhibit A hereto.  The reason is clear.  Congress intended LEOSA to "override State laws" and

"allow current and retired police officers to carry a concealed weapon in any of the 50 States." H.R. Rep. 108-560, 4, 2004 U.S.C.C.A.N. 805, 806.  Moreover, the current federal definition of "firearm" that QRLEOs are permitted under LEOSA includes assault weapons.  *See* 18 U.S.C. § 926C(e).  In other words, had the Delaware Legislature *not* included the QRLEO exception, the Regulations would have been contrary to, and likely preempted by, LEOSA.  *See, e.g.*, *Grewal*, 2022 WL 2236351, at *15-18.

## IV. THE REGULATIONS DO NOT STATE A CLAIM UNDER THE DORMANT COMMERCE CLAUSE (COUNTS VI AND XIII).

In Counts VI and XIII of the Complaint, plaintiffs allege that the Regulations violate the Commerce Clause of the United States Constitution by "prohibit[ing] ordinary, law-abiding citizens from transporting" assault weapons and large-capacity magazines "into Delaware" or "while passing through Delaware" and by "prohibit[ing]" "[f]ederally-licensed firearm importers" from transporting assault weapons and large-capacity magazines "from foreign nations into U.S. ports" such as the Port of Wilmington and the Port of Philadelphia (via the Delaware River).  Am. Compl. ¶¶ 215-17, 222, 304, 306-07, 311.  These allegations fail to state a claim.

Under the "dormant" Commerce Clause, the Constitution not only grants Congress the plenary power "to regulate Commerce with foreign Nations" and "among the several States," U.S. CONST. art. I, § 8, cl. 3, but also "denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce."  *Or. Waste Sys., Inc. v. Dep't of Env't Quality*, 511 U.S. 93, 98 (1994).   This "negative aspect" of the Commerce Clause ensures that states do not "impede free market forces" by "shield[ing] in-state businesses from out of state competition."  *Am. Trucking Ass'ns, Inc. v. Whitman*, 437 F.3d 313, 318 (3d Cir. 2006); *Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 298 F.3d 201, 210 (3d Cir. 2002); *see also Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 107 (3d Cir. 2011).

The Complaint alleges three supposed violations of the dormant Commerce Clause:

- Plaintiffs say that "HB 450 permits Delaware residents to possess and transport an 'assault weapon'" under certain circumstances "if they lawfully possessed it prior to June 30, 2022" but "does not permit non-Delaware residents to possess and transport 'assault weapons' in identical circumstances while passing through Delaware." Am. Compl. ¶¶ 221-222.

- Plaintiffs say that "SS 1 for SB 6 purports to permit certain Delaware residents possessing 'a valid concealed carry permit issued by the Superior Court under § 1441 of this title" to possess a 'large-capacity magazine'" but "does not permit non-Delaware residents to possess and transport 'large-capacity magazines' in identical circumstances while passing through Delaware." *Id.* ¶ 311.

- Plaintiffs say that the Regulations permit "'a licensed firearms dealer or manufacturer' … to sell or transfer an assault weapon to a licensed firearms dealer in another state'" and permit "'a licensed firearms dealer t[o] sell[] a large-capacity magazine to another licensed firearms dealer' under 11 *Del. C.* § 1469(c)(6)," but do not grant the same permissions to "licensed firearm importer[s]" who may desire to import assault weapons and large-capacity magazines into the Port of Wilmington or transport them "on the Delaware River, enroute to the Port of Philadelphia and other destinations." Am. Compl. ¶¶ 217-218, 307-308.

None of these allegations identify a violation of the dormant Commerce Clause.

**First**, plaintiffs' allegations ignore the plain terms of the Regulations. Despite plaintiffs' contention that HB 450 permits only "Delaware residents" to possess and transport assault weapons if they lawfully possessed them prior to June 30, 2022, HB 450 actually grants that permission to any "person." 11 *Del. C.* § 1466(c)(3)(a)-(d). Likewise, plaintiffs contend that SS 1 for SB 6 permits only "Delaware residents" who possess a concealed-carry permit granted under 11 *Del. C.* § 1441 to carry LCMs—even though (a) Section 1441(a) actually provides for the Superior Court to issue concealed carry licenses to any "person" who satisfies certain conditions and (b) in any event, Delaware's statute *also* provides for recognition of concealed carry permits issued by other states.[4]

---

[4]     Specifically, the statute provides that Delaware gives "full faith and credit and … honor[s] and give[s] full force and effect to all licenses/permits issued to the citizens of other states where

*Second*, even if plaintiffs' reading of the Regulations were right, any incidental burdens on interstate commerce still would not violate the dormant Commerce Clause.

Dormant Commerce Clause claims are subject to three potential standards of review.  The most exacting standard is "heightened scrutiny," which applies to "state actions that purposefully or arbitrarily discriminate against interstate commerce."  *Juzwin v. Asbestos Corp., Ltd.*, 900 F.2d 686, 689 (3d Cir. 1990) (quoting *Ford Motor Co. v. Ins. Comm'r of Pa.*, 874 F.2d 926, 941 (3d Cir. 1989)).  The least exacting standard is "very deferential review," which applies to legislation that governs "areas of peculiarly strong state interest."  *Id.*  Regulations that fall in the middle are subject to a "balancing rule, under which state law is invalid only if the incidental burden on interstate commerce is clearly excessive in relation to the putative local benefits."  *Id.*

"Heighted scrutiny" does not apply here, because the Regulations were not enacted for "simple economic protectionism."  *Id.*  They do not attempt to "convey advantages on local merchants," "give local consumers an advantage," or "encourag[e] economic isolationism."  *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 577-78 (1997).

Instead, the Regulations seek to "ensure the safety of Delawareans" from the "exceptionally lethal" nature of "assault-style weapons."  Del. H.B. 450, 151st Gen. Assem. (last recital).  "Regulations that touch upon safety … are those that the Court has been most reluctant to invalidate" under the dormant Commerce Clause.  *Kassel v. Consol. Freightways Corp. of Del.*, 450 U.S. 662, 670 (1981) (quotation marks and citation omitted).  Because "public health" and "safety" are "'peculiarly strong' state interests," *Juzwin*, 900 F.2d 686, 689 n.2, and because a

---

those issuing states also give full faith and credit and otherwise honor the licenses issued by the State of Delaware."  11 *Del. C.* § 1441(j).  The State of Delaware currently has such reciprocity with twenty-one states.  *See* Concealed Carry Weapons Reciprocity, Office of the Attorney General of the State of Delaware, *available at* https://attorneygeneral.delaware.gov/criminal/concealed-carry-deadly-weapons-ccdw/ (last accessed Nov. 8, 2022).

state's "compelling … interest[] in public safety …" includes regulating "assault weapons and large-capacity magazines," *N. Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 261 (2d Cir. 2015),[5] the Regulations are subject to "very deferential review" for purposes of the dormant Commerce Clause claims.  Under such "very deferential" review, this Court must "uphold [a] statute[] unless the putative local benefits are 'illusory' …." *Norfolk S. Corp. v. Oberly*, 822 F.2d 388, 405 (3d Cir. 1987) (quoting *Am. Trucking Ass'ns v. Larson*, 683 F.2d 787, 795 (3d Cir. 1982)). The Regulations easily satisfy this standard.

And even if the intermediate balancing standard applied, plaintiffs have not attempted to explain how the Regulations' incidental burden on interstate commerce (if there even is one) is "clearly excessive in relation to" Delaware's interest in reducing the frequency and severity of violent crime.  Plaintiffs thus provide no basis for a dormant Commerce Clause challenge.  *See N. Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 990 F. Supp. 2d 349, 380-81 (W.D.N.Y. 2013) (denying dormant Commerce Clause challenge to regulation of online gun purchases), *aff'd in part, rev'd in part on other grounds*, 804 F.3d 242 (2d Cir. 2015); *see generally City of Phila. v. New Jersey*, 437 U.S. 617, 623-24 (1978) ("[I]ncidental burdens on interstate commerce may be unavoidable when a state legislates to safeguard the health and safety of its people.").

For all these reasons, Counts VI and XIII should be dismissed.

---

[5]    *Accord Fyock v. Sunnyvale*, 779 F.3d 991, 1000 (9th Cir. 2015) ("It is 'self-evident' that Sunnyvale's interests in promoting public safety and reducing violent crime are substantial and important government interests."); *Mitchell v. Atkins*, 483 F. Supp. 3d 985, 998 (W.D. Wash. 2020) (legislation "adopted to 'increase public safety and reduce gun violence' [is] an unquestionably legitimate government interest"); *see also United States v. Salerno*, 481 U.S. 739, 750 (1987) ("[T]he Government's general interest in preventing crime is compelling …."); *Doe v. Wilm. Hous. Auth.*, 88 A.3d 654, 667 (Del. 2014) (regulations relating to firearms and other deadly weapons invoke the "important governmental interest" of "public safety").  While *Bruen* provides new Second Amendment authority, nothing in *Bruen* altered dormant Commerce Clause precedent or states' well-established "compelling" interests in "public safety and crime prevention."

## V.    THE REGULATIONS ARE NOT PREEMPTED (COUNTS VII AND XIV).

Plaintiffs contend that the Regulations are preempted by 18 U.S.C. § 926A, which permits interstate transportation of firearms on certain conditions, and § 926(a), which prohibits the creation of a national gun registry (collectively, the "Federal Statutes").[6]  Am. Compl. ¶ 8.

"Federal law can preempt state law in three ways: (1) express preemption, (2) field preemption, and (3) conflict preemption."  *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010).  Courts considering preemption challenges "start[] with the basic assumption that Congress did not intend to displace state law," referred to by the Supreme Court as a "presumption against preemption."  *Id.* at 116 (citation omitted).  "The presumption applies with particular force in fields within the police power of the state."  *Id.*

18 U.S.C. § 927 provides that the Federal Statutes will preempt state law only if there is "a direct and positive conflict":

> No provision of the [Federal Statutes] shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, *unless there is a direct and positive conflict* between such provision and the law of the State so that the two cannot be reconciled or consistently stand together.

18 U.S.C. § 927 (emphasis added).  In other words, the Federal Statutes only preempt state law in cases of "conflict preemption"—and only, per § 927, if "the two cannot be reconciled."  Plaintiffs' preemption claims fail because the Regulations and the Federal Statutes do not conflict and can be reconciled.

**18 U.S.C. § 926A.**  In relevant part, 18 U.S.C. § 926A provides:

> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by

---

[6]    Plaintiffs state the Regulations are "preempted by 18 U.S.C. § 926A and § 926A(3)."  Am. Compl. ¶ 8.  There is no § 926A(3).  It appears that plaintiffs intended to reference § 926(a)(3), which plaintiffs quote later in the Complaint.  Am. Compl. ¶ 169 n.17.

> this chapter from transporting, shipping, or receiving a firearm shall be entitled to
> transport a firearm for any lawful purpose from any place where he may lawfully
> possess and carry such firearm to any other place where he may lawfully possess
> and carry such firearm if, during such transportation the firearm is unloaded, and
> neither the firearm nor any ammunition being transported is readily accessible or is
> directly accessible from the passenger compartment of such transporting vehicle
> ….

18 U.S.C. § 926A.

HB 450, which regulates assault weapons in the State of Delaware, has almost nothing to

do with Section 926A.  The only potential overlap is a circumstance in which a person — while

complying with § 926A's requirements that the firearm be unloaded and in a separate compartment

of the transporting vehicle — sought to transport an assault weapon from a place where he could

lawfully possess and carry the assault weapon *through Delaware* to another place where he could

lawfully possess and carry it.  In *Coalition of N. J. Sportsmen v. Florio*, 744 F. Supp. 602 (D.N.J.

1990), which involved a New Jersey assault weapons ban, the district court considered the same

issue and found "no conflict between § 926A and New Jersey's recently enacted gun control law."

*Id.* at 609-10.  Instead, with respect to this limited scenario, the district court found no reason to

expect "law enforcement officers throughout New Jersey … to disregard [§ 926A]," that "[t]he

threat of such arguably random and unauthorized acts is speculative at best," and there is "no

requirement that the New Jersey law must contain an express acknowledgment of the Supremacy

Clause and [§ 926A] to pass constitutional muster."  *Id.* at 610.

Other courts have similarly declined to find 926A to preempt state gun control regulation.

*Fresno Rifle & Pistol Club, Inc. v. Van de Kamp*, 746 F. Supp. 1415, 1427 (E.D. Cal. 1990)

(holding California law making it a criminal offense to "transport[]" assault weapons into the state

"clearly … can be reconciled" with § 926A), *aff'd*, 965 F.2d 723 (9th Cir. 1992); *Brown v.

Handgun Permit Rev. Bd.*, 982 A.2d 830, 847 (Md. Ct. Spec. App. 2009) ("§ 926A at most entitles

a person who is in legal possession of a firearm in one state to transport the firearm to another state

where he may also legally possess the weapon.").  So too here.  HB 450 can readily be "reconciled" and "stand together" with § 926A.  The possibility that HB 450 could be required to give way to federal law in a limited scenario where § 926A is triggered provides no reason to hold HB 450 preempted.

As for SS 1 for SB 6—which regulates large-capacity magazines—Section 926A does not even concern "magazines."   Section 926A concerns transporting "a firearm."   "Under the definitions [applicable to § 926A], a rifle magazine is plainly not a 'firearm'".  *United States v. Guillen-Cruz*, 853 F.3d 768, 772 (5th Cir. 2017) (citing 18 U.S.C. § 921(a)(3)).  There is thus not even an arguable conflict, and Count XIV should be dismissed.

**18 U.S.C. § 926(a).**  Plaintiffs claim that the Regulations are preempted by 18 U.S.C. § 926(a).  (Am. Compl. ¶ 8).  Section 926(a) provides that:

> No such rule or regulation prescribed after the date of the enactment of the Firearms Owners Protection Act may require that records required to be maintained under this chapter or any portion of the contents of such records, be recorded at or transferred to a facility owned, managed, or controlled by the United States or any State or any political subdivision thereof, nor that any system of registration of firearms, firearms owners, or firearms transactions or dispositions be established.

18 U.S.C. § 926(a).  Courts have held that this provision "clearly" reflects "Congress' concern about any attempt by [Bureau of Alcohol, Tobacco, and Firearms] to establish a national firearms registry."  *RSM, Inc. v. Buckles*, 254 F.3d 61, 67 (4th Cir. 2001); *see also Ron Peterson Firearms, LLC v. Jones*, 2013 WL 12085975, at *8 (D.N.M. Mar. 27, 2013), *aff'd*, 760 F.3d 1147 (10th Cir. 2014) (Section 926(a) "prohibits [ATF] or any other federal agency from promulgating any new rules or regulations that would create a national firearms registry."); *J & G Sales Ltd. v. Truscott*, 473 F.3d 1043, 1045 (9th Cir. 2007) ("18 U.S.C. § 926(a) … forbid[s] the Bureau [of Alcohol, Tobacco, and Firearms] from establishing a national firearms registry."); *Blaustein & Reich, Inc. v. Buckles*, 365 F.3d 281, 288 (4th Cir. 2004) (similar).

HB 450 allows persons that owned assault weapons before the Regulations were enacted to apply for a "certificate of possession," which provides "conclusive evidence" that the owner is "is entitled to continue to possess and transport the assault weapon." 11 *Del. C.* § 1467(b).  This certification process would not, as plaintiffs assert, result in the creation of Delaware gun registry—let alone a national gun registry.[7]

As an initial matter, HB 450 expressly provides that "the Department [of Safety and Homeland Security] will not retain copies of the certificate or other identifying information relating to any individual who applies for a voluntary certificate of possession."  11 *Del. C.* § 1467(c)(4).  Without the ability to retain copies, the certification process could not be used to create a gun registry.

But even if the State did retain such information, HB 450 only allows for the collection of voluntarily supplied information from a subset of Delaware gun owners.  Courts have found the collection of such limited information does not violate Section 926(a).  *See, e.g., Nat'l Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200, 214 (D.C. Cir. 2013) (ATF's request that federal firearms licensees in several states report "multiple sales of semi-automatic rifles" required "information on only a small number of transactions" and did not "come close to creating a national firearms registry"); *Blaustein*, 365 F.3d at 285-88 (ATF's requiring 450 federal firearms licensees to report purchases of secondhand firearms did not violate § 926(a)'s prohibition on creating a

---

[7]       As to SS 1 for SB 6, Plaintiffs speculate that at some unspecified future time the State may "implement a program for return of 'large-capacity magazines' whereupon compensation for those returned ammunition magazines is only granted to those who provide their names to the State" that would "create[] … an unconstitutional registry of 'large-capacity magazine' owners."  Compl. ¶ 268 n.18.  Plaintiffs' speculation as to hypothetical programs they believe the State "intends" to implement do not support a claim that 18 U.S.C. § 926(a) preempts SS 1 for SB 6.  *See English v. Gen. Elec. Co.*, 496 U.S. 72, 90 (1990) (rejecting a hypothetical factual scenario as "simply too speculative a basis on which to rest a finding of pre-emption").

national firearms registry); *J & G*, 473 F.3d at 1049 (ATF request to small fraction of federal firearms licensees seeking limited subset of information regarding a limited subset of firearms did not contravene § 926(a)).  Because the Regulations would not result in creation of a national gun registry, plaintiffs' claims that 18 U.S.C. § 926(a) preempts the Regulations should be dismissed.

## **CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss should be granted.

ROSS ARONSTAM & MORITZ LLP

*/s/ David E. Ross*
David E. Ross (#5228)
Bradley R. Aronstam (#5129)
Garrett B. Moritz (#5646)
1313 North Market Street, Suite 1001
Wilmington, DE 19801
(302) 576-1600
dross@ramllp.com
baronstam@ramllp.com
gmoritz@ramllp.com

STATE OF DELAWARE DEPARTMENT
OF JUSTICE

*/s/ Kenneth L. Wan*
Kenneth L. Wan (#5667)
Caneel Radinson-Blasucci (#6574)
Deputy Attorneys General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
kenneth.wan@delaware.gov
caneel.radinson-blasucci@delaware.gov

*Attorneys for Defendants*

Dated:  November 9, 2022