## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DELAWARE STATE SPORTSMEN'S ASSOCIATION, INC; BRIDGEVILLE RIFLE & PISTOL CLUB, LTD.; DELAWARE RIFLE AND PISTOL CLUB; DELAWARE ASSOCIATION OF FEDERAL FIREARMS LICENSEES; MADONNA M. NEDZA; CECIL CURTIS CLEMENTS; JAMES E. HOSFELT, JR; BRUCE C. SMITH; VICKIE LYNN PRICKETT; and FRANK M. NEDZA, | : : : : : : : : : : : | Civil Action No.: 1:22-cv-00951-RGA |
| Plaintiffs. | : : | |
| v. | : : | |
| DELAWARE DEPARTMENT OF SAFETY AND HOMELAND SECURITY; NATHANIAL MCQUEEN JR. in his official capacity as Cabinet Secretary, Delaware Department of Safety and Homeland Security; and COL. MELISSA ZEBLEY in her official capacity as superintendent of the Delaware State Police, | : : : : : : : : : | |
| Defendants. | : : | |

## OPENING BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

LEWIS BRISBOIS
BISGAARD & SMITH LLP

Francis G.X. Pileggi (DE Bar No. 2624)
Sean M. Brennecke (DE Bar No. 4686)
500 Delaware Ave., Suite 700
Wilmington, Delaware 19801
302-985-6000
Francis.Pileggi@LewisBrisbois.com
Sean.Brennecke@LewisBrisbois.com

and

Alexander MacMullan, Esquire
(*Pro Hac Vice Motion Forthcoming*)
LEWIS BRISBOIS BISGAARD & SMITH LLP
552 E. Swedesford Road, Suite 270
Wayne, Pennsylvania 19087
(215) 977-4100
Alexander.MacMullan@LewisBrisbois.com

*Attorneys for Plaintiffs*

Dated: November 15, 2022

## TABLE OF CONTENTS

**INTRODUCTION**................................................................................................ 1

**JURISDICTION** .................................................................................................. 4

**ARGUMENT** ....................................................................................................... 4

   **I.   Plaintiffs Are Likely to Succeed on the Merits**................................................... 5

      **A.   The Regulatory Scheme Violates the Second Amendment Under *Bruen*** ................. 5

      **i.   HB 450 Unconstitutionally Bans Firearms in "Common Use"** ................................. 6

      **ii.   SS 1 for SB 6 Unconstitutionally Bans Ammunition Magazines  in Common Use** .. 9

      **B.   The Regulatory Scheme Violates Article I, § 20 of the Delaware Constitution**........ 13

      **C.   Numerous Orders Enjoining or Reversing and Remanding Similar Unconstitutional Firearms Restrictions Have Been Entered Across the Country in the Wake of *Bruen***................................................................................................ 14

   **II.   Plaintiffs Will Suffer Irreparable Injury Without an Injunction** .............................. 18

   **III.   Public Interest and Balance of Hardships Strongly Favor Plaintiffs**..................... 19

**CONCLUSION** ................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Acierno v. New Castle County*, 40 F.3d 645 (3d Cir. 1994) ........................................ 18

*ACLU v. Ashcroft*, 322 F.3d 240 (3d Cir. 2003) ........................................................ 19

*Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 513 F. Supp. 3d 593 (W.D. Pa. 2021)…………………………………………………………..………………5

*Antonyuk v. Hochul*, 2022 U.S. Dist. LEXIS 201944 (N.D.N.Y. Nov. 7, 2022)......................... 17

*Assn. of NJ Rifle, v. Bruck,* U.S. Supr. Ct. No. 20-1507 (June 30, 2022) .................................... 16

*Bianchi v. Frosh*, U.S. Supr. Ct. No. 21-902 (June 30, 2022) ...................................... 15

*Bridgeville Rifle & Pistol Club, Ltd. v. Small*, 176 A.3d 632 (Del. 2017) ............................ 13, 14

*Del. State Sportsmen's Ass'n v. Garvin*, 196 A.3d 1254 (Del. Super. 2018) .......................... 8, 13

*District of Columbia v. Heller*, 554 U.S. 570 (2008)................................................... 3, 5

*Doe v. Wilmington Housing Authority*, 88 A.3d 654 (Del. 2014) ........................................... 1, 13

*Duncan v. Becerra*, U.S. Supr. Ct. No. 21-1194 (June 30, 2022).................................... 16

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ........................................ 14, 18

*Frein v. Pa State Police*, 47 F. 4th 247 (3rd Cir., August 30, 2022) .............................. 16

*Friedman v. City of Highland Park, Ill.*, 577 U.S. 1039 (2015) ...................................... 6

*Heller v. District of Columbia ("Heller II")*, 670 F.3d 1244 (D.C. Cir. 2011)............................. 6

*Hope v. Warden York Cnty. Prison*, 972 F.3d 310 (3d Cir. 2020)…………….…………………4

*K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99 (3d Cir. 2013) .......................... 18

*Kolbe v. Hogan*, 849 F. 3d 114 (4th Cir. 2017) ........................................................ 15

*Kongsberg v. State Bar of Cal.* 366 U.S. 36 (1961)................................................... 3, 5

*Lewis v. Kugler*, 446 F.2d 1343 (3d Cir. 1971) ........................................................ 18

*Miller v. Bonta*, 542 F. Supp. 3d 1009 (S.D. Cal. 2021)................................................ 6

*Nken v. Holder*, 556 U.S. 418 (2009)...................................................................5

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 213 L.Ed.2d 387 (2022) ..............2-3,15

*Reilly v. City of Harrisburg,* 858 F.3d 173 (3d Cir. 2017) ........................................ 4

*Rigby v. Jennings*, 2022 U.S. Dist. LEXIS 172375 (D. Del. September 22, 2022)..................... 15

*Rocky Mountain Gun Owners v. The Town of Superior*, Civ. Action No. 22-cv-01685-RM (D. Colo. July 22, 2022)................................................................................ 17

*Springfield Armory, Inc. v. City of Columbus*, 29 F.3d 250 (6th Cir. 1994)..........................7

*Staples v. United States*, 511 U.S. 600 (1994) ..................................................... 6, 8

*Stenberg v. Carhart*, 530 U.S. 914 (2000) ......................................................... 8

## Statutes

11 *Del. C.* § 1441 ................................................................................ 10

11 *Del. C.* § 1465 ................................................................................ 6

11 *Del. C.* § 1466 (c)(3)(a)-(d)................................................................. 8

11 *Del. C.* § 1468(2)(a) ......................................................................... 9

11 *Del. C.* § 1469(c)(5) ......................................................................... 9

11 *Del. C.* §§ 1457,1464-1469 ................................................................... 2

11 *Del. C.* §§ 1459A(b), 1463(a) and 1463(c)(1) ............................................... 15

11 *Del. C.* §§ 1465(2) 1469(c)................................................................... 2

28 U.S.C. §§ 1331 and 1343 ...................................................................... 4

42 U.S.C. §§ 1983 and 1988 ...................................................................... 4

Article I,  § 20 of the Delaware Constitution.................................................. 12

Constitution Amendment II and Amendment XIV..................................................... 4

Other Authorities

11A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (3d ed. 2022). ................................................................... 18

*2014 Standard Catalog of Firearms* (2014) ................................................................ 9

David B. Kopel, *Rational Basis Analysis of "Assault Weapon" Prohibition*, 20 J. Contemp. L. 381 (1994). .................................................................................................................. 7

*First Conviction under Weapon Law; Judge Foster gives Marino Rossi One Year for Arming himself…"* N.Y. Times (Sept. 28, 1911) ................................................................. 12

Gary Kleck*, Targeting Guns: Firearms and Their Control* 112 (1997)....................................... 19

*Laws of the State of Delaware*, Chapter 94, Vol. 12, March 6, 1861, at Section 7 ..................... 12

Jim Garry, *Weapons of the Lewis & Clark Expedition* (2012). ...................................... 9

Matthew Larosiere*, CATO Institute Legal Bulletin: Losing Count: The Empty Case for "High-Capacity" Magazine Restrictions* ................................................................. 10

Stephen B. Tahmassebi, *Gun Control and Racism*, 2 Civil Rights Law Journal 67 (1991)......... 12

Stephen P. Halbrook, *The Right to Bear Arms: A Constitutional Right of the People or a Privilege of the Ruling Class*? (2021)....................................................................... 12

Stephen P. Halbrook, *America's Rifle: The Case for the AR-15* (2022)…………………………12

William Waller Hening, *The Statutes at Large; Being a Collection of All the Laws of Virginia*, (1823)......................................................................................................... 12

## INTRODUCTION

The United States Supreme Court and a unanimous Delaware Supreme Court have recognized that the fundamental right to self-defense includes the right to keep and bear firearms both inside and outside the home. The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. Const., amend. II.  Article I, § 20 of the Delaware Constitution affords even broader protections than provided under the United States Constitution, recognizing that: "[a] person has the right to keep and bear arms for the defense of self, family, home and State, and for hunting and recreational use." DEL. CONST., art. I, § 20; *see Doe v. Wilmington Housing Authority*, 88 A.3d 654, 665 (Del. 2014) ("[o]n its face, the Delaware provision is intentionally broader than the Second Amendment and protects the right to bear arms outside the home, including for hunting and recreation.").

In defiance of this established and unassailable authority, the State of Delaware recently enacted into law House Bill 450 ("HB 450"[1]) and Senate Substitute 1 for Senate Bill 6 ("SS 1 for SB 6"[2])(collectively "The Regulatory Scheme"[3]) which flout the fundamental civil rights of Delawareans and others visiting the First State, by making them criminals—felons—for exercising one of their most exalted rights enshrined in both the Delaware Constitution and the United States Constitution. When  HB 450 and SS 1 for SB 6 were signed on June 30, 2022, the State of Delaware criminalized (1) possession, transportation and sale of common firearms used by law-abiding citizens for lawful purposes—mislabeling them as "assault weapons" (HB 450);

---

[1] "HB 450" refers to 11 *Del. C.* §§ 1464-1467 as well as provisions in HB 450. HB 450 is attached hereto as Exhibit "A."

[2] "SS 1 for SB 6" refers to 11 *Del. C.* §§ 1441, 1468-1469A as well as provisions in Senate Substitute 1 for Senate Bill 6. SS 1 for SB 6 is attached hereto as Exhibit "B."

[3] The "Regulatory Scheme" collectively refers to 11 *Del. C.* §§ 1464-1467 as well as provisions in House Bill 450 ("HB 450") and to 11 *Del. C.* §§ 1441, 1468-1469A as well as provisions in Senate Substitute 1 for Senate Bill 6 ("SS 1 for SB 6").

and (2) transportation and sale of common "ammunition feeding devices" or "magazines" capable of holding more than seventeen rounds—mislabeling them as "large-capacity magazines." (SS 1 for SB 6). *See* 11 *Del. C.* §§ 1457, 1464-1469 (2022). The State's limited exceptions to these broad criminal statutes do not allow typical law-abiding citizens, including Plaintiffs, to keep and bear common firearms for lawful purposes. *See* 11 *Del. C.* §§ 1465(2), 1469(c).

Plaintiffs, Delaware State Sportsmen's Association, Bridgeville Rifle and Pistol Club, Ltd., Delaware Rifle and Pistol Club, Delaware Association of Federal Firearms Licensees, Madonna M. Nedza; Cecil Curtis Clements; James E. Hosfelt, Jr.; Bruce C. Smith; Vickie Lynn Prickett; and Frank M. Nedza (collectively, "Plaintiffs") seek injunctive relief on the basis that the Regulatory Scheme violates their rights under the Second and Fourteenth Amendments to the U.S. Constitution and their rights under Article I, § 20 of the Delaware Constitution.

Plaintiffs seek this relief on the eve of the State's first ammunition magazine "buy-back" event[4], created in conjunction with the Regulatory Scheme to coerce the law-abiding citizens of Delaware, including Plaintiffs, into surrendering their commonly used and owned ammunition magazines permanently, under threat of prosecution.

Plaintiffs also seek this relief in the wake of the U.S. Supreme Court's landmark decision, that the State has ignored, in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 213 L.Ed.2d 387 (2022), and its rapidly growing progeny. In *Bruen*, the Supreme Court held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct…. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the

---

[4] *See*, https://delaware.gov State Announces High Capacity Magazine Buyback Events for Delaware Residents, attached hereto as Exhibit "C."

Second Amendment's 'unqualified command.'" *Id*. at 2126 (citing *Kongsberg v. State Bar of Cal*. 366 U.S. 36, 50 n. 10 (1961)). The Supreme Court, thus, reinforced the approach to assessing a Second Amendment challenge it had established in *District of Columbia v. Heller*, 554 U.S. 570 (2008). That approach mandates (1) determining, through textual analysis, that the Second Amendment protected an individual right to armed self-defense; and (2) relying on the historical understanding of the Amendment to demark the limits on the exercise of that right. *Bruen*, 142 S. Ct. at 2131.

*Bruen,* like *Heller* before it, maintained that, "[m]uch like we use history to determine which modern "arms" are protected by the Second Amendment, so too does history guide our consideration of modern regulations that were unimaginable at the founding.  When confronting such present-day firearm regulations, this historical inquiry that courts must conduct will often involve reasoning by analogy—a commonplace task for any lawyer or judge." *Id*. at 2132. The *Bruen* court repudiated the "means-end" scrutiny to restrictions upon fundamental Second Amendment rights that had developed in Circuit Courts following *Heller*. HB 450 and SS 1 for SB 6 draw their inspiration from the same flawed, now repudiated restrictions in vacated Circuit Court decisions.

The Regulatory Scheme's ban of  common firearms and common ammunition magazines commonly used by law abiding citizens for lawful purposes is a self-evident violation of the Second Amendment and Article I, § 20 of the Delaware Constitution. This ban is not consistent with the United States' historical tradition of protecting an individual right to self-defense, boldly violates that right, and is not saved by its limited, arbitrary exceptions.

Plaintiffs' are likely to succeed on their claims, as many challengers to unconstitutional firearms restrictions have in the wake of *Bruen*. Denying an injunction would lead to irreparable

injury to Plaintiffs and other similarly situated Delawareans where, beginning November 16th, 2022 the State is initiating its ammunition magazine "buy-back" program and where Plaintiffs and similarly situated law-abiding Delawareans currently live under threat of prosecution for possessing common firearms and ammunition magazines banned and criminalized under the Regulatory Scheme. Granting an injunction also favors the public interest where the Regulatory Scheme poses such a grave threat to Plaintiffs and similarly situated Delawareans fundamental constitutional rights. It remains well-established that violation of a fundamental Constitutional right equates with irreparable harm.

## JURISDICTION

Plaintiffs challenge the validity of the Regulatory scheme under 42 U.S.C. §§ 1983 and 1988; U.S. Constitution Amendment II and Amendment XIV; and DEL. CONST., art. I, § 20. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

## ARGUMENT

A plaintiff seeking preliminary injunctive relief must demonstrate (1) a likelihood of success on the merits and (2) a prospect of irreparable injury if the injunction is not granted. *Reilly v. City of Harrisburg,* 858 F.3d 173, 176 (3d Cir. 2017). A loss of a constitutional right even for a minimal period of time is an irreparable injury. *Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 108 (3d Cir. 2022) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

In addition, "the district court . . . should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Id*. These final two factors "'merge when the Government is the opposing party.'" *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 332 (3d Cir. 2020) (quoting

*Nken v. Holder*, 556 U.S. 418, 435 (2009)). Further, where a claim claim is constitutional the public interest always supports upholding the constitution. *Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 513 F. Supp. 3d 593, 622 (W.D. Pa. 2021), aff'd, 39 F.4th 95 (3d Cir. 2022) (collecting First Amendment authorities) Here, all factors favor preliminarily enjoining Defendants from enforcing the Regulatory Scheme.

## I.       Plaintiffs Are Likely to Succeed on the Merits

### A.  The Regulatory Scheme Violates the Second Amendment Under *Bruen*

It cannot be seriously disputed that the Regulatory Scheme burdens Second Amendment rights. The only remaining question, under *Bruen*, is whether the State can prove that the burdens imposed by the Regulatory Scheme upon Plaintiffs' and similarly situated Delawareans' right to own common firearms and common ammunition magazines are consistent with "this Nation's historical tradition" so as to fall outside of the Second Amendment's "unqualified command." *Bruen*, 142 S. Ct. at 2126 (citing *Kongsberg v. State Bar of Cal*. 366 U.S. 36, 50 n. 10 (1961)). The answer is no. Drawing from  historical tradition, the Supreme Court has made explicit that the Second Amendment protects the carrying of weapons "in common use at the time," *Id*. at 2143; *see also District of Columbia v. Heller*, 554 U.S. 570, 573 (2008) The Supreme Court means the Second Amendment protects the right to own weapons that are in common use today. *Id*. at 2143. Indeed, for this reason, "[j]ust as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. 570 at 582 (citations omitted).

The firearms and ammunition magazines banned by the Regulatory Scheme are in common use today and there is no historical tradition or analogue under which the State can justify the outright ban it has enacted.

### i.    HB 450 Unconstitutionally Bans Firearms in "Common Use"

HB 450 bans as "assault weapons" common handguns given the misnomer of "assault pistols," common semiautomatic long guns mislabeled as "assault long guns," and any "copycat weapon." 11 *Del. C.* § 1465. These broad categories of firearms are each in common use today. Handguns are "indisputably in 'common use' for self-defense today. They are, in fact, 'the quintessential self-defense weapon." *Bruen*, 142 S. Ct. at 2119 (citing *District of Columbia v. Heller*, 554 U.S. 570, 629 (2008)); *see also*, *Heller v. District of Columbia ("Heller II")*, 670 F.3d 1244, 1269 (D.C. Cir. 2011)(Kavanaugh, J., dissenting)("[H]andguns—the vast majority of which today are semi-automatic—… have not traditionally been banned and are in common use by law-abiding citizens.").

The rifles banned as so-called "assault long guns" are also in common use today. "Nationally, modern rifles are ubiquitous . . . In 2018,  909, 330 Ford F-150s were sold. Twice as many modern rifles were sold the same year." *Miller v. Bonta*, 542 F. Supp. 3d 1009, 1022 (S.D. Cal. 2021). Semiautomatic rifles accounted for 40 percent of rifles sold in 2010; with two million AR-15s, America's most popular rifle, manufactured between 1986 and 2010. *Heller II* at 1287; *see also Friedman v. City of Highland Park, Ill.*, 577 U.S. 1039, 1042 (2015)(Thomas, J., dissenting from  denial of cert)("Roughly five million Americans own AR-styled semiautomatic rifles…The overwhelming majority of citizens who own and use such rifles do so for lawful purposes including self-defense and target shooting.") Semiautomatic long guns "traditionally have been widely accepted as lawful possessions..." *See Staples v. United States*, 511 U.S. 600,

612 (1994)(so categorizing an AR-15 semiautomatic rifle). Counting just "modern sporting rifles" (a category that includes semiautomatic AR-style rifles), the number in circulation today approaches twenty million. According to industry sources, more than one out of every five firearms sold in certain recent years were semiautomatic modern sporting rifles.

So-called "copycat weapons" and their specific features are defined in an inherently vague manner and are also in common use. *Springfield Armory, Inc. v. City of Columbus*, 29 F.3d 250, 252 (6th Cir. 1994). Many, perhaps the majority of AR-15 platform firearms in circulation are technically "copycats" under HB 450. Further, the definition of "copycat weapons" in HB 450 require law-abiding citizens to know the technical details of firearm design history. *See*, Stephen P. Halbrook, *America's Rifle: The Case for the AR-15*, 284 (2022)("And even to try to decide whether a firearm is a copy or duplicate of a verboten firearm, one must have a verboten firearm for comparison.")

Features of so called "copycat weapons" also aid in home self-defense. A flash suppressor, for example, not only reduces the chance that a home-invader will mark his victim's position; it also protects a homeowner against momentary blindness when firing in self-defense. David B. Kopel, *Rational Basis Analysis of "Assault Weapon" Prohibition*, 20 J. Contemp. L. 381, 397 (1994). Similarly, folding stocks, whether on rifles or shotguns, support maneuverability in tight home spaces as well as safe storage of defense instruments. Kopel at 398-99.

The banned semiautomatic firearms deemed "assault weapons" under HB 450, whether handgun, rifle or so called "copycat weapon," like all other semiautomatic firearms, largely fire

only one round for each pull of the trigger.  They are not machine guns.[5] *See Staples*, 511 U.S. at 602 n.1. What is more, the designation "assault weapons" is a complete misnomer, "developed by anti-gun publicists" in their crusade against lawful firearm ownership. *See Stenberg v. Carhart*, 530 U.S. 914, 1001 n.16 (2000) (Thomas, J., dissenting). HB 450 unconstitutionally infringes upon the Second Amendment rights of Plaintiffs and similarly situated Delawareans by banning firearms that are undeniably in common use today. There is no historic tradition or analogue to the Regulatory Scheme's ban upon which the State can rely—and for which they have the burden of proof.

The State of Delaware also purports to create an "exception" to the assault ban of HB 450 whereupon ordinary law-abiding citizens may possess and transport an "assault weapon" only  if they lawfully possessed it prior to June 30, 2022, and then only:

> "[a]t that person's residence, place of business, or other property owned by that person, or on property owned by another person with the owner's express permission; [w]hile on the premises of a shooting range; [w]hile attending any exhibition, display, or educational project that is about firearms and that is sponsored by, conducted under the auspices of, or approved by a law-enforcement agency or a nationally or state recognized entity that fosters proficiency in, or promotes education about, firearms;" or while transporting between the aforementioned places or "to any licensed firearms dealer for servicing or repair."

11 *Del. C.* § 1466 (c)(3)(a)-(d).

This "grandfather clause" does nothing to save HB 450 from being an unconstitutional violation of the Second Amendment. It still prohibits law-abiding Delawareans, including Plaintiffs, from exercising their fundamental right to purchase new and/or additional banned firearms. It also unconstitutionally and severely restricts the locations where Delawareans may

---

[5] The State of Delaware was corrected by the Delaware Superior Court for mistakenly conflating this distinction in a firearms case the State lost and did not appeal. *Del. State Sportsmen's Ass'n v. Garvin,* 2020 Del. Super. LEXIS 2927, *1, *13 (Del. Super. 2020).

possess the banned firearms. There are no historical analogues for limiting the right to bear commonly owned firearms with or without HB 450's "grandfather clause."

**ii.      SS 1 for SB 6 Unconstitutionally Bans Ammunition Magazines  in Common Use**

SS 1 for SB 6 bans common ammunition magazines using the hyperbolic label "large-capacity magazines," defining them as "any ammunition feeding device capable of accepting, or that can readily be converted to hold, more than 17 rounds of ammunition." 11 *Del. C.* § 1468(2)(a). Firearms with ammunition magazines capable of holding more than seventeen rounds, which include many commonly used arms tendentiously called "assault weapons" under HB 450, are indisputably in common use today by law-abiding citizens for lawful purposes, including self-defense. There are currently tens of millions of rifle magazines that are lawfully-possessed in the United States with capacities of more than seventeen rounds. The most popular rifle in American history, and to this day, is the AR-15 platform, a semiautomatic rifle with standard magazines of 20 or 30 rounds. Springfield Armory also introduced the M1A semi-automatic rifle in 1974, with a 20-round detachable box magazine.  The next year, the Ruger Mini-14 was introduced, with manufacturer-supplied standard 5-, 10-, or 20-round detachable magazines. *2014 Standard Catalog of Firearms*, 1102 (2014). Both the M1A and the Mini-14 are very popular to this day.[6]

Further, SS 1 for SB 6 bans ammunition magazines capable of accepting, or that can readily be converted to hold, more than 17 rounds of ammunition. However, ammunition magazines can often be used for multiple calibers and the number of rounds they can hold

---

[6] Ammunition magazines capable of holding more than seventeen rounds are not only in common use today, they have been for centuries. At the time that the Second Amendment was being ratified, the state of the art for multi-shot guns was the Girandoni air rifle, with a 20 or 22-shot magazine capacity. For example, Merriweather Lewis carried one on the Lewis & Clark expedition. Jim Garry, *Weapons of the Lewis & Clark Expedition* 91-103 (2012).

depends on the caliber. For example, a certain magazine often affiliated with the AR-15 will hold 30 rounds of 5.56 mm ammunition but only 10 rounds of the larger .458 SOCOM ammunition. Many popular magazines have similarly variable capacities. The existence of this variability means that common arms that come equipped with standard-capacity magazines of 17 rounds of ammunition or below are still banned under SS 1 for SB 6. Matthew Larosiere, *CATO Institute Legal Bulletin: Losing Count: The Empty Case for "High-Capacity" Magazine Restrictions* https://www.cato.org/legal-policy-bulletin/losing-count-empty-case-high-capacity-magazine-restrictions (July 17, 2018). SS 1 for SB 6 unconstitutionally infringes upon the Second Amendment rights of Plaintiffs and similarly situated Delawareans by banning ammunition magazines that are undeniably in common use today.

SS 1 for SB 6 purports to create an exception to the "large-capacity magazine" ban. The ban does not apply to  "[a]n individual who holds a valid concealed carry permit issued with the approval of the Superior Court under § 1441…." 11 *Del. C.* § 1469(c)(5). The carry license exception to SS 1 for SB 6 is arbitrary. It is open to, "[a] person of full age and good moral character desiring to be licensed to carry a concealed deadly weapon for personal protection or the protection of the person's property." 11 *Del. C.* § 1441. It further  requires prospective permit holders, among other things, to (1) publicly apply for the license, stating their residence and occupation; (2) file a certificate of 5 "respectable citizens" of the county in which the applicant resides that state that the applicant bears a "good reputation for peace and good order in the community in which the applicant resides,"; (3) complete various firearms training courses; and (4) submit to having notice of their application published in a newspaper of general circulation published in the county where they reside. *Id*. Even after satisfying these, and other requirements, the grant of a license, and thus the grant of an exception to the ban on owning

commonly used ammunition magazines is left to the arbitrary discretion of the Delaware Superior Court, which "may or may not, in its discretion, approve any application…." *Id.*

SS 1 for SB 6 applies the concealed-carry licensing requirements of dubious constitutionality for  mere ownership of ammunition magazines in common use. In so doing, SS 1 for SB 6 conditions the grant of what is a fundamental right of all citizens upon vague, arbitrary, and discretionary requirements such as proof of "good moral character." *Bruen*, 142 S. Ct. 2111 at 2135 n.1 (noting with disapproval states with licensing schemes that give officials discretion to deny licenses based on a perceived lack of suitability). The requirements effectively prohibit the issuance of a license, and thus, the right to own ammunition magazines in common use, unless the applicant *persuades* the Court that the applicant is of "good moral character." These requirements are akin to shouldering an applicant with the burden of showing that she needs to satisfy criteria distinguishable from that of the general community—the exact burden that *Bruen* ruled unconstitutional in the context of concealed carry. There is no historical analogue or historical tradition of burdening law-abiding citizens with the obligation to persuade the State why they should be able to exercise their basic and fundamental right to bear common arms or common ammunition magazines. Nor is there a historical analogue or historical tradition of requiring a law-abiding citizen to provide character references in order to be permitted to bear common arms.

Further, the training mandate imposed by the licensing requirements heavily discriminates against and acts as a complete barrier to the acquisition of commonly used ammunition magazines by the poor or economically disadvantaged citizens of the State of Delaware, who live in urban areas, where access to a public shooting range is effectively non-existent and where the licensing process is costly. The underlying intent and practical effect of

these requirements is the disenfranchisement of Second Amendment rights for the poor and disadvantaged. These and the other requirements imposed by the licensing process for concealed carry now applied to mere ownership of ammunition magazines in common use, form undue and effective practical barriers to the exercise of fundamental constitutional rights preserved by the Second Amendment.[7]

There is no denying that the firearms and the ammunition magazines banned by the Regulatory Scheme are in common use, and thus fall within the protection and "unqualified command" of the Second Amendment. There is also no denying that the State will be incapable of citing any historical tradition or historical analogue justifying the Regulatory Scheme's bans or the respective purported exceptions to HB 450 or SS 1 for SB 6. The Regulatory Scheme therefore violates the Second Amendment and is unconstitutional. Plaintiffs will succeed on the merits of their claims that their Second Amendment rights are violated by the Regulatory Scheme.

---

[7] Regarding the overtly racist history of gun licensing and registration, see, e.g., Virginia's 1723 statute forbidding any "negro, mulatto, or Indian . . . to keep, or carry any gun," unless they were "a house-keeper, or listed in the militia." William Waller Hening, *The Statutes at Large; Being a Collection of All the Laws of Virginia*, 131 (1823). An exception was provided, however, for "negroes, mullattos, or Indians, bond or free, living at any frontier plantation," who could "keep and use guns" if they "first obtained a license for the same, from some justice of the peace." *Id.* Delaware also used laws to restrict the use of firearms as a means of racial discrimination. *Laws of the State of Delaware*, Chapter 94, Vol. 12, March 6, 1861, at Section 7 (prohibiting free blacks from possessing guns); Stephen P. Halbrook, *The Right to Bear Arms: A Constitutional Right of the People or a Privilege of the Ruling Class*? at 233 (2021); Stephen B. Tahmassebi, *Gun Control and Racism*, 2 Civil Rights Law Journal 67 (1991) (describing history of gun control coinciding with oppression of blacks). *See also, First Conviction under Weapon Law; Judge Foster gives Marino Rossi One Year for Arming himself…*" N.Y. Times (Sept. 28, 1911) at 5 (describing Sullivan Law targeting Italian immigrants to restrict their Second Amendment rights.)

**B.  The Regulatory Scheme Violates Article I, § 20 of the Delaware Constitution**

Article I,  § 20 of the Delaware Constitution states that "[a] person  has the right to keep and bear arms for the defense of self, family, home, and State, and for hunting and recreational use." DEL. CONST., art. I, § 20 The right to bear arms, including the right of self-defense, "has existed since [Delaware's] founding and has always been regarded as an inalienable right." *Bridgeville Rifle & Pistol Club, Ltd. v. Small*, 176 A.3d 632, 644 (Del. 2017). *Bridgeville* undertook an extensive review of Delaware's legislative history regarding the right to bear arms, noting that:

> Article 25 of Delaware's first constitution (enacted on September 20, 1776) provided that, unless otherwise altered by the State's legislature, the common law of England "shall remain in force. By definition, this included Article VII of the 1689 English Bill of Rights — described by the United States Supreme Court as "the predecessor to our Second Amendment" — which provided: "That the Subjects which are Protestants, may have Arms for their Defence suitable to their Conditions, and as allowed by Law."

 *Id*. at 645-646.

Article I, § 20 was codified, by supermajorities of two successive Delaware General Assemblies, became effective in 1987, and is much broader than the more limited scope of the right to bear arms contained in the Second Amendment.  *See Doe v. Wilmington Housing Authority*, at 665 ("our interpretation of Section 20 is not constrained by federal precedent," and emphasizing that the scope of  § 20 is much broader than the scope of the Second Amendment.); *see also Del. State Sportsmen's Ass'n v. Garvin*, 196 A.3d 1254, 1269 (Del. Super. 2018).[8] ("[T]he enumeration of 'self and family' *in addition to* the home provides an independent right to bear arms outside the home (and not just in it.)." *Id*. at 643.

---

[8] This *Garvin* decision was not appealed by the State. Undersigned lead counsel successfully argued the *Doe*, *Bridgeville* and *Garvin* decisions, which are the only decisions that directly address the scope of Article I, Section 20 of the Delaware Constitution outside the home.

Even prior to *Bruen*, *Bridgeville* recognized that *Heller* held that "'complete prohibition[s]' of Second Amendment rights are automatically invalid and need not be subjected to any tier of scrutiny." *Id*. at 653. *Bridgeville* further endorsed the Seventh Circuit's ruling in *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011), that "[b]oth *Heller* and *McDonald* suggest that broadly prohibitory laws restricting the core Second Amendment right . . . are categorically unconstitutional." *Bridgeville Rifle & Pistol Club, Ltd.,* 176 A.3d  at 654. (quoting *Ezell*, 651 F.3d at 703). The Regulatory Scheme is one such categorically unconstitutional outright ban.

The broader right to bear arms recognized by Article I,  § 20, the *Bridgeville* court's holding that broadly prohibitory laws restricting the core Second Amendment right are categorically unconstitutional, and the Delaware Supreme Court's endorsement of the U.S. Supreme Court's guidance in analyzing restrictions on the right to bear arms under the Second Amendment and Article I § 20, all demonstrate that the Regulatory Scheme violates Article I, § 20. HB 450's broad ban on firearms in common use and SS 1 for SB 6's broad ban on ammunition magazines in common use cannot survive under *Bruen*  and thus not only violate the Second Amendment, but also the broader and inalienable rights of all Delawareans under Article I, § 20. Plaintiffs will succeed on the merits of their claims that their Article I, § 20 rights are violated by the Regulatory Scheme.

### C. Numerous Orders Enjoining or Reversing and Remanding Similar Unconstitutional Firearms Restrictions Have Been Entered Across the Country in the Wake of *Bruen*

Following *Bruen* there has been a swell of decisions in state and federal courts striking down unconstitutional firearms restrictions on Second Amendment grounds. Some of these decisions have come in this very court and circuit. Others have struck down restrictions far less broad, oppressive and egregious than the restrictions of the Regulatory Scheme. And some have been struck down that bear striking similarities to the Regulatory Scheme. In fact, the very

Fourth Circuit decision upon which HB 450 was based has been reversed and remanded. As laid out more fully below, the near unanimous message post-*Bruen* is clear: the inalienable rights protected by the Second Amendment's "unqualified command" will not be subject to means-end scrutiny, and will not stand absent the State meeting the heavy burden of demonstrating the restriction is consistent with the Nation's "historic tradition."

The legislative history of HB 450, as signed into law, includes a prior iteration of HB 450 known previously as Senate Bill 68 ("SB 68"). SB 68 describes in its synopsis that it relies upon a Maryland statute that bans commonly-used firearms as so-called "assault rifles." SB 68, and thus HB 450, further both rely upon a now-repudiated decision of the U.S. Court of Appeals for the Fourth Circuit, en banc, wrongly upholding that similarly flawed Maryland ban. In light of its decision in *Bruen*, the U.S. Supreme Court  vacated and remanded a Fourth Circuit decision that solely relied on the decision HB 450 is based on. *See Bianchi v. Frosh*, U.S. Supr. Ct. No. 21-902, Order (June 30, 2022) (vacating *Bianchi* which solely relied on *Kolbe v. Hogan*, 849 F. 3d 114 (4th Cir. 2017)(en banc), abrogated by *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. (2022), to reject a challenge to the Maryland statute that HB 450 is based on.).

In *Rigby v. Jennings*, 2022 U.S. Dist. LEXIS 172375 (D. Del. September 22, 2022), this Court granted a preliminary injunction enjoining enforcement of 11 *Del. C.* §§ 1459A(b), 1463(a) and 1463(c)(1) as well as portions of § 1463(b), which had been signed into law in Delaware on October 20, 2021, based on their violation of the Second Amendment. Known as HB 125, that regulatory scheme criminalized the possession, manufacture, and distribution of un-serialized firearms and unfinished firearm components. Under a *Bruen* analysis, this Court held that the challenged statutes' prohibition of the possession and manufacture of unfinished firearm frames and receivers and untraceable firearms burdened the Second Amendment. This Court

granted plaintiffs' requested injunction, in part, because the State failed to provide evidence to support its burden that unfinished frames, receivers and untraceable firearms were not in "common use." *Id.* at *16. On the Regulatory Scheme's broader and more wide-ranging ban of commonly used firearms and ammunition magazines under HB 450 and SS 1 for SB 6, the State will also not be able to satisfy its burden.

In the Third Circuit, on August 30th of this year, relying largely on *Bruen,* the Court of Appeals reversed a District Court dismissal of a claim brought pursuant to the Second Amendment and the Fifth Amendment's Takings Clause on a Second Amendment issue. In *Frein v. Pa State Police*, 47 F. 4th 247 (3rd Cir., August 30, 2022), the Court of Appeals held that the seizing of the firearms of the parents of a convicted criminal constituted a violation of the Fifth Amendment's Takings Clause, where the warrant's justification, under which they were seized, had run out, the firearms were not contraband and/or proceeds of a crime, and the Plaintiff-parents did not forfeit the guns. *Id.* at 253. Citing to *Bruen*, the Court also held that the Plaintiff-parents' Second Amendment rights had been violated where "this Nation's historical tradition" did not permit seizing and holding onto the firearms. *Id.* at 254-256 ("…the Second Amendment prevents the government from hindering citizens' ability to "keep" their guns.") The Regulatory Scheme similarly attempts to seize and hold firearms and ammunition magazines in common use.

In light of *Bruen*, the U.S. Supreme  Court  vacated and remanded bot Third Circuit and Ninth Circuit Court of Appeals decisions upholding bans of "large-capacity magazines" similar to those banned in SS 1 for SB  6. *See Assn. of NJ Rifle, v. Bruck,* U.S. Supr. Ct. No. 20-1507, Order (June 30, 2022); *Duncan v. Becerra*, U.S. Supr. Ct. No. 21-1194, Order (June 30, 2022). The United States District Court for the District of Colorado also granted temporary restraining

orders preventing flawed bans on common arms, including common ammunition magazines similar to those banned by SS 1 for SB 6, from being enacted following *Bruen*. *See Rocky Mountain Gun Owners v. The Town of Superior*, Civ. Action No. 22-cv-01685-RM (D. Colo. July 22, 2022); *see also Rocky Mt. Gun Owners, N.A. v. Bd. of Cnty. Comm'rs*, 2022 U.S. Dist. LEXIS 156308 (D. Colo. August 30, 2022). In *Antonyuk v. Hochul*, 2022 U.S. Dist. LEXIS 182965 (N.D.N.Y, October 6, 2022), the Court issued a temporary restraining order enjoining a New York state licensing scheme that purported to require applicants, like the Regulatory Scheme does for possession of commonly used ammunition magazines,  to show "good moral character" before being granted a concealed carry license. The Court held that the "good moral character" requirement was fatally flawed because it entrenched New York as a "shall-not-issue jurisdiction," and, by doing so "further reduced a first-class constitutional right to bear arms in public for self-defense." On November 7th, 2022, the same court issued a preliminary injunction, again ruling that the "good moral character" requirement, among others, was unconstitutional. *Antonyuk v. Hochul*, 2022 U.S. Dist. LEXIS 201944, at \*244 (N.D.N.Y. Nov. 7, 2022) The Regulatory Scheme's licensing exception, with its own "good moral character" clause, does the same to Delawareans' basic fundamental right to own commonly used ammunition magazines.

The foregoing decisions are only the first waves in the post-*Bruen* swell to hit the shore. An order granting a preliminary injunction to enjoin the Regulatory Scheme from violating Delawareans fundamental Second Amendment and Article I, § 20 should be next. Like the post-*Bruen* decisions highlighted above,  Plaintiffs will succeed on the merits of their claims that their Second Amendment and Article I, § 20 rights are violated by the Regulatory Scheme.

## II.    Plaintiffs Will Suffer Irreparable Injury Without an Injunction

"[T]o show irreparable harm a plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994) (internal quotation marks and citation omitted). It is well accepted that the deprivation of a constitutional right constitutes irreparable harm. *See, e.g., K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 113 (3d Cir. 2013); *Lewis v. Kugler*, 446 F.2d 1343, 1350 (3d Cir. 1971); *see also Ezell*, 651 F.3d at 699 ("Infringements of this [Second Amendment] right cannot be compensated by damages."); 11A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (3d ed. 2022).

Here, Plaintiffs face ongoing deprivations of their Second Amendment rights. Each day the State's unconstitutional Regulatory Scheme continues in force, Plaintiffs, their members, and other ordinary law-abiding citizens who reside in Delaware, risk felony prosecution, incarceration, and permanent loss of their Second Amendment rights because they possess and/or wish to obtain commonly used firearms and ammunition magazines. Plaintiffs and other similarly situated Delawareans will also suffer irreparable injury absent an injunction to bar the State's imminent first of many ammunition magazine "buy-back" events. These "buy-back" events were created in conjunction with the Regulatory Scheme to coerce the law-abiding citizens of Delaware, including Plaintiffs, into surrendering their commonly used and owned ammunition magazines permanently, under threat of prosecution. If and when Plaintiffs are quasi-forced to surrender their commonly used ammunition magazines at a "buy-back" event, they will be irrevocably surrendered without possibility for return. These injuries cannot be compensated through monetary damages.

### III.     Public Interest and Balance of Hardships Strongly Favor Plaintiffs

The remaining two factors also strongly favor injunctive relief. The public interest favors Plaintiffs as the "enforcement of an unconstitutional law vindicates no public interest." *K.A. ex rel. Ayers*, 710 F.3d at 114 (citing *ACLU v. Ashcroft*, 322 F.3d 240, 251 n.11 (3d Cir. 2003) ("[N]either the Government nor the public generally can claim an interest in the enforcement of an unconstitutional law.")).

The balance of hardships also strongly favors Plaintiffs. Plaintiffs have demonstrated that they are suffering a deprivation of their constitutionally protected rights, under threat of prosecution. Plaintiffs and similarly situated Delawareans further face the surrender of their commonly used firearms and ammunition magazines via the State's "buy-back" program. As a result, they also face the likelihood of being deprived of their ability to protect themselves and their homes. For instance, according to a report by the U.S. Department of Justice, Bureau of Justice Statistics, household members are present for almost a third of all burglaries and become victims of violent crimes in more than a quarter of those cases. Studies on the frequency of defensive gun uses in the United States have determined that there are up to 2.5 million instances each year in which civilians use firearms to defend themselves or their property.

In turn, Defendants suffer no harm by granting the injunction where there is no basis to believe the Regulatory Scheme ensure or even contribute to public safety. . *See* Gary Kleck, *Targeting Guns: Firearms and Their Control* 112 (1997) (evidence indicates that "well under 1% of [crime guns] are 'assault rifles.'")

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion in its entirety and enter an order, substantially in the form submitted herewith, preliminarily and permanently enjoining Defendants enforcement of the Regulatory Scheme created by H.B. 450 and SS 1 for SB 6.

Respectfully Submitted,

LEWIS BRISBOIS
    BISGAARD & SMITH LLP

By: */s/ Francis G.X. Pileggi*
    Francis G.X. Pileggi (DE Bar No. 2624)
    Sean M. Brennecke (DE Bar No. 4686)
    500 Delaware Ave., Suite 700
    Wilmington, Delaware 19801
    302-985-6000
    Francis.Pileggi@LewisBrisbois.com
    Sean.Brennecke@LewisBrisbois.com

       and

    Alexander MacMullan, Esquire
    (*Pro Hac Vice Motion Forthcoming*)
    LEWIS BRISBOIS BISGAARD & SMITH LLP
    552 E. Swedesford Road, Suite 270
    Wayne, Pennsylvania 19087
    (215) 977-4100
    Alexander.MacMullan@LewisBrisbois.com

    *Attorneys for Plaintiffs*

Dated: November 15, 2022.