December 5, 2022

**VIA FILE E-FILING**

| | |
|---|---|
| The Honorable Richard G. Andrews | The Honorable Maryellen Noreika |
| United States District Court | United States District Court |
|  for the District of Delaware |  for the District of Delaware |
| J. Caleb Boggs Federal Building | J. Caleb Boggs Federal Building |
| 844 N. King Street | 844 North King Street |
| Wilmington, Delaware 19801 | Wilmington, Delaware 19801 |

Re: *Del. State Sportsmen's Ass'n, Inc., et al. v. Del. Dep't of Safety and Homeland Sec., et al.*, C.A. No. 22-00951-RGA; *Gray, et al. v. Kathy Jennings*, C.A. No. 22-01500-MN

Dear Judge Andrews and Judge Noreika:

The parties write jointly with different proposed schedules in the following two cases: *Delaware State Sportsmen's Association, Inc. et al. v. Delaware Department of Safety and Homeland Security et al.*, C.A. No. 1:22-cv-00951-RGA (the "DSSA Case"), and *Gabriel Gray et al. v. Kathy Jennings*, C.A. No. 1:22-cv-01500-MN (the "Gray Case").

On June 30, 2022, Delaware enacted a package of several bills to ban and regulate certain firearms and magazines, including 11 *Del. C.* §§ 1464-1467 ("HB 450") and 11 *Del. C.* §§ 1441, 1468-1469A ("SS 1 for SB 6"). On July 20, 2022, plaintiffs in the DSSA Case filed their Complaint challenging HB 450 as unconstitutional under both the Second Amendment to the U.S. Constitution and other grounds. DSSA Case, D.I. 1. The DSSA plaintiffs subsequently amended their complaint to add constitutional challenges to SS 1 for SB 6 in addition to HB 450. *Id.*, D.I. 5. On November 9, 2022, the DSSA Case defendants moved for partial dismissal of the DSSA plaintiffs' Amended Complaint. *Id.*, D.I. 8-9. On November 16, 2022, the Gray Case plaintiffs filed a Complaint challenging HB 450 as unconstitutional under the Second Amendment. Gray Case, D.I. 1. Defendants in both cases are sometimes referred to collectively as "the State."

On November 15, 2022, plaintiffs in the DSSA Case filed a motion for preliminary injunction on four counts not covered by the Motion for Partial Dismissal. DSSA Case, D.I. 10-11. On November 22, 2022, plaintiffs in the Gray Case filed a motion for preliminary injunction. Gray Case, D.I. 4-5. A motion to consolidate the two actions is pending. DSSA Case, D.I. 15; Gray Case, D.I. 6.

Following multiple meet-and-confer calls,[1] the parties have been unable to resolve their disagreement regarding case scheduling and respectfully request the Court's guidance.[2]

---

[1] This statement is consistent with Local Rule 7.1.1.

[2] The State's suggestion that Plaintiffs are not truly in a hurry omits material procedural history—and appears to blame Plaintiffs for courtesies extended to the State. Plaintiffs agreed to the State's request for 60 days to reply to the Complaint. The Motion for Preliminary Injunction was filed a

The Honorable Richard G. Andrews
The Honorable Maryellen Noreika
December 5, 2022
Page 2

**Plaintiffs' Position on Scheduling in These Cases**

Plaintiffs in both the *DSSA* case and the *Gray* case seek a briefing schedule for the two pending motions for preliminary injunction with deadlines as close as practical to the briefing schedule provided for in the local rules—allowing for additional time to avoid interference with the upcoming holidays.  Attached as Exhibit A to this letter is Plaintiff's proposed schedule in the DSSA case—which deadlines can also be used in the *Gray* case.

Plaintiffs in the DSSA case propose that briefing on the pending Motion for Partial Dismissal be deferred until after a ruling on the Motion for Preliminary Injunction, which focuses on the four counts not covered by the Motion for Partial Dismissal—and which might make moot the Motion for Partial Dismissal.

The procedural history and briefing schedule for the Motion for Preliminary Injunction, based on Second Amendment arguments, recently decided by Judge Noreika in *Rigby v. Jennings*, C.A. No. 1:21-cv-01523-MN, is instructive and should be followed in the instant cases.

In *Rigby*, the State did not oppose a briefing schedule closely aligned with the briefing schedule for motions provided for in the local rules, with minor adjustments made for the end-of-year holidays in December 2021.

Importantly, there was no evidentiary hearing held before that motion was decided.  The Court gave the State an opportunity to submit evidence, but the State declined.  In light of the Supreme Court's *Bruen* decision, described below, there is no need for an evidentiary hearing before the pending Motion for Preliminary Injunction is decided.

**Plaintiffs' Position on Discovery in These Cases**

In these cases, Defendants are taking the position that there is a significant amount of evidence which they must gather and introduce, that expert discovery will be required, and that reaching an ultimate resolution of the narrow constitutional issue involved will take quite some time – potentially more than a year. Plaintiffs disagree entirely and oppose discovery in these cases. Defendants' position is premised upon a fundamental misunderstanding of how cases like these are to proceed, particularly in light of the U.S. Supreme Court's June 2022 ruling in *New York*

---

few days after the State replied to the Complaint—which also was only a few days after the State announced a buy-back program in connection with the challenged statutes.  Regardless, as the motions explain, it remains well-settled that violations of constitutional rights amount to irreparable harm.

More troubling is the State's apparent effort to "use against the Plaintiffs" the courtesies Plaintiffs extended to the State to suspend the briefing schedule required for motions under the local rules while the parties attempted to avoid inconveniences around the holidays during the period the parties met and conferred over the last 3 weeks, since about November 15, 2022. *See* Stipulation, D.I. 12, filed November 22, 2022.

The Honorable Richard G. Andrews
The Honorable Maryellen Noreika
December 5, 2022
Page 3

*State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Notably, the *Bruen* decision pre-dated the Governor's signing on June 30, 2022, of the challenged bills.

The only "facts" relevant to resolution of the constitutional question involved here are "legislative facts" regarding the modern firearms that Defendants characterize as "assault firearms" and of historical firearm regulation in this country, and all such facts can accordingly be developed in briefing and through oral argument without the need for expert or other evidence adduced through traditional party discovery methods. *See Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) (ordering entry of judgment for plaintiffs on review of order granting motion to dismiss because "[t]he constitutionality of the challenged statutory provisions does not present factual questions for determination in a trial…. Only adjudicative facts are determined in trials, and only legislative facts are relevant to the constitutionality of the Illinois gun law.").

Reviewing the statutes that have been in effect in the U.S. over time to determine whether there is an historical tradition of analogous regulations is a task that is firmly within the province of judges and lawyers, and no fact or expert testimony is needed or appropriate.

Additionally, to the extent there are factual determinations to be made by the Court in the context of its post-*Bruen* Second Amendment analysis, they can be readily answered now or in the context of summary judgment briefing. First, do the firearms banned by HB 450 constitute "bearable arms"? Plainly, the answer is yes. Second, are firearms of the type banned by HB 450 presently "in common use for lawful purposes"? Again, the answer is plainly yes. These modern semiautomatic rifles, and variants of the AR-15 in particular, are sold to Americans each year by the millions and are among the most popular firearms available for sale today.

Moreover, the U.S. Supreme Court's recent decision in *Bruen* provides further support for dispensing with discovery in these matters. In *Bruen*, no factual development occurred in the district court because plaintiffs' claims were foreclosed by circuit precedent at the time the complaint was filed, and the district court accordingly entered judgment against the plaintiffs on the pleadings. *See* 354 F. Supp. 3d 143 (N.D.N.Y. 2018).

In holding that New York's may-issue licensing scheme violated the Second Amendment, the Supreme Court expressly rejected the argument that it could not "answer the question presented without giving respondents the opportunity to develop an evidentiary record," 142 S. Ct. at 2135 n.8, because "in light of the text of the Second Amendment, along with the Nation's history of firearm regulation," the conclusion "that a State may not prevent law-abiding citizens from publicly carrying handguns because they have not demonstrated a special need for self-defense" did not turn on disputed factual questions. *Id.* The same is true here where the Court must determine whether the text of the Second Amendment and the Nation's history of firearm regulation allow the State of Delaware to ban law-abiding citizens from acquiring, possessing, transporting, etc., a widely owned category of modern firearms that are in common use for lawful purposes.

The Honorable Richard G. Andrews
The Honorable Maryellen Noreika
December 5, 2022
Page 4

Application of *Bruen*'s text and history test does not involve any analysis of adjudicative facts of the kind that are disclosed through discovery. *See id.* While Defendants apparently believe that expert discovery is necessary and appropriate in these cases, it is noteworthy that *Bruen* itself was a decision made without expert witnesses. Indeed, the Supreme Court decided the case based on a motion-to-dismiss record in the district court (*i.e.*, based solely on the contents of the complaint). Likewise, these cases turn entirely upon legal issues that can and should be fully resolved by this Court on evidence from the public and historical legislative record, if not now, then when presented by the parties in briefing.[3]

For the foregoing reasons, Plaintiffs do not join in proposing any dates or deadlines that either skip dispositive motions or require discovery, both of which Defendants propose at this time. If the Court determines that some discovery should be permitted, Plaintiffs reserve all of their rights with respect to such discovery.

**Defendants' Position**

Defendants wish to bring the actions to a prompt, efficient resolution. Defendants therefore propose that the cases be consolidated and proceed to an expedited trial, if convenient for the Court, in October or November 2023. Defendants respectfully request that the Court enter defendants' Proposed Scheduling Order attached hereto as Exhibit B.

Properly preparing this matter for trial will require fact and expert discovery. As the Supreme Court explained in *New York State Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), the Second Amendment is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 2128 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). Instead, *Bruen* requires that "the government … affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127. Doing so requires a historical record for this Court to consider—as the Supreme Court stated in *Bruen*, "[c]ourts are … entitled to decide a case *based on the historical record compiled by the parties*." *Id.* at 2130 n.6 (emphasis added). A proper record enabling the Court to make an informed ruling under *Bruen*—including 18th- and 19th-century history regarding firearms and their regulation during those eras—will take time to compile, although defendants are prepared to engage in fact and expert discovery to compile that record promptly to move this case to trial within less than a year.

Given the speed with which defendants are prepared to move this case to trial, adding a preliminary injunction phase to this case is both unnecessary and inefficient. Plaintiffs are challenging statutes enacted in June 2022, yet the DSSA plaintiffs waited until November 15, 2022, to file their motion for preliminary injunction, and the Gray plaintiffs waited until November 22, 2022, to file their motion for preliminary injunction. In other words, plaintiffs waited *almost five months* from enactment of the challenged statutes to file their motions for preliminary injunction. Plaintiffs' delay undermines any claim of irreparable harm warranting preliminary

---

[3] We do not question the State's good faith. Nonetheless, the net result of the State's proposal is delay.

injunctive relief.  *Doe v. Delaware State Univ. Bd. of Trustees*, 2021 WL 2036670, at *3 (D. Del. May 21, 2021) ("delay [is] still a significant factor which, when combined with other factors at issue, preclude[s] the plaintiff from showing irreparable harm").  And plaintiffs' delay in seeking preliminary relief also confirms that the expedited schedule defendants are proposing to bring this matter to final resolution at trial is fair.  If the Court does take up plaintiffs' motions for preliminary injunctions, in light of *Bruen*, defendants respectfully submit that an evidentiary hearing will be needed so that the Court can consider dueling expert testimony.  Undertaking this effort twice (at the preliminary injunction phase and again at the trial on the merits) in an abbreviated timeframe would be inefficient and burdensome for the Court.[4]

Alternatively, should the Court find decision on plaintiffs' motions for preliminary injunction necessary before trial, defendants ask for adequate time to prepare an opposition.  After themselves waiting almost five months to file their preliminary injunction motions, plaintiffs now demand that defendants prepare a preliminary injunction opposition in a matter of weeks so that the motion can be heard in January.  Such a schedule is not reasonable or fair under the circumstances.  Contrary to plaintiffs' claims during our meet-and-confers that fact and expert discovery are wholly unnecessary in this case, post-*Bruen* courts handling similar cases have provided extended periods of time for defendants to file oppositions to preliminary injunction motions.  *See, e.g., Hanson, et al. v. District of Columbia, et al.*, C.A. No. 1:22-cv-02256-RC, at 9/7/2022 Minute Order (D.D.C. Sep. 7, 2022) (granting, in case challenging D.C. large-capacity magazine statute, defendants' opposed motion for 89-day extension to respond to motion for preliminary injunction "[d]ue to the need to ensure that the record in this case is properly developed"); *Capen, et al. v. Healey, et al.*, C.A. No. 22-11431, D.I. 17 (D. Mass. Nov. 23, 2022) (setting schedule in litigation challenging Massachusetts' assault weapon regulation providing for 83 days for State to file opposition to plaintiffs' motion for preliminary injunction); *Goldman, et al. v. City of Highland Park, Illinois*, C.A. No. 22-4774, D.I. 22 (N.D. Ill. Oct. 11, 2022) (setting schedule in litigation challenging city assault weapons regulation providing for 95 days for State to file opposition to plaintiffs' motion for preliminary injunction).  Defendants' Alternative Proposed Schedule, attached hereto as Exhibit C, provides a reasonable period of time for the parties to marshal the evidence the Court will need to render an informed ruling on the preliminary injunction motions—should the Court conclude that consideration of those motions in advance of an expedited trial is necessary.

---

[4] Moreover, in order to further streamline proceedings, defendants are prepared to dispense with dispositive motions, including defendants' pending partial motion to dismiss in the DSSA Case, provided the actions are set for an expedited trial without the burden and distraction of injecting preliminary injunction proceedings.  In the event that the preliminary injunction motions will be briefed and heard, defendants request that the pending motion to dismiss also be briefed and heard, as reflected in defendants' Alternative Proposed Schedule, discussed below.

\* \* \*

All parties appreciate the Court's assistance. Counsel are available at the Court's convenience should the Court have any questions or if a teleconference would be helpful.

Respectfully submitted,

/s/ Francis G.X. Pileggi
Francis G.X. Pileggi (#2624)
Sean M. Brennecke (#4686)
LEWIS BRISBOIS BISGAARD
  & SMITH LLP
500 Delaware Ave., Suite 700
Wilmington, Delaware 19801
(302) 985-6000
Francis.Pileggi@LewisBrisbois.com
Sean.Brennecke@LewisBrisbois.com

*Attorneys for Plaintiffs Delaware State Sportsmen's Association, Bridgeville Rifle and Pistol Club, Ltd., Delaware Rifle and Pistol Club, Delaware Association of Federal Firearms Licensees, Madonna M. Nedza, Cecil Curtis Clements, James E. Hosfelt, Jr., Bruce C. Smith, Vickie Lynn Prickett, and Frank M. Nedza*

/s/ Bradley P. Lehman
Bradley P. Lehman (#5921)
GELLERT SCALI BUSENKELL
  & BROWN LLC
1201 N. Orange Street, Suite 300
Wilmington, Delaware 19801
(302) 425-5800
blehman@gsbblaw.com

*Attorney for Plaintiffs Gabriel Gray, William Taylor, DJJAMS LLC, Firearms Policy Coalition, Inc., and Second Amendment Foundation*

/s/ Caneel Radinson-Blasucci
Kenneth L. Wan (#5667)
Caneel Radinson-Blasucci (#6574)
STATE OF DELAWARE DEPARTMENT
  OF JUSTICE
Deputy Attorneys General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400
kenneth.wan@delaware.gov
caneel.radinson-blasucci@delaware.gov

/s/ Garrett B. Moritz
David E. Ross (#5228)
Bradley R. Aronstam (#5129)
Garrett B. Moritz (#5646)
ROSS ARONSTAM & MORITZ LLP
1313 North Market Street, Suite 1001
Wilmington, Delaware 19801
(302) 576-1600
dross@ramllp.com
baronstam@ramllp.com
gmoritz@ramllp.com

*Attorneys for Defendants*