## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DELAWARE STATE SPORTSMEN'S | : | |
| ASSOCIATION, INC; BRIDGEVILLE | : | |
| RIFLE & PISTOL CLUB, LTD.; | : | |
| DELAWARE RIFLE AND PISTOL CLUB; | : | |
| DELAWARE ASSOCIATION OF | : | |
| FEDERAL FIREARMS LICENSEES; | : | |
| MADONNA M. NEDZA; CECIL CURTIS | : | |
| CLEMENTS; JAMES E. HOSFELT, JR; | : | |
| BRUCE C. SMITH; VICKIE LYNN | : | |
| PRICKETT; and FRANK M. NEDZA, | : | |
| | : | |
| Plaintiffs. | : | |
| | : | Civil Action No.: |
| v. | : | 1:22-cv-00951-RGA |
| | : | |
| DELAWARE DEPARTMENT OF | : | |
| SAFETY AND HOMELAND SECURITY; | : | |
| NATHANIAL MCQUEEN JR. in his | : | |
| official capacity as Cabinet Secretary, | : | |
| Delaware Department of Safety and | : | |
| Homeland Security; and COL. MELISSA | : | |
| ZEBLEY in her official capacity as | : | |
| superintendent of the Delaware State Police, | : | |
| | : | |
| Defendants. | : | |
| | : | |

### ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS'
### MOTION FOR PARTIAL DISMISSAL OF THE AMENDED COMPLAINT

LEWIS BRISBOIS
    BISGAARD & SMITH LLP

OF COUNSEL:                                    Francis G.X. Pileggi, Esquire (#2624)
Alexander MacMullan, Esquire                   Sean M. Brennecke, Esquire (#4686)
LEWIS BRISBOIS                                 500 Delaware Ave., Suite 700
    BISGAARD & SMITH LLP                    Wilmington, DE 19801
552 E. Swedesford Road, Suite 270              302-985-6000
Wayne, Pennsylvania 19087                      Francis.Pileggi@LewisBrisbois.com
(215) 977-4083                                 Sean.Brennecke@LewisBrisbois.com
Alexander.MacMullan@LewisBrisbois.com

                                               *Attorney for Plaintiffs*

Dated: January 31, 2023

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ..........................................................1

COUNTERSTATEMENT OF FACTS ...............................................................................2

ARGUMENT ......................................................................................................................3

I.      STANDARD OF REVIEW ....................................................................................3

II.     PLAINTIFFS HAVE STATED A CLAIM FOR VIOLATION OF DUE
PROCESS UNDER THE FOURTEENTH AMENDMENT AND ARTICLE I, § 7
OF THE DELAWARE CONSTITUTION ..............................................................4

       A.     Impermissible Burden Shifting ...................................................................4

       B.     Vagueness ....................................................................................................6

III.    PLAINTIFFS HAVE STATED A CLAIM FOR VIOLATION OF THE
TAKINGS CLAUSE OF THE FIFTH AMENDMENT .........................................9

IV.    PLAINTIFFS HAVE STATED A CLAIM FOR VIOLATION OF THE EQUAL
PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT ...................12

V.     PLAINTIFFS HAVE STATED A CLAIM FOR VIOLATION OF THE
COMMERCE CLAUSE ........................................................................................14

VI.    PLAINTIFFS HAVE STATED A CLAIM THAT THE REGULATORY
SCHEME IS PREEMPTED BY 18 U.S.C. § 926A .........................................16

VII.   CONCLUSION......................................................................................................20

i

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Mullaney v. Wilbur*,
   421 U.S. 684 (1975)...................................................................................................4

*United States v. Williams*,
   553 U.S. 285 (2008)...................................................................................................7

*Arnett v. Kennedy*,
   94 S. Ct. 1633 (1974) (Marshall J., dissenting) ......................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................3

*Ass'n of N. J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N. J.*,
   910 F.3d 106 (3d Cir. 2018) abrogated by N.Y. State Rifle & Pistol Ass'n, Inc.
   v. Bruen, 142 S. Ct. 2111 (2022) ......................................................................12, 13

*Bennis v. Michigan*,
   516 U.S. 442, 116 S. Ct. 994, 134 L.Ed. 2d 68 (1996)...........................................11

*Califano v. Westcott*,
   443 U.S. 76 (1979).....................................................................................................14

*Clark v. Jeter*,
   486 U.S. 456 (1988)...................................................................................................8

*Coal. of N. J. Sportsmen, Inc. v. Whitman*,
   44 F. Supp. 2d 666 (D.N.J. 1999), aff'd, 263 F.3d 157 (3d Cir. 2001) ....................9

*Congregation Kol Ami v. Abington Twp.*,
   309 F.3d 120 (3d Cir. 2002)......................................................................................12

*District of Columbia v. Heller*,
   554 U.S. 570 (2008)................................................................................................2, 8

*DSSA, et al. v. Del. Dept. of Safety and Homeland Security, et al.*,
   1:22-cv-00951 (D. Del., 2022)....................................................................................3

*Duncan v. Becerra*,
   265 F. Supp. 3d 1106 (S.D. Cal. 2017).....................................................................9

*Equal Access Educ. v. Merten*,
   305 F. Supp. 2d 585 (E.D. Va. 2004) .......................................................................20

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009)..................................................................................3

*Frein v. Pennsylvania State Police*,
    47 F.4th 247 (3d Cir. 2022) ...............................................................................11

*Friedman v. City of Highland Park, Ill.*,
    577 U.S. 1039 (2015) (Thomas, J., dissenting from denial of cert).......................19

*Frontiero v. Richardson*,
    411 U.S. 677 (1973)............................................................................................12

*Fulton Corp. v. Faulkner*,
    516 U.S. 325 (1996)............................................................................................14

*Granholm v. Heald*,
    544 U.S. 460 (2005).....................................................................................14, 15

*Gray, et al. v. Jennings*,
    1:22-cv-01500 (D. Del., 2022).............................................................................3

*Heller v. District of Columbia*,
    670 F.3d 1244 (D.C. Cir. 2011) .........................................................................19

*Horne v. Department of Agric.*,
    135 S. Ct. 2419 (2015).........................................................................................9

*Kost v. Kozakiewicz*,
    1 F.3d 176 (3d Cir. 1993)......................................................................................3

*Lingle v. Chevron USA, Inc.*,
    544 U.S. 528 (2005).................................................................................9, 11, 12

*Loretto v. Teleprompter Manhattan CATV Corp.*,
    458 U.S. 419 (1982)............................................................................................10

*Lucas v. South Carolina Coastal Council*,
    505 U.S. 1003 (1992)..........................................................................................10

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010)..............................................................................................7

*Melrose, Inc. v. City of Pittsburgh*,
    613 F.3d 380 (3d Cir. 2010)................................................................................12

*Merrion v. Jicarilla Apache Indian Tribe*,
    455 U.S. 130 (1982)............................................................................................14

*Miller v. Bonta*,
   542 F. Supp. 3d 1009 (S.D. Cal, 2021) ................................................................19

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
   597 U.S. _, 142 S.Ct. 2111 (2022)................................................................ *passim*

*New Energy Co. of Ind. v. Limbach*,
   486 U.S. 269 (1988)................................................................14

*Patterson v. New York*,
   432 U.S. 197 (1977)................................................................4, 5

*Phillips v. Cty. of Allegheny*,
   515 F.3d 224 (3d Cir. 2008)................................................................3

*Rhode v. Becerra*,
   342 F. Supp. 3d 1010 (S.D. Cal. 2018)................................................................17, 20

*Sessions v. Morales-Santana*,
   137 S. Ct. 1678 (2017)................................................................14

*Silveira v. Lockyer*,
   312 F.3d 1052 (9th Cir. 2002) ................................................................13

*Smith v. United States*,
   349 F.3d 109 (3d Cir. 2003) ................................................................5

*Speiser v. Randall*,
   357 U.S. 513 (1958)................................................................4

*Springfield Armory, Inc. v. City of Columbus*,
   29 F.3d 250 (6th Cir. 1994) ................................................................7

*Tolchin v. Supreme Court of N.J.*,
   111 F.3d 1099 (3d Cir. 1997)................................................................8

*United States v. Gatlin*,
   613 F.3d 374 (3d Cir. 2010)................................................................6

*United States v. Perez*,
   5 F.4th 390 (3d Circ. 2021)................................................................5

*United States v. Virginia*,
   518 U.S. 515 (1996)................................................................12

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests. Inc.*
   455 U.S. 488 (1982)................................................................8

iv

*In re Winship*,
  397 U.S. 358 (1970) ................................................................................................4

*Yancey v. United States*,
  915 F.2d 1534 (Fed. Cir. 1990) .............................................................................9

**Statutes**

11 *Del. C.* 1467(b) .......................................................................................................4

11 *Del. C.* 1467 ..........................................................................................................18

11 *Del. C.* § 1441 ......................................................................................................15

11 *Del. C.* § 1441(k) .................................................................................................15

11 *Del. C.* § 1465 .......................................................................................................6

11 *Del. C.* § 1465(2) ...................................................................................................6

*11 Del. C.* § 1465(2)-(3) .............................................................................................7

11 *Del. C.* § 1465(5) ...................................................................................................6

11 *Del. C.* § 1466(a)(1) .............................................................................................17

11 *Del. C.* § 1466 (c)(3)(a)-(d) ................................................................................15

11 *Del. C.* § 1468 .......................................................................................................6

11 *Del. C.* § 1468(2)(a) ...............................................................................................7

11 *Del. C.* § 1469(a) .................................................................................................17

11 *Del. C.* § 1469(c)(5) .............................................................................................15

18 U.S.C. § 926A .............................................................................................. *passim*

**Other Authorities**

Delaware Constitution Article I, § 7 ......................................................................3, 6

"State Announces High Capacity Magazine Buyback Events for Delaware
  Residents," https://news.delaware.gov/2022/10/26/state-announces-high-
  capacity-magazine-buyback-events-for-delaware-residents/ ................................19

"Commonly Owned:  NSSF Announces Over 24 Million MSRS in Circulation,"
  https://www.nssf.org/articles/commonly-owned-nssf-announces-over-24-
  million-msrs-in-circulation/ ................................................................................19

U.S. Const. Amends. I-V, XIV ............................................................................................. *passim*

## INTRODUCTION

Defendants' Motion for Partial Dismissal attempts to utilize the strength of Plaintiffs' Second Amendment and Article I, § 20 claims against them. Defendants seek a premature reward for being willing to acknowledge the obvious paradigm shift based on the United Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. _, 142 S.Ct. 2111 (2022)—requesting the dismissal of the additional valid claims brought by Plaintiffs challenging Delaware's unconstitutional Regulatory Scheme at the pleading stage. But the strength of Plaintiffs' Second Amendment and Article I, § 20 claims is not a basis to dismiss valid additional challenges to the Regulatory Scheme at the pleading stage.[1] Nor should Defendants be permitted to misemploy the term "judicial efficiency" to foreclose Plaintiffs from bringing these, perhaps more complex, contentious and fact intensive constitutional challenges to the Regulatory Scheme, merely because their Second Amendment and Article I, § 20 challenges are irrefutable. Plaintiffs' Amended Complaint has pled facially viable challenges on all claims for which Defendants seek dismissal. Defendants Motion for Partial Dismissal should be denied in full.

## NATURE AND STAGE OF THE PROCEEDINGS

On July 20, 2022, Plaintiffs filed an initial complaint challenging HB 450, Delaware's ban on firearms in common use, mislabeled as "assault weapons." (Dkt. 1.) On September 9, 2022, Plaintiffs filed an Amended Complaint (Dkt. 5) ("Am. Compl."), which also challenged SS 1 for SB 6, Delaware's ban of ammunition magazines in common use, mislabeled as "large-capacity magazines." Defendants filed a Motion for Partial Dismissal on November 9, 2022. On November

---

[1] Defendants refer to these claims as "larded." This designation may not be as pejorative as Defendants intend. At the time of the Nation's founding, and even before, animal lard such as bear grease and deer tallow were commonly used as critical firearm lubricant. While not as well-known as the bullet, trigger or muzzle, lard still served as a crucial part of a fully operational firearm in common use in the Founders' Era.

1

15, 2022, Plaintiffs subsequently filed a Motion for Preliminary Injunction on Second Amendment and Article I, § 20 grounds seeking to preliminarily enjoin Defendants from enforcing both HB 450 and SS 1 for SB 6 (collectively "the Regulatory Scheme").[2]

## COUNTERSTATEMENT OF FACTS

On June 23, 2022, the United States Supreme Court issued a landmark decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. _, 142 S.Ct. 2111 (2022), in which it reinforced the approach to assessing a Second Amendment challenge it had established in *District of Columbia v. Heller*, 554 U.S. 570 (2008), holding that the individual right to bear arms is not subject to any form of means-ends scrutiny. Seven days later, on June 30, 2022, despite, or perhaps in spite of, *Bruen*, the State of Delaware signed into law HB 450 and SS 1 for SB 6, banning commonly used firearms and ammunition magazines. Delaware's bans relied explicitly on Circuit Court decisions repudiated by *Bruen*.

In response, Delaware State Sportsmen's Association; Bridgeville Rifle and Pistol Club, Ltd.; Delaware Association of Federal Firearms Licensees; and several individual plaintiffs brought suit challenging HB 450 and ultimately also SS 1 for SB 6 on Second Amendment and Article I, § 20 grounds, but also equally on grounds that the Regulatory Scheme violates Due Process, the Takings Clause, the Equal Protection Clause, the Dormant Commerce Clause, and is preempted by 18 U.S.C. § 926A. Defendants have moved to dismiss the claims they mischaracterize as "secondary challenges," claiming they do so for the sake of "judicial efficiency"

---

[2] On December 20, 2022, Judge Richard G. Andrews issued an oral order setting the following briefing deadlines for Plaintiffs' Motion for Preliminary Injunction: Defendants' Answering Brief is due January 31, 2023; Plaintiffs' Reply Brief is due February 13, 2023; an Evidentiary Hearing is scheduled for February 24, 2023 at 9:00 am. *See*, 12/20/22 Oral Order of Judge Richard G. Andrews (Dkt. No. 25).

and streamlining of the proceedings. Plaintiffs oppose Defendants' Motion to Dismiss the additional important and valid claims raised in their Complaint.[3]

## ARGUMENT

### I.   STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotations and citations omitted).  The complaint must only contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

---

[3] On December 20, 2022, Judge Richard G. Andrews consolidated Plaintiffs' case with that of *Gray, et al. v. Jennings*, 1:22-cv-01500 (D. Del., 2022). The cases were consolidated under this matter. However, the instant Opposition is filed only by Plaintiffs in the original matter of *DSSA, et al. v. Del. Dept. of Safety and Homeland Security, et al.*, 1:22-cv-00951 (D. Del. 2022).

## II.   PLAINTIFFS HAVE STATED A CLAIM FOR VIOLATION OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT AND ARTICLE I, § 7 OF THE DELAWARE CONSTITUTION

### A.   Impermissible Burden Shifting

Plaintiffs bring a claim for violation of Due Process in Counts III and X of their Amended Complaint on the basis that the Regulatory Scheme impermissibly shifts the burden of proof away from the State and upon ordinary citizens to demonstrate that the banned, commonly used firearms and/or ammunition magazines they possessed were purchased before June 30, 2022, and thus are legally possessed common arms, outside of the scope of the Regulatory Scheme's ban. *See* 11 *Del. C.* 1467(b).

"The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). "[Where] one party has at stake an interest of transcending value—as a criminal defendant in his liberty—[the] margin of error is reduced as to him by the process of placing on the [prosecution] the burden … of persuading the fact finder at the conclusion of the trial.…" *Mullaney v. Wilbur*, 421 U.S. 684, 701 (1975). It is of course within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion, "unless in so doing it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Speiser v. Randall*, 357 U.S. 513, 523 (1958).

Defendants attempt to skirt the allegation of burden shifting by putting particular emphasis on the Regulatory Scheme's categorization of proof of pre-June 30, 2022 "assault weapon" and "large-capacity magazine" possession as an "affirmative defense," and rely almost exclusively upon *Patterson v. New York*, 432 U.S. 197, 207 (1977), to make their argument that simply by

deeming such pre-June 30, 2022 ownership an "affirmative defense" it should pass constitutional muster. There is abuse in Defendants' interpretation of what constitutes an "affirmative defense." Under their interpretation, there is no barrier to putting all significant issues in the category of affirmative defenses and thus being able to dismiss any Due Process challenge at the pleading stage. Even the *Patterson* Court recognized its susceptibility to, and warned against, such an interpretation:

> "[t]his view [the Court's] may seem to permit state legislatures to reallocate burdens of proof by labeling as affirmative defenses at least some elements of the crimes now defined in their statutes. But there are obviously constitutional limits beyond which the states may not go in this regard."

*Id*. at 210.

The *Patterson* Court also reiterated its view that a state could not declare an individual "guilty or presumptively guilty of a crime" or presume guilt on proof of identity alone. *Id*. (citing *McFarland v. American Sugar Refining Co*., 241 U.S. 79, 96 (1916)). This is exactly what Defendants attempt to do here--reallocate burdens of proof merely by relabeling an element of the crime as an affirmative defense, in an effort to be handed an early exit from defending the claim. Self-serving labels aside, what the Regulatory Scheme actually does is force ordinary citizens to prove that the common, legal arm they possess is not actually banned--under the presumption that it is. They seek to place the burden upon ordinary citizens to prove that their possession of a legal arm is not illegal. The string of cases that Defendants cite deal in rebuttable presumptions and esoteric scenarios and bear little resemblance to the Regulatory Scheme's attempt to place burdens upon the multitude of Delawareans who possess common, legal arms, to disprove an element of the crime created by the Regulatory Scheme. Defendants' authority is inapplicable to this matter. *See, e.g, United States v. Perez*, 5 F.4th 390 (3d Circ. 2021) (proximity of guns and drugs created rebuttable presumption that guns were used in furtherance of drug trafficking); *Smith v. United*

5

*States*, 349 F.3d 109 (3d Cir. 2003) (convictions on possession of a firearm as an illegal alien in violation of 18 U.S.C. § 922(g); and use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1) and (j)(1) did not require the prosecution to disprove that firearm in question was manufactured prior to 1898).

In opposing Plaintiffs' claim that the Regulatory Scheme violates Article I, § 7 of the Delaware Constitution, Defendants provide little opposition at all, again invoking "affirmative defense" and citing a single Third Circuit case, *United States v. Gatlin*, 613 F.3d 374, 379 (3d Cir. 2010), that, in ruling on a motion to suppress a search and seizure, merely articulated the function of a Delaware law without fielding a challenge or otherwise commenting on its constitutionality.

The degree to which the Regulatory Scheme, and Defendants, mis-categorize the burden shifting as "affirmative defenses," and rely solely upon that mis-categorization in their Motion, compels that it must denied.

### B.   Vagueness

Plaintiffs also bring a claim for violation of Due Process in Counts III and X of their Amended Complaint, on the additional basis that the Regulatory Scheme is unconstitutionally vague. The  claim cites the vagueness created in the Regulatory Scheme by the lack of nexus between the generic definitions of "assault pistols" and "assault long guns" and the enumerated banned arms; the fact that the definition of the term "copy" relies upon knowledge of the weapon from which the "copy" was "developed;" the fact that so called "copycat weapons" are defined as "semiautomatic" rifles and shotguns that have  a grip that "would allow an individual to grip the weapon, resulting in any finger on the trigger hand in addition to the trigger finger being ***directly below*** any portion of the action of the weapon when firing;" (emphasis added) and the fact that the "large-capacity magazine" ban defines such "large-capacity magazines" as any "capable of

accepting, or that can readily be converted to hold, more than 17 rounds of ammunition." 11 *Del. C.* § 1465(2); 11 *Del. C.* § 1465(5);  11 *Del. C.* § 1465)(6)(a)(2); 11 *Del. C.* § 1468. Defendants' motion provides no substantive opposition to Plaintiffs' vagueness claim, taking the incredible position that a person of ordinary intelligence would understand what common arms are banned because Defendants simply say they would, ignoring that "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is*." United States v. Williams*, 553 U.S. 285, 306 (2008).

Defendants also  provide no counter to the nearly identical, if not less vague statutes struck down in *Springfield Armory, Inc. v. City of Columbus,* 29 F.3d 250, 252 (6th Cir. 1994) and *City & Cnty. of Denver,* 874 P. 2d 325, 334 (Colo. 1994), other than to state that reliance on those cases is misplaced without an explanation. They ignore key terms in the Regulatory Scheme upon which the vagueness challenges turn, including that a "copy" relies upon knowledge of the firearm from which the copy was "developed" and that the "large-capacity magazine" ban relies upon the ability of a magazine to be "readily converted" to hold more than 17 rounds. They also fail to address the vagueness of the Regulatory Scheme as a whole, when read together. For instance, HB 450 lists nineteen (19) banned "assault pistols" and at least forty-four (44) banned "assault long guns." *11 Del. C*. § 1465(2)-(3). Yet SS 1 for SB 6 bans as "large-capacity magazines" "any ammunition feeding device capable of accepting, or that can readily be converted to hold, more than 17 rounds of ammunition." 11 *Del. C.* § 1468(2)(a). Read together, and in consideration of the "can readily be converted" language, countless firearms that are not banned under HB 450 are capable of being banned under SS 1 for SB 6. A law-abiding Delawarean of ordinary intelligence is given no clear guidance on how to read these statutes together to determine how to avoid prosecution.

Defendants do cite certain case law in support of their argument. However, each and every case they cite was decided prior to the landmark decisions in *McDonald v. City of Chicago*, 561 U.S. 742 (2010) and *Bruen*. Plus, *McDonald* established that, not only did the Fourteenth Amendment incorporate the Second Amendment, but that "the framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to the United States' system of ordered liberty." *Id*. at 342. Any remaining doubt as to the fundamental nature of the right to keep and bear arms, and the level of scrutiny triggered upon a law affecting that right, was put to rest with *Bruen*.

This context is critical because the cases Defendants cite struck down vagueness challenges at a time when  challenges affecting rights then deemed fundamental, such as the First Amendment's right to free speech were evaluated under the strictest of scrutiny, and those challenges affecting Second Amendment rights were not. *See Arnett v. Kennedy*, 94 S. Ct. 1633, 1682 (1974) (Marshall J., dissenting) ("We emphasize once again that 'precision of regulation must be the touchstone in an area so closely touching our most precious freedoms.")  Strict scrutiny applies when a classification "implicates fundamental rights," *see Tolchin v. Supreme Court of N.J.*, 111 F.3d 1099, 1114 (3d Cir. 1997) (emphasis added); *see also Clark v. Jeter,* 486 U.S. 456, 461 (1988) (strict scrutiny applies for classifications "affecting fundamental rights" not only when it violates them.) A more stringent vagueness test applies to Plaintiffs' instant challenge because the Regulatory Scheme interferes with a constitutionally protected right. *See Vill. of Hoffman Ests. v. Flipside, Hoffman Ests. Inc*. 455 U.S. 488, 499 (1982)   *Bruen* ruled on direct Second Amendment challenges to be certain, but it also made clear that the individual right to bear arms was as fundamental as the right to free speech, and regulations affecting the same should be scrutinized accordingly. *See Bruen*, 142 S. Ct. at 2130 ("This Second Amendment standard accords

8

with how we protect other constitutional rights. Take, for instance, the freedom of speech in the First Amendment, to which *Heller* repeatedly compared the right to keep and bear arms.") In fact, under *Bruen*, the only scrutiny that a challenge affecting the Second Amendment is subject is (1) determining, through textual analysis, that the Second Amendment protected an individual right to armed self-defense; and (2) relying on the historical understanding of the Amendment to demark the limits on the exercise of that right. *Id*. The authority relied upon by Defendants failed to treat vagueness challenges that infringe upon the fundamental individual right to bear arms with the reverence and appropriate scrutiny since articulated by the United States Supreme Court. *See, e.g., Coal. of N. J. Sportsmen, Inc. v. Whitman*, 44 F. Supp. 2d 666, 676 (D.N.J. 1999) (citation omitted), aff'd, 263 F.3d 157 (3d Cir. 2001)(declining to apply heightened scrutiny to facial vagueness challenge, distinguishing between scrutiny in First Amendment and Second Amendment context). Defendants' motion to dismiss Plaintiffs' due process challenge on the basis of impermissible vagueness must be denied.

## III.   PLAINTIFFS HAVE STATED A CLAIM FOR VIOLATION OF THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT

Plaintiffs bring a claim for violation of the Takings Clause of the Fifth Amendment in Counts IV and XI of their Amended Complaint. The Takings Clause provides that private property shall not "be taken for public use, without just compensation." U.S. Const. Amend. V. Property can be "taken" within the meaning of the Fifth Amendment in one of two ways: A "physical taking" occurs when the government appropriates or otherwise physically dispossesses the owner of property. *Lingle v. Chevron USA, Inc.,* 544 U.S. 528, 537 (2005). A "regulatory taking" occurs when the government regulates the use of that property in a manner that "is tantamount to a direct appropriation or ouster." *Id.*; *see also Horne v. Department of Agric.,* 135 S. Ct. 2419, 2427 (2015). Regulatory action may constitute a taking if it interferes with a property owner's reasonable,

investment-backed expectations. Property owners "do not expect their property, real or personal, to be actually occupied or taken away." *Horne,* 135 S. Ct. at 2427*; see also Duncan v. Becerra,* 265 F. Supp. 3d 1106, 1138 (S.D. Cal. 2017). Nor do they expect to be forced to sell, destroy, or alter property. *Yancey v. United States,* 915 F.2d 1534, 1540 (Fed. Cir. 1990).

Plaintiffs' Amended Complaint has well pled the elements and facts necessary for a plausible Regulatory Takings claim. The Regulatory Scheme has regulated the use of common arms labeled "assault weapons" and "large-capacity magazines" in a manner that is tantamount to a direct appropriation, and has destroyed the value and utility of these common arms. However, much like in their challenge to Plaintiffs' Due Process claim on burden-shifting, Defendants attempt to oppose the Takings claim by invoking what they consider to be magic words that do not act as the complete bar to a claim that Defendants believe they do. Where in the Due Process context those words were "affirmative defense," in the Regulatory Takings context they are "police powers." Defendants steer clear of addressing United States Supreme Court precedent and argue that anything taken pursuant to "police powers" cannot be a taking. They ignore the most critical precedent because it casts serious doubt on the Defendants' theory that an exercise of the police power cannot constitute a taking. The Supreme Court has held that a law enacted pursuant to the state's "police powers to enjoin a property owner from activities akin to public nuisances" is not immune from scrutiny under the regulatory takings doctrine. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1020-27 (1992). There, the Supreme Court also reasoned that it was true "[a] fortiori" that the "legislature's recitation of a noxious-use justification cannot be the basis for departing from our categorical rule that total regulatory takings must be compensated." *Id*. at 1026; *see also, Loretto v. Teleprompter Manhattan CATV Corp*., 458 U.S. 419, 425 (1982) (holding that a law requiring physical occupation of private property was both "within the State's police power"

10

and an unconstitutional taking."); *see also id.* at 425–26 ("Whether a law effects a taking is a 'separate question' from whether the State has the police power to enact it, for an uncompensated taking is unconstitutional 'without regard to the public interests that it may serve.'").

Defendants also argue that *Bennis v. Michigan*, 516 U.S. 442, 452, 116 S. Ct. 994, 134 L.Ed. 2d 68 (1996) forecloses Plaintiffs' claim because the common firearms in question were or will be seized pursuant to the State's police powers. No one doubts that the State has or will seize the common firearms under its literal police powers.  But *Bennis* applies only when the government gains title to the property. There, formal ownership of the property had been transferred by virtue of a forfeiture proceeding. But in *Frein v. Pennsylvania State Police*, 47 F.4th 247 (3d Cir. 2022), the Third Circuit held that a taking still occurred when firearms were confiscated pursuant to the State's police powers, but where the State never "lawfully acquired" title to the firearms. *Id*. at 251-252.  Here, like in *Frein*, Defendants are attempting to side-step that issue  by declaring that the State took or will take the so-called "assault weapons" and "large-capacity magazines" pursuant to its police powers and no compensation is required. They ignore that they have not lawfully acquired title.

Next, Defendants invent their own standard regarding the degree to which limited remaining use of an "assault weapon" or "large-capacity magazine," post-Regulatory Scheme enforcement, forecloses a Takings claim. At this pleading stage Defendants do not and cannot refute that Plaintiffs will suffer economic loss from the limitations on use imposed by enforcement of the Regulatory Scheme, nor do they provide data demonstrating that the buyback programs instituted to date solely to address the "large-capacity magazines" banned by SS1 for SB 6 are

compensation that constitutes just compensation. They also provide no justification for the fact that under HB 450 absolutely no compensation is provided for "assault weapons."[4]

Arguing contrary to United States Supreme Court precedent, failing to counter the well-pled effects the Regulatory Scheme has upon the lawful property of Plaintiffs and similarly situated Delawareans, Defendants' motion to dismiss Plaintiffs' Takings claims must be denied.

## IV.    PLAINTIFFS HAVE STATED A CLAIM FOR VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

Plaintiffs bring a claim for violation of the Equal Protection Clause of the Fourteenth Amendment in Counts V and XII of their Amended Complaint. Defendants' motion seeking to dismiss these claims is yet another instance of Defendants seeking a premature dismissal and also failing to appreciate the post-*Bruen* moment.

There are two steps to the equal-protection analysis. First, courts ask whether the groups are "similarly situated." *See Congregation Kol Ami v. Abington Twp.*, 309 F.3d 120, 136–38 (3d Cir. 2002). Second, courts examine whether the justification offered for the distinction drawn between the groups survives the appropriate form of scrutiny. *Id*. Under the first step, courts determine whether the law would treat the two classes the same absent the challenged statutory distinction. *See Frontiero v. Richardson*, 411 U.S. 677, 688 (1973); *see also United States v. Virginia*, 518 U.S. 515, 530 (1996). Thus, if the statute under review would treat two groups the same way except for the distinction being challenged, the groups are similarly situated. *See Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 394 (3d Cir. 2010).

---

[4] Defendants also ignore that the Takings Clause "'is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking.'" *Lingle v. Chevron U.S.A. Inc*., 544 U.S. 528, 537 (2005) (citation omitted). But constitutionally protected content cannot be taken because no amount of compensation can justify it. *Id*. at 543. So the government has no right to interfere with people owning arms protected by the Second Amendment. Whatever amount they offer is unjust.

Defendants rely upon a Third Circuit ruling, *Ass'n of N. J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N. J.,* 910 F.3d 106, 124 (3d Cir. 2018*) abrogated by N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,* 142 S. Ct. 2111 (2022), that not only applied a pre-*Bruen* standard to a direct Second Amendment claim, but that also failed to recognize that an Equal Protection claim implicating a fundamental right, the individual right to bear arms, was entitled to, at least, the deference and level of scrutiny traditionally afforded to other fundamental rights.  And while it is true that in *Ass'n of N. J. Rifle & Pistol Clubs, Inc.* the Third Circuit ruled that New Jersey State Police were not similarly situated to the New Jersey plaintiffs and New Jersey citizens, this decision was reached in the context of Plaintiffs' appeal of a denial of its preliminary injunction, under a different burden than faces Plaintiffs in this matter opposing a motion for partial dismissal. Further, the *Ass'n of N. J. Rifle & Pistol Clubs, Inc.* district court ruling and Third Circuit appeal was decided after the district court held a three-day evidentiary hearing on the preliminary injunction request where it considered declarations from witnesses, which served as their direct testimony, and then these witnesses were thoroughly examined. *Id.* at 112. The motion to dismiss this claim is premature and Plaintiffs have plead specific facts about the qualifications and training of individual Plaintiffs to operate these banned common firearms and that demonstrate that retired law enforcement officers and law-abiding Delawareans are similarly situated.

Defendants also overstate the relevance of LEOSA to Plaintiffs' challenge, citing to case law that enforced LEOSA in challenges brought *by* retired police officers to enforce LEOSA, suggesting that mere enforcement outside the context of private citizens' Equal Protection challenge to unconstitutional arms bans somehow demonstrates that such Equal Protection challenge must fail. This  is  backwards. Rather, the presence of the QRLEO exception calls into question the constitutionality of the Regulatory Scheme. Defendants also cry wolf, claiming that

failure to dismiss Plaintiffs' Equal Protection claims at the pleading stage will call the entire constitutionality of LEOSA into question. Not so. Equal Protection challenges to officer exceptions have been upheld in other circuits, without the upheaval Defendants warn of. *See, e.g., Silveira v. Lockyer*, 312 F.3d 1052, 1091 (9th Cir. 2002) ("[T]he retired officers exception arbitrarily and unreasonably affords a privilege to one group of individuals that is denied to others, including plaintiffs.") The proper remedy for granting Plaintiffs' challenge would not be invalidation of LEOSA, it would be restoration of the fundamental right to bear common arms granted to retired law enforcement officers, to all law-abiding Delawareans. *See Califano v. Westcott*, 443 U.S. 76, 89 (1979) (The proper remedy is to "extend the coverage of the statute to include those who are aggrieved by the exclusion."); *see also Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 (2017).

Plaintiffs have pled facts that state a claim that retired law enforcement officers and law-abiding Delawareans are similarly-situated for purposes of Equal Protection analysis. Defendants' motion to dismiss must be denied.

## V. PLAINTIFFS HAVE STATED A CLAIM FOR VIOLATION OF THE COMMERCE CLAUSE

Plaintiffs bring a claim for violation of the Commerce Clause in Counts VI and XIII of their Amended Complaint. Particularly, the dormant Commerce Clause, "prohibits economic protectionism—that is, 'regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" *Fulton Corp. v. Faulkner*, 516 U.S. 325, 330 (1996). Under the dormant Commerce Clause, courts "protect the free flow of commerce, and thereby safeguard Congress' latent power from encroachment by the several States" when Congress has not affirmatively exercised its *Commerce Clause* power. *Merrion v. Jicarilla Apache Indian Tribe,* 455 U.S. 130, 154 (1982). The Supreme Court has repeatedly held that "in all but the narrowest

14

circumstances state laws violate the Commerce Clause if they mandate differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Granholm v. Heald*, 544 U.S. 460, 472 (2005) (*citing Oregon Waste Systems, Inc. v. Department of Environmental Quality of Ore.*, 511 U.S. 93, 99 (1994)); *see also New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 274 (1988). Plaintiffs have plainly stated facts alleging a violation of the Dormant Commerce Clause. Under the Regulatory Scheme, the single fact of residence in another state forecloses an individual from out of state from engaging in activities and commerce afforded to Delaware residents. Specifically, HB 450 does not permit non-Delaware residents to possess and transport "assault weapons" in the same circumstances afforded Delaware residents under 11 *Del. C.* § 1466 (c)(3)(a)-(d), while passing through Delaware. SS 1 for SB 6 does not permit non-Delaware residents to possess a "large-capacity magazine" in the same circumstances afforded Delaware residents possessing a valid concealed carry permit issued under 11 *Del. C.* § 1441. *See* 11 *Del. C.* § 1469(c)(5).

Defendants claim that their interpretation of these statutes permit these same rights to be afforded to non-Delaware residents. This ignores the portion of 11 *Del. C.* § 1441 that only permits a non-resident to be granted "on a limited basis, a temporary license to carry a concealed and deadly weapon…." 11 *Del. C.* § 1441(k). This is contrary to Defendants' interpretation that by virtue of the use of the term "person" rather than resident, a non-Delaware resident can get the requisite Delaware state concealed carry permit afforded to residents necessary to transport a "large-capacity magazine" within the State. As a result, the use of the term "person" also does not encompass non-Delaware residents in context of HB 450. The Regulatory Scheme forecloses nonresidents from access to the Delaware market in violation of the Dormant Commerce Clause. *See Granholm,* 544 U.S. at 472 (citing *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S.525, 539

(1949)) ("[t]he mere fact of nonresidence should not foreclose a producer in one State from access to markets in other States.")[5] Notably, Defendants' motion does not even address the violations pled in the Amended Complaint regarding the restrictions upon interstate commerce the Regulatory Scheme places upon dealers and manufacturers.

Plaintiffs have pled facts that state a claim for violation of the Dormant Commerce Clause. Defendants' motion to dismiss must be denied.

## VI.   PLAINTIFFS HAVE STATED A CLAIM THAT THE REGULATORY SCHEME IS PREEMPTED BY 18 U.S.C. § 926A

Plaintiffs also bring a claim for preemption under 18 U.S.C. § 926A in Counts VII and XIV of their Amended Complaint. 18 U.S.C. § 926A expressly permits a person to carry a firearm "from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm," provided the person properly stores the firearm. The Senate Judiciary Committee explained about § 926A: "This is intended to prevent local laws, which may ban or restrict firearm ownership, possession or transportation, from being used to harass interstate commerce and travelers." Report 98-583, 9th Cong. 2d Sess., 27-28 (1984). § 926A further provides that:

> No such rule or regulation prescribed after the date of the enactment of the Firearms Owners Protection Act may require that records required to be maintained under this chapter or any portion of the contents of such records, be recorded at or transferred to a facility owned, managed, or controlled by the United States or any State or any political subdivision thereof, nor that any system of registration of firearms, firearms owners, or firearms transactions or dispositions be established.

---

[5] "This mandate 'reflects a central concern of the Framers that was an immediate reason for calling the Constitutional Convention: the conviction that in order to succeed, the new Union would have to avoid the tendencies toward economic Balkanization that had plagued relations among the Colonies and later among the Sates under the Articles of Confederation.'" *Id.* (quoting *Hughes v. Oklahoma*, 441 U.S. 322, 325-326 (1979))

Plaintiffs' Amended Complaint pleads that the Regulatory Scheme's prohibition on transporting so called "assault weapons" and "large-capacity magazines" conflicts with and stands as an obstacle to the accomplishment of 18 U.S.C. § 926A's purposes, which include the free transport of firearms across state lines, and banning of firearms registries.

Defendants first attack the preemption claims as to HB 450 on the basis that § 926A and HB 450 do not present a "direct and positive conflict" and any conflict can be reconciled. Not true. At the pleading stage this issue is quite simple. Section 926A provides, in essence, that anyone may transport firearms from one state in which they are legal, through other states in which they are illegal, to a destination state in which they are legal, provided the firearms are transported in a prescribed, safe manner. But 11 *Del. C.* § 1466(a)(1) prohibits anyone from "[t]ransport[ing] an assault weapon into this State." And 11 *Del. C.* § 1469(a) prohibits anyone from possessing a "large-capacity magazine" under any circumstances. Because Delaware prohibits anyone from bringing a foreign-bought "assault weapon" into or through the state, and necessarily prohibits the same of a foreign-bought "large-capacity magazine," while federal law entitles a person to transport a firearm (and its ammunition) for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm, there is a direct and positive conflict between the two laws. The direct conflict is at the point of coming into the state.  Section 926A affirmatively entitles a person to transport into the state a firearm and ammunition—regardless of where it is obtained. The Regulatory Scheme criminalizes the same act that the federal statute makes permissible. Further, the safe harbor provision of § 926A and the Firearms Owners' Protection Act evince a Congressional intent to protect a firearm owner when traveling, from the complexities and vagaries of state and local firearms laws.

17

Defendants also claim that an ammunition magazine is not a "firearm" and thus is not addressed by § 926A. This is demonstrably false.  Section 926A defines and references "ammunition" on several occasions, and implicit in § 926A's repeated mention of "ammunition" is the idea that the federal safe harbor it provides was for traveling with both firearm and ammunition. *Rhode v. Becerra*, 342 F. Supp. 3d 1010, 1018 (S.D. Cal. 2018). A common sense understanding of the function of an ammunition magazine within a firearm also dictates such an interpretation.

Defendants also scoff at Plaintiffs' allegations that the Regulatory Scheme creates or potentially creates, an unconstitutional firearms registry prohibited and preempted by § 926A. As to HB 450, Plaintiffs' claim arises from 11 *Del. C.* 1467's Certificate of Possession provisions, wherein the State provides:

> "That the certificate of possession must contain the full name, address, date of birth, and thumbprint of the person who owns the assault weapon, and any other information the Secretary deems appropriate." 11 *Del. C.* 1467(c)(3).

Defendants rely upon a vague subsequent provision to claim an allegation regarding a firearm registry under HB 450 must be dismissed, that states:

> "That the Department will not retain copies of the certificate or other identifying information relating to any individual who applies for a voluntary certificate of possession." 11 *Del. C.* 1467(c)(4)

First, the vague clause upon which Defendants entirely rely only guarantees that the certificate itself will not be retained and that the Department will not retain "other" rather than "any" identifying information relating to any individual who ***applies*** rather than any individual who is ***granted*** a voluntary certificate. The vagueness strategically employed in this exception is not enough to meet a burden for dismissal of the preemption claim at this stage. Second, and perhaps more chillingly, Defendants' argument regarding SS1 for SB 6 demonstrates the need for

18

discovery and investigation beyond the pleading stage of the sufficiently plead registry portion of the preemption claim regarding both HB 450 and SS1 for SB 6.  Here again, Defendants scoff at Plaintiffs contention that "large-capacity magazine" buyback programs instituted by the State to date have refused to compensate Delawareans who return ammunition magazines anonymously. This is not a far-fetched hypothetical—it is the reality. The State's own announcement scheduling ammunition magazine buybacks, leading to Plaintiffs' Amended Complaint being filed, states: "Anonymous relinquishments will be permitted. However, no compensation will be provided." *See* https://news.delaware.gov/2022/10/26/state-announces-high-capacity-magazine-buyback-events-for-delaware-residents/.

Defendants' remaining challenge to the registry portion of Plaintiffs' preemption claim relies upon inapplicable case law wherein, "small numbers" of recorded firearms transactions were ruled not preempted by § 926A. Plaintiffs' allegations underscore the ubiquity of the firearms and ammunition magazines in common use that the Regulatory Scheme bans.[6] There is no doubt that if the State had its way, all of the firearms and magazines in common use banned by the Regulatory Scheme would be registered and/or turned in, and should the Regulatory Scheme stand they may

---

[6] *Miller v. Bonta*, 542 F. Supp. 3d 1009, 1022 (S.D. Cal, 2021) ("Nationally, modern rifles are ubiquitous . . . In 2018, 909,330 Ford F-150s were sold. Twice as many modern rifles were sold the same year."); *see also* https://www.nssf.org/articles/commonly-owned-nssf-announces-over-24-million-msrs-in-circulation/ (A 2022 study by the NSSF®, the firearm industry trade association, estimated there are 24,446,000 Modern Sporting Rifles in circulation in the United States since 1990. That is an increase of over 4.5 million rifles since the last estimate was released in 2020 and far exceeds the 16,100,000 F-150 trucks estimated to be on the road.); *Heller v. District of Columbia* ("*Heller II*"), 670 F.3d 1244, 1287 (D.C. Cir. 2011) (Semiautomatic rifles are also in common use and accounted for 40 percent of rifles sold in 2010; with two million AR-15s, America's most popular rifle, manufactured between 1986 and 2010); *Friedman v. City of Highland Park, Ill.*, 577 U.S. 1039, 1042 (2015) (Thomas, J., dissenting from denial of cert) ("Roughly five million Americans own AR-styled semiautomatic rifles….The overwhelming majority of citizens who own and use such rifles do so for lawful purposes including self-defense and target shooting.")

get their way by threat of prosecution. In such scenario there can be no doubt that registration and return of these commonly used arms would dwarf the numbers of arms addressed in the case law relied upon by Defendants.

Plaintiffs have made plausible claims for declaratory judgment relief based on preemption. Defendants' motion for dismissal of the preemption claim should therefore be denied. *See, e.g., Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 608 (E.D. Va. 2004) ("If plaintiffs can adduce facts to prove this allegation, they may establish a conflict with federal law and hence a Supremacy Clause bar…"); *see also Rhode* 342 F. Supp. 3d 1010 at 1018 (denying motion to dismiss and permitting plaintiffs to move forward with claim that magazine ban was preempted by 18 U.S.C. § 926A).

## VII.    CONCLUSION

The strength of Plaintiffs' Second Amendment and Article I, § 20 challenges are no excuse to grant what Defendants seek here—the dismissal, at the outset, of valid additional constitutional claims under the guise of "judicial efficiency." Despite their acknowledgement of *Bruen* in a direct Second Amendment context, Defendants' motion fails to acknowledge the effect *Bruen* has and will have on additional constitutional challenges affecting Second Amendment rights such as those addressed in their motion.

The shortcut they seek is not in the interests of justice, and seeking to give no quarter to valid, constitutional claims is a perverse distortion of the principle of "judicial efficiency." Each of Plaintiffs' counts in the Amended Complaint state a claim that defeats Defendants' Motion to Dismiss. Defendants' motion to dismiss must be denied in full.

LEWIS BRISBOIS
    BISGAARD & SMITH LLP

*/s/ Francis G.X. Pileggi*
Francis G.X. Pileggi, Esquire (#2624)
Sean M. Brennecke, Esquire (#4686)
500 Delaware Ave., Suite 700
Wilmington, DE 19801
302-985-6000
Francis.Pileggi@LewisBrisbois.com
Sean.Brennecke@LewisBrisbois.com

OF COUNSEL:
Alexander MacMullan, Esquire
LEWIS BRISBOIS
    BISGAARD & SMITH LLP
552 E. Swedesford Road, Suite 270
Wayne, Pennsylvania 19087
(215) 977-4083
Alexander.MacMullan@LewisBrisbois.com

*Attorneys for Plaintiffs*

Dated: January 31, 2023

21